UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FRASER CONSTRUCTION COMPANY, INC., individually and on behalf of all others similarly situated,

Plaintiff,

v.

CEDAR SHAKE & SHINGLE BUREAU, a Washington nonprofit corporation; WALDUN FOREST PRODUCTS, LTD, a British Columbia corporation; ANBROOK INDUSTRIES LTD, a British Columbia corporation; and G&R CEDAR LTD., a British Columbia corporation,

Defendants.

CASE NO.

**CLASS ACTION COMPLAINT**

CLASS ACTION COMPLAINT - 1

LAW OFFICES OF
MᴄNᴀᴜʟ Eʙᴇʟ Nᴀᴡʀᴏᴛ & Hᴇʟɢʀᴇɴ ᴘʟʟᴄ
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

## TABLE OF CONTENTS

I.      NATURE OF THE ACTION ........................................................................ 1

II.     JURISDICTION AND VENUE ................................................................... 4

III.    PARTIES ...................................................................................................... 5

        A.    Plaintiff ............................................................................................. 5

        B.    Defendants ......................................................................................... 5

IV.     CO-CONSPIRATORS ................................................................................ 7

V.      TRADE AND COMMERCE ....................................................................... 9

VI.     FACTUAL ALLEGATIONS ..................................................................... 10

        A.    Relevant Products ........................................................................... 10

        B.    Industry Background ....................................................................... 11

              1.    CSSB and the Cert-Label Trademark ..................................... 11

              2.    The Domestic Cedar Shakes and Shingles Market ................. 13

        C.    The structure and characteristics of the cedar shakes and shingles market make the conspiracy economically plausible. ........................................................................ 15

              1.    The cedar shakes and shingles market is vertically integrated. ................ 15

              2.    Demand for cedar shakes and shingles is inelastic. ................. 15

              3.    Cedar shakes and shingles are commodity-like products. ........................ 15

              4.    There are no significant substitutes for cedar shakes and shingles........... 16

              5.    The cedar shakes and shingles market is highly concentrated.................. 17

              6.    The voting structure of the CSSB concentrates power in the hands of the largest manufacturers. ................................................................ 18

              7.    Defendants had ample opportunity to conspire. ...................... 19

              8.    High entry barriers exist in the cedar shakes and shingles market. .......... 20

        D.    The performance observed in the cedar shakes and shingles industry makes the conspiracy economically plausible. ................................................................. 21

              1.    The prices of cedar shakes and shingles since at least 2011 cannot be explained by ordinary market forces........................................................ 21

              2.    Cedar shakes and shingles inventories significantly have increased in recent years compared to production levels.............................................. 26

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

E.      Traditional conspiracy evidence demonstrates the conspiracy's existence. ......... 27

VII.    CLASS ACTION ALLEGATIONS ................................................................ 30

VIII.   ANTITRUST INJURY ................................................................................ 36

IX.     FRAUDULENT CONCEALMENT AND TOLLING ...................................... 37

X.      CLAIMS FOR RELIEF ............................................................................... 38

        A.      Claims Under Federal Law .......................................................... 38

                1.      Violation of Section 1 of the Sherman Act ............................. 38

        B.      State Law Antitrust Claims .......................................................... 39

                1.      Violation of Arizona's Uniform State Antitrust Act (Arizona Revised
                        Statutes §§ 44-1401, *et seq.*) on behalf of the Arizona Class .................. 39

                2.      Violation of California's Cartwright Act (Cal. Bus. & Prof. Code § 1600,
                        *et seq.*) on behalf of the California Class.................................... 40

                3.      Violation of the Colorado Revised Statutes §§ 6-4-101, *et seq.* on behalf of
                        the Colorado Class. ..................................................... 42

                4.      Violation of the District of Columbia Antitrust Act (D.C. Code § 28-4501,
                        *et seq.*) on behalf of the District of Columbia Class ........................ 43

                5.      Violation of the Illinois Antitrust Act (740 §§ ILCS 10/1, *et seq.*) on behalf
                        of the Illinois Class ..................................................... 44

                6.      Violation of Iowa Competition Law (Iowa Code §§ 553.1, *et seq.*) on
                        behalf of the Iowa Class.................................................. 45

                7.      Violation of the Kansas Restraint of Trade Act (Kan. Stat. Ann. §§ 50-112,
                        *et seq.*) on behalf of the Kansas Class...................................... 46

                8.      Violation of Maine's Antitrust Statute (Me. Rev. Stat. Ann. Tit. 10, § 1101,
                        *et seq.*) on behalf of the Maine Class...................................... 47

                9.      Violation of the Michigan Antitrust Reform Act (Mich. Comp. Laws §§
                        445.771, *et seq.*) on behalf of the Michigan Class................................... 47

                10.     Violation of Minnesota Antitrust Law (Minn. Stat. §§ 325D.49, *et seq.*) on
                        behalf of the Minnesota Class................................................. 48

                11.     Violation of the Mississippi Antitrust Statute (Miss. Code Ann. § 74-21-1,
                        *et seq.*) on behalf of the Mississippi Class................................. 49

                12.     Violation of the Missouri Merchandising Practices Act (Mo. Stat. §
                        407.010, *et seq.*) on behalf of the Missouri Class................................... 50

                13.     Violation of the Nebraska Junkin Act (Neb. Rev. Stat. § 59-801, *et seq.*) on
                        behalf of the Nebraska Class.................................................. 51

CLASS ACTION COMPLAINT - III

14.     Violations of the Nevada Unfair Trade Practices Act (Nev. Rev. Stat § 598A.030(1)) on behalf of the Nevada Class............................................. 52

15.     Violation of New Hampshire's Antitrust Statute (N.H. Rev. Stat. Ann. §§ 356, *et seq.*) on behalf of the New Hampshire Class ................................ 53

16.     Violation of the New Mexico Antitrust Act (N.M. Stat. Ann. §§ 57-1-1, *et seq.*) on behalf of the New Mexico Class. .................................................. 54

17.     Violation of New York General Business Laws §§ 340, *et seq.*, on behalf of the New York Class ..................................................................................... 54

18.     Violation of the North Carolina General Statutes §§ 75-1, *et seq.*, on behalf of the North Carolina Class............................................................. 55

19.     Violation of the North Dakota Uniform State Antitrust Act (N.D. Cent. Code §§ 51-08.1, *et seq.*) on behalf of the North Dakota Class .............. 56

20.     Violation of the Oregon Antitrust Law (Or. Rev. Stat §§ 646.705, *et seq.*) on behalf of the Oregon Class................................................................. 57

21.     Violation of the Rhode Island Antitrust Act (R.I. Gen. Laws §§ 6-36-1, *et seq.*) on behalf of the Rhode Island Class........................................... 57

22.     Violation of the South Dakota Antitrust Statute (S.D. Codified Laws §§ 37-1, *et seq.*) on behalf of the South Dakota Class.................................. 58

23.     Violation of the Tennessee Trade Practices Act (Tenn. Code §§ 47-25-101, *et seq.*) on behalf of the Tennessee Class................................................... 59

24.     Violation of the Utah Antitrust Act (Utah Code Ann. § 76-10-3101, *et seq.*) on behalf of the Utah Class........................................................................ 61

25.     Violation of the West Virginia Antitrust Act (W. Va. Code § 47-18-1, *et seq.*) on behalf of the West Virginia Class ................................................. 61

26.     Violation of the Wisconsin Antitrust Act (Wis. Stat. §§ 133.01, *et seq.*) on behalf of the Wisconsin Class ................................................................... 62

C.  Violations of State Consumer Protection Law ...................................................... 63

1.      Violation of Alaska Statute § 45.50.471, *et seq.*, on behalf of the Alaska Class ............................................................................................................. 63

2.      Violation of the Colorado Consumer Protection Act (Colo. Rev. Stat. §§ 6-1-101, *et seq.*) on behalf of the Colorado Class ........................................ 64

3.      Violation of California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*) ("UCL") on behalf of the Colorado Class ................. 65

4.      Violation of Delaware's Consumer Fraud Act (6 Del. Code §§ 2511, *et seq.*) on behalf of the Delaware Class....................................................... 67

CLASS ACTION COMPLAINT - IV

5.      Violation of the District of Columbia Consumer Protection Procedures Act (D.C. Code § 28-3901, *et seq.*) on behalf of the District of Columbia Class .................................................................................................................. 68

6.      Violation of the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. § 501.201(2), *et seq.*) on behalf of the Florida Class ........................ 69

7.      Violation of the Hawaii Revised Statutes Annotated §§ 480-1, *et seq.*, on behalf of the Hawaii Class .......................................................................... 70

8.      Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Ill. Comp. Stat. Ann. 815 Ill. Comp. Stat. Ann. 505/10a, *et seq.*) on behalf of the Illinois Class ........................................................................... 71

9.      Violation of the Massachusetts Consumer Protection Act (Mass. Gen. Laws Ch. 93A § 1, *et seq.*) on behalf of the Massachusetts Class ........... 72

10.     Violation of the Michigan Consumer Protection Act (Mich. Comp. Laws Ann. §§ 445.901, *et seq.*) on behalf of the Michigan Class ..................... 73

11.     Violation of the Minnesota Consumer Fraud Act (Minn. Stat. § 235F.68, *et seq.*) on behalf of the Minnesota Class ..................................................... 74

12.     Violation of the Montana Unfair Trade Practices and Consumer Protection Act of 1970 (Mont. Code §§ 30-14-103, *et seq.*) on behalf of the Montana Class ............................................................................................................. 75

13.     Violation of the Nebraska Consumer Protection Act (Neb. Rev. Stat. § 59-1602) on behalf of the Nebraska Class ..................................................... 76

14.     Violation of the Nevada Deceptive Trade Practices Act (Nev. Rev. Stat § 598.0903, *et seq.*) on behalf of the Nevada Class .................................... 77

15.     Violation of the New Hampshire Consumer Protection Act (N.H. Rev. Stat. Ann. tit. XXXI, § 358-A, *et seq.*) on behalf of the New Hampshire Class ............................................................................................................. 78

16.     Violation of the New Mexico Unfair Practices Act (N.M. Stat. Ann. §§ 57-12-3, *et seq.*) on behalf of the New Mexico Class .................................... 78

17.     Violation of the North Carolina Unfair Trade and Business Practices Act (N.C. Gen. Stat. § 75-1.1, *et seq.*) on behalf of the North Carolina Class 80

18.     Violation of the North Dakota Unfair Trade Practices Law (N.D. Cent. Code § 51-10-01, *et seq.*) on behalf of the North Dakota Class .............. 81

19.     Violation of the Oregon Unlawful Trade Practices Act (Or. Rev. Stat. § 646.608, *et seq.*) on behalf of the Oregon Class ....................................... 81

20.     Violation of the Rhode Island Deceptive Trade Practices Act (R.I. Gen. Laws § 6-13.1-1, *et seq.*) on behalf of the Rhode Island Class ................ 83

21.     Violation of South Carolina's Unfair Trade Practices Act (S.C. Code Ann. §§ 39-5-10) on behalf of the South Carolina Class .................................... 84

CLASS ACTION COMPLAINT - V

22.   Violation of South Dakota Deceptive Trade Practices and Consumer Protection Law (S.D. Codified Laws § 37-24-6) on behalf of the South Dakota Class ............................................................................................. 85

23.   Violation of the Utah Consumer Sales Practices Act (Utah Code Ann. §§ 13-11-1, *et seq.*) on behalf of the Utah Class............................................. 86

24.   Violation of the Utah Unfair Practices Act (Utah Code Ann. §§ 13-5-1, *et seq.*) on behalf of the Utah Class ............................................................. 87

25.   Violation of Vermont Stat. Ann. 9 § 2453, *et seq.* on behalf of the Vermont Class............................................................................................. 88

26.   Violation of the Virginia Consumer Protection Act of 1997 Va. Code § 59.1-196, *et seq.* on behalf of the Virginia Class ....................................... 88

D.   Unjust Enrichment ............................................................... 90

XII.   JURY TRIAL DEMANDED .............................................................. 91

CLASS ACTION COMPLAINT - VI

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

Plaintiff Fraser Construction Company, Inc. ("Plaintiff") brings this action on behalf of itself and on behalf of numerous State damages classes (defined below) and a nationwide injunctive relief class (collectively, the "Classes") consisting of all individuals and entities in the United States that indirectly purchased cedar shakes and shingles for resale that were manufactured by a Manufacturer Defendant or co-conspirator named in this complaint from at least as early as January 1, 2011 through the present ("Class Period").

## I.    NATURE OF THE ACTION

1.     This is an antitrust conspiracy case involving cedar shakes and shingles. Cedar shakes are rustic-looking roof shingles split by hand. They have a relatively rough appearance and are almost always used for roofing. Cedar shingles, on the other hand, are uniformly sawn by machine for a consistent look and thickness. They are used for both sidewalls and roofing applications.

2.     Three Defendants—Defendant Anbrook Industries Ltd. ("Anbrook"), Defendant Waldun Forest Products Ltd. ("Waldun"), and Defendant G&R Cedar Ltd. ("G&R") (collectively, "Manufacturer Defendants")—as well as other non-defendant co-conspirator manufacturers produce cedar shakes and shingles and sell them to direct purchasers, which predominantly if not exclusively consist of wholesalers. Those direct purchasers then sell cedar shakes and shingles to indirect purchasers who, in turn, resell them to other entities like contractors and end users. Plaintiff is an indirect purchaser who resells cedar shakes and shingles to other entities and individuals further down the distribution chain.

3.     The remaining Defendant, the Cedar Shake & Shingle Bureau ("CSSB"), is the main trade association serving the cedar shake and shingle industry in North America. The CSSB controls the "Certi-Label" trademark placed on cedar shakes and shingles, including the Certi-Grade, Certi-Sawn, and Certi-Split trademark labels. CSSB Certi-Label products account for about 95% of the high-end cedar shake and shingle products sold in the United States. Each of the Manufacturer Defendants, as well as several other co-conspirator manufacturers, sit on the CSSB's Board of Directors. During the Class Period, Manufacturer Defendants and their co-

CLASS ACTION COMPLAINT - 1

conspirator manufacturers regularly attended in-person meetings held by the CSSB.

4.     This action arises out of a conspiracy orchestrated by Defendants to fix, increase, maintain, or stabilize the price of cedar shakes and shingles and reduce price competition among cedar shake and shingle manufacturers in violation of federal antitrust law as well as the antitrust, consumer protection, and unjust enrichment laws of numerous states. Defendants' conspiracy began at least as early as January 1, 2011 and continues through today.

5.     Although Plaintiff has not yet had the opportunity to obtain any discovery from Defendants, Plaintiff already can allege numerous highly-detailed facts that demonstrate the existence, let alone plausibility, of the alleged conspiracy.

6.     Throughout the Class Period, senior high-ranking personnel employed by Manufacturer Defendants, including Waldun's Curtis Walker, Anbrook's Brooke Meeker, and G&R Cedar's Stuart Dziedzic, expressly discussed and agreed on pricing levels to charge purchasers on numerous occasions, including in person and over the telephone.

7.     For example, in late 2018, Waldun's Mr. Walker paid a visit to co-conspirator Watkins Sawmills Ltd. ("Watkins"). During this meeting, Mr. Walker told Kris Watkins, Chief of Operations of Watkins, that "Waldun Forest Products never dropped their pricing" and that all CSSB-affiliated manufacturers should keep their prices at consistent levels. When Mr. Watkins noted that an emerging competitor, S&W Forest Products Ltd. ("S&W"), discounted its prices during months of lowered demand, Mr. Walker responded, "Yeah, well we just need to get rid of that guy."

8.     In addition, Manufacturer Defendants have concentrated their power in the CSSB, partly due to the consolidation of the shake and shingle industry, and partly due to the voting structure of the CSSB, which weighs votes based on each manufacturer member's annual cedar shake and shingle production.

9.     Through this consolidation of power over the CSSB, Manufacturer Defendants have used their weighted voting power to terminate the membership of CSSB members who do not follow the price leadership of the Manufacturer Defendants. Accordingly, the Manufacturer

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

Defendants disallowed low-cost competitors from obtaining Certi-Label approval, regardless of the quality of their work. These low-cost competitors' inability to use Certi-Labels has prevented them from pricing their products at a level that would permit them to stay in business, and thus effectively eliminated them from the cedar shake and shingles market.

10. One such recently terminated manufacturer is S&W. Defendants conspired to and did terminate the CSSB membership of S&W in late 2018 based on a pretextual reason that was both false and not applied to other manufacturers that did not undercut Manufacturer Defendants on price.

11. Plaintiff does not rely only on traditional conspiracy evidence of the type noted above. The structure and characteristics of the cedar shakes and shingles market, in addition to its performance (*i.e.*, pricing), also demonstrates the plausibility of the alleged conspiracy.

12. The following industry characteristics, which are seen in many industries victimized by price-fixing, render the existence of the alleged conspiracy plausible:  the industry is highly vertically integrated; product demand is inelastic; the products are commodity-like; there are no good substitute products; the market is highly-concentrated; barriers to enter the market are high; and there is ample opportunity to conspire.

13. Plaintiff also has conducted a thorough economic analysis of pricing in the industry with the assistance of an experienced economics consulting firm. This proprietary analysis, which is discussed and illustrated in several charts below, demonstrates that the pricing of cedar shake and shingles sold in the United States has increased substantially since January 1, 2011 and that these price increases cannot be explained by normal market forces such as raw material costs or supply and demand.

14. Defendants' anticompetitive actions had the intended purpose and effect of artificially fixing, raising, maintaining, and stabilizing the price of cedar shakes and shingles to Plaintiff and other members of the Classes in the United States.

15. As a result of Defendants' unlawful conduct, Plaintiff and other members of the Classes paid artificially inflated prices for cedar shakes and shingles. These prices exceeded the

CLASS ACTION COMPLAINT - 3

amount they would have paid for cedar shakes and shingles if the price had been set by a competitive, collusion-free market. Accordingly, Plaintiff and other members of the Classes suffered an antitrust injury as a result of Defendants' conduct.

## II.   JURISDICTION AND VENUE

16.   Plaintiff brings this action under Section 16 of the Clayton Act (15 U.S.C. § 26) to secure injunctive relief against Defendants for violating Section 1 of the Sherman Act (15 U.S.C. § 1). This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1337, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

17.   Plaintiff asserts claims for actual and exemplary damages and injunctive relief pursuant to state antitrust, unfair competition, and consumer protection laws, and seeks to obtain restitution, recover damages, and secure other relief against Defendants for violation of those state laws. Plaintiff and the other members of the Classes also seek attorney's fees, costs, and other expenses under federal and state laws. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1332(d) and 1367 because: (a) this is a class action where the matter or controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and in which some members of the proposed Classes are citizens of a state different from some Defendants; and (b) Plaintiff's state law claims form part of the same case or controversy as their federal claims under Article III of the United States Constitution.

18.   Venue is appropriate in this District under 28 U.S.C. § 1391(b), (c) and (d) because one or more Defendants resided or transacted business in this District and is licensed to do business or is doing business in this District, and because a substantial portion of the affected interstate commerce described herein was carried out in this District.

19.   This Court has personal jurisdiction over each Defendant because each Defendant: (a) transacted business throughout the United States, including in this District; (b) manufactured, sold, shipped, or delivered substantial quantities of cedar shakes and shingles throughout the United States, including this District; (c) had substantial contacts with the United States, including this District; or (d) engaged in an antitrust conspiracy that was directed at and

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

had a direct, foreseeable, and intended effect of causing injury to the business or property of persons residing in, located in, or doing business throughout the United States, including this District.

20.     The activities of the Defendants and all co-conspirators, as described herein, were within the flow of, were intended to, and did have direct, substantial, and reasonably foreseeable effects on the foreign and interstate commerce of the United States.

21.     No other forum would be more convenient for the parties and witnesses to litigate this case.

III.    **PARTIES**

A.     **Plaintiff**

22.     Plaintiff Fraser Construction Company, Inc. is a Massachusetts corporation with a principal place of business in Mashpee, Massachusetts. Plaintiff purchased cedar shakes and shingles bearing the CSSB Certi-Label trademark indirectly from one or more of the Manufacturer Defendants or co-conspirator manufacturers for resale during the Class Period.

B.     **Defendants**

23.     Defendant Cedar Shake & Shingle Bureau is a Washington nonprofit corporation that is the only trade association serving the cedar shake and shingle industry in the United States and Canada. The CSSB is headquartered in Mission, British Columbia, and maintains an office in Sumas, Washington.

24.     Defendant Anbrook Industries Ltd. is a British Columbia corporation with its principal place of business in Pitt Meadows, British Columbia. Anbrook is one of the largest cedar shake and shingle manufacturers in the world. It is a member of the CSSB, and its President, Brooke Meeker, sits on the CSSB's Board of Directors, acting as its Chairman. Anbrook owns and operates a cedar shake and shingle manufacturing facility in Pitt Meadows, British Columbia. Anbrook manufactures Certigrade Shingles, Certi-Sawn Shakes, and Certi-Split Shakes. During the Class Period, Anbrook or its predecessors, wholly-owned or controlled subsidies, or affiliates sold cedar shakes and shingles in interstate commerce, directly or through

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

its wholly-owned or controlled affiliates, to purchasers in the United States.

25.     Defendant Waldun Forest Products Ltd. is a British Columbia corporation with its principal place of business in Maple Ridge, British Columbia. Waldun is "the largest company in the world manufacturing such a selection of cedar products." It is a member of the CSSB, and its Director, Curtis Walker, sits on CSSB's Board of Directors, serving as its Secretary/Treasurer. Waldun owns and operates a cedar shake and shingle manufacturing facility in Maple Ridge, British Columbia. Waldun manufactures Certigrade Shingles, Certi-Sawn Shakes, and Certi-Split Shakes, as well as Certi-Ridge, Custom Dimension products, Sidewall, and Specialty Cuts. During the Class Period, Waldun or its predecessors, wholly-owned or controlled subsidies, or affiliates sold cedar shakes and shingles in interstate commerce, directly or through its wholly-owned or controlled affiliates, to purchasers in the United States.

26.     Defendant G&R Cedar Ltd. is a British Columbia corporation headquartered in Matsqui, British Columbia. G&R is a self-described industry leader in the cedar shake and shingle industry. It is a member of the CSSB, and its Sales Manager, Stuart Dziedzic, sits on CSSB's Board of Directors. G&R owns and operates a cedar shake and shingle manufacturing facility in Matsqui, British Columbia and an additional sidewall shingle manufacturing facility in Chilliwack, British Columbia. G&R manufactures Certigrade Shingles, Certi-Sawn Shakes, and Certi-Split Shakes, as well as Custom Dimension products, Sidewall, and Specialty Cuts. During the Class Period, G&R or its predecessors, wholly-owned or controlled subsidies, or affiliates sold cedar shakes and shingles in interstate commerce, directly or through its wholly-owned or controlled affiliates, to purchasers in the United States.

27.     "Defendant" or "Defendants" as used herein includes, in addition to those named specifically above, all of the named Defendants' predecessors, including cedar shake and shingle companies that merged with or were acquired by the named Defendants and each named Defendant's wholly-owned or controlled subsidiaries or affiliates that sold cedar shakes and shingles in interstate commerce, directly or through its wholly-owned or controlled affiliates, to purchasers in the United States during the Class Period.

CLASS ACTION COMPLAINT - 6

28.     To the extent that subsidiaries and divisions within each Defendant's corporate family sold or distributed cedar shakes and shingles to purchasers, these subsidiaries played a material role in the conspiracy alleged in this Complaint because Defendants wished to ensure that the prices paid for such cedar shakes and shingles would not undercut the artificially raised and inflated pricing that was the aim and intended result of Defendants' coordinated and collusive behavior as alleged herein. Thus, all such entities within the corporate family were active, knowing participants in the conspiracy alleged herein, and their conduct in selling, pricing, distributing and collecting monies from Plaintiff and the members of the Classes for cedar shakes and shingles was known to and approved by their respective corporate parent named as a Defendant in this Complaint.

29.     Each of the Defendants named herein acted as the agent or joint-venturer of or for the other Defendants with respect to the acts, violations, and common course of conduct alleged herein.

30.     Defendants are also liable for acts done in furtherance of the alleged conspiracy by companies they acquired through mergers and acquisitions.

31.     Whenever reference is made to any act of any corporation, the allegation means that the corporation engaged in the act by or through its officers, directors, agents, employees, or representatives while they were actively engaged in the management, direction, control, or transaction of the corporation's business or affairs.

IV.     CO-CONSPIRATORS

32.     A&R Cedar, Inc. ("A&R") is a Washington corporation headquartered in Hoquiam, Washington. It is a member of the CSSB, and a member of its senior management team, Cecilia Acuna, sits on the CSSB Board of Directors. A&R manufactures Certigrade Shingles and Certi-Sawn Shakes, as well as Certi-Ridge, Custom Dimension products, and Sidewall. During the Class Period, A&R or its predecessors, wholly-owned or controlled subsidies, or affiliates sold cedar shakes and shingles in interstate commerce, directly or through its wholly-owned or controlled affiliates, to purchasers in the United States.

CLASS ACTION COMPLAINT - 7

33.     Best Shingle Sales Inc. ("Best") is a Washington corporation headquartered in Hoquiam, Washington. It is a member of the CSSB, and its owner, Terry Kost, sits on CSSB's Board of Directors. Best manufactures Certigrade Shingles and Certi-Sawn Shakes, as well as Sidewall.  During the Class Period, Best or its predecessors, wholly-owned or controlled subsidies, or affiliates sold cedar shakes and shingles in interstate commerce, directly or through its wholly-owned or controlled affiliates, to purchasers in the United States.

34.     Premium Cedar Products Ltd. ("Premium") is a British Columbia corporation headquartered in Mission, British Columbia. It is a member of the CSSB, and one of its senior managers, Ed Watkins, sits on CSSB's Board of Directors and served as its Past Chairman. Premium manufactures Certigrade Shingles, Certi-Ridge, Certi-Sawn Shakes, and Certi-Split Shakes, as well as Custom Dimension products and Specialty Cuts. During the Class Period, Premium or its predecessors, wholly-owned or controlled subsidies, or affiliates sold cedar shakes and shingles in interstate commerce, directly or through its wholly-owned or controlled affiliates, to purchasers in the United States.

35.     Watkins Sawmills Ltd. is a British Columbia corporation headquartered in Mission, British Columbia. It has common ownership and management with Premium, and even uses the same main telephone number. It is a member of the CSSB, and its President, Ed Watkins, sits on CSSB's Board of Directors and served as its Past Chairman. Watkins manufactures Certigrade Shingles, Certi-Sawn Shakes, and Certi-Split Shakes, as well as Certi-Ridge, Custom Dimension products, Sidewall, and Specialty Cuts. During the Class Period, Watkins or its predecessors, wholly-owned or controlled subsidies, or affiliates sold cedar shakes and shingles in interstate commerce, directly or through its wholly-owned or controlled affiliates, to purchasers in the United States.

36.     Various other persons, firms, and corporations not currently named as defendants have participated as co-conspirators with Defendants and have performed acts and made statements in furtherance of the conspiracy. Defendants are jointly and severally liable for the acts of their co-conspirators whether or not named as defendants in this Complaint.

CLASS ACTION COMPLAINT - 8

## V.   TRADE AND COMMERCE

37.   During the Class Period, Defendants engaged in conduct both inside and outside of the United States that caused direct, substantial, and reasonably foreseeable and intended anticompetitive effects upon interstate commerce within the United States.

38.   During the Class Period, each Manufacturer Defendant, directly or through its subsidiaries or other affiliates, sold cedar shakes and shingles in the United States in a continuous and uninterrupted flow of interstate commerce and foreign commerce, including through and into this judicial district.

39.   During the Class Period, Manufacturer Defendants and Co-Conspirators collectively possessed a sizeable majority share of the market for cedar shakes and shingles in the United States.

40.   Cedar shakes and shingles manufactured abroad by Manufacturer Defendants and sold as stand-alone products are goods brought into the United States for sale and therefore constitute import commerce. To the extent that any cedar shakes and shingles are purchased in the United States, and do not constitute import commerce, Defendants' unlawful conduct with respect thereto, as more fully alleged herein during the Class Period, had and continues to have a direct, substantial, and reasonably foreseeable effect on United States commerce. The anticompetitive conduct, and its effect on United States commerce described herein, caused antitrust injury to Plaintiff and members of the Classes in the United States.

41.   Defendants' business activities substantially affected interstate trade and commerce in the United States and caused antitrust injury in the United States.

42.   By reason of the unlawful activities hereinafter alleged, Defendants substantially affected commerce throughout the United States, causing injury to Plaintiff and members of the Classes. Defendants, directly and through their agents, engaged in activities affecting all states, to fix, raise, maintain or stabilize prices for cedar shakes and shingles, which unreasonably restrained trade and adversely affected the market for such products.

CLASS ACTION COMPLAINT - 9

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

## VI.    FACTUAL ALLEGATIONS

### A.    Relevant Products

43.    Cedar shakes are rustic looking and used in roofing. Cedar shingles, which are used in both roofing and sidewall applications, are uniformly sawn for a consistent and even thickness and provide a uniform machine-produced look. According to G&R Cedar's website, "[t]he main difference between a shingle and a shake is that a shingle is sawn on both sides for a smooth, tailored appearance, while a shake is split on the face, and sawn on the back, for a rougher, rustic look."

44.    Illustrative examples of a cedar shake and a cedar shingle are shown below:



**Cedar Shake (Split and Resawn)**



**Cedar Shingle (Sawn)**

45.    As used in this Complaint, "cedar shakes and shingles" and "high-end cedar shake and shingles" refers to the following cedar products bearing the Certi-Label of the CSSB: Certigrade Shingles, Certi-Sawn Shakes, and Certi-Split Shakes.

46.    CSSB Certi-Labeled shakes and shingles are all produced from the same raw

LAW OFFICES OF
MᴄNᴀᴜʟ Eʙᴇʟ Nᴀᴡʀᴏᴛ & Hᴇʟɢʀᴇɴ ᴘʟʟᴄ
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

materials: cedar logs and cut blocks.

**B.      Industry Background**

**1.      CSSB and the Cert-Label Trademark**

47.      For more than a century, the CSSB has been the preeminent regulator of the cedar shake and shingle industry in the United States and Canada.

48.      The CSSB drafted and holds the copyright to the CSSB-97 grading and packing rules.

49.      CSSB-97 grading rules cover two species of cedar: Western Red Cedar and Alaskan Yellow Cedar.

50.      CSSB-97 grading rules, which govern the production and packing of shake and shingle products, have been widely incorporated into building codes throughout the United States, Canada and internationally.

51.      The CSSB has aggressively and successfully promoted its CSSB-97 grading rules and its trademarked Certi-Label shakes and shingles. In order to distinguish products of different qualities, each certification has stringent requirements setting forth how the product will "grade," taking into consideration numerous factors such as how clear the wood is, the thickness of the product, and the grain of the wood.  For instance, Certigrade Shingles are broken down into Number 1 Grade, Number 2 Grade, Number 3 Grade, and Undercoursing Grade products.

52.      Membership in the CSSB trade association is a necessary prerequisite to any manufacturer of cedar shakes and shingles being able to effectively compete in the domestic market for high-end shakes and shingles.

53.      The Certi-Label is the gold standard in the shake and shingle business. A mill must have access to that label to sell its products in the high-end shake and shingle market in the United States. The CSSB label is perceived as guaranteeing a certain quality product. Due to that reputation, many architects and builders require Certi-Label products in their building specifications. Along with those spec jobs, customers in many regions of the country such as the northeastern United States, Pacific Northwest, Mountain West, and Midwest, purchase Certi-

CLASS ACTION COMPLAINT - 11

Labeled products nearly exclusively.

54.   As a result, during the last 20 years, virtually all of the manufacturers of high-end cedar shakes and shingles utilized on the roofs and exterior walls of residential dwellings and commercial buildings in the United States have been members of the CSSB.

55.   The CSSB aggressively promotes its Certi-Label. For example, the CSSB website contains a 20-page brochure explaining how to read CSSB Certi-Labels and different shake and shingle grades, which includes examples of all CSSB Certi-Label products:



56.   The CSSB also warns consumers about the potential use of products bearing competing labels that are not CSSB Certi-Labels, further amplifying the purported difference between products bearing the trade association's trademark and those that do not. For example, the CSSB issued the following "Consumer Service Alert":

CLASS ACTION COMPLAINT - 12





## Consumer Service Alert

### It's within your right to REJECT off-grade, non-code-compliant cedar shakes and shingles at your yard or job site ...

Quality bundle          Off-grade, non-code-compliant bundle

### ... because off-grades are FRAUDULENT

An off-grade, non-code-compliant roof, one that doesn't comply with UBC 15-3 or UBC 15-4, is subject to a building code official's red tag/stop work order and imminent tear off.

FRAUD ALERT...  FRAUD ALERT...  FRAUD ALERT...  FRAUD ALERT...

### 2. The Domestic Cedar Shakes and Shingles Market

57. The United States cedar shakes and shingles market is a national market valued in the hundreds of millions of dollars annually.

58. A July 2018 report by BCC Research titled "Residential Roofing Materials: The North American Market" estimates 2018 total North American residential roofing material market sales of "nearly $13.0 billion." Furthermore, based on declarations filed by experienced industry participants, including Terry Adkins and Lynne Christensen, in a lawsuit that S&W recently filed, wood products represent approximately 2.1% to 3% of the residential roofing material market. Using these statements and figures, it is estimated that the annual volume of wood roofing products sold in North America is between approximately $270 million and $390 million, with the lion's share sold into the United States.

59. Cedar is the most popular wood siding and roofing choice and offers significant advantages for insulation and durability over the more common asphalt shingle roof. Cedar is

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

also considerably more expensive than alternative roofing materials like asphalt shingles and vinyl siding because it is widely considered to be more visually pleasing as well as more durable than other products.

60.     Approximately $5.6 billion of softwood lumber imports were reported by the U.S. Commerce Department in 2017, including cedar, spruce, and Douglas fir. Cedar shakes and shingles represent a substantial portion of this commerce. While roofing and siding generally constitutes 10% of the cost of a home, cedar shakes and shingles constitutes a proportionally higher percentage due to the price premium they command over alternative products.

61.     Installing cedar roof shingles (for a roof size of 1,400-2,100 square feet) currently costs approximately $12,800–$19,700, depending on the type and finish options. Because shakes are a premium quality product and are also harder to install, installing cedar roofing shakes can cost up to 1.5–2 times as much as shingles. On average, installation of cedar roofing shakes costs approximately $15,200–$24,000 (for a roof size 1,400–2,100 square feet), depending on the type and finish options.

62.     CSSB Certi-Labeled shakes and shingles, which are installed on the roofs and exterior walls of residential dwellings and commercial buildings, constitute an economically distinct relevant product market in the United States. Manufacturers that do not have the ability to market their cedar shakes and shingles with the CSSB-97 grading rules only have access to a small fraction of the high-end cedar shake and shingle market. CSSB Certi-Labels, which include the Certi-Grade, Certi-Sawn, Certi-Split and Certi-Ridge labels, account for an estimated 95% of the high-end cedar shake and shingles utilized in this relevant U.S. product market.

63.     As a result, a manufacturing participant in this market must be a member of the CSSB. Although non-CSSB or "non-bureau" mills can produce shingles that comply with the CSSB-97 grading rules, the substantial price difference between CSSB Certi-Label cedar shakes and shingles and the same grades produced by non-bureau mills is 15%–20%. This prevents non-bureau mills from being able to compete effectively for the high-value cedar logs and cut blocks that must be obtained in order to produce high-end cedar shake and shingle products.

CLASS ACTION COMPLAINT - 14

**C.** **The structure and characteristics of the cedar shakes and shingles market make the conspiracy economically plausible.**

**1.** **The cedar shakes and shingles market is vertically integrated.**

64.     The cedar shakes and shingles industry has become highly vertically integrated, particularly as a result of acquisitions by Manufacturer Defendants.

65.     For example, Defendant Waldun states on its website that it "has integrated the various aspects of cedar manufacturing, producing cedar lumber, shakes, and value-added rebutted and rejointed sidewall shingles."

66.     Vertically integrated industries such as this one are highly susceptible to collusion because the dominant firms control all or nearly all aspects of the supply chain, and thus have the ability to coordinate on output and inventory levels and, ultimately, prices.

**2.** **Demand for cedar shakes and shingles is inelastic.**

67.     Consumer demand for cedar shakes and shingles is relatively unaffected by price, thus rendering it inelastic. Inelastic demand means that increases in price result in limited declines in quantity sold in the market. In order for a group of companies to profit from raising prices above competitive levels, demand must be inelastic at competitive prices, which allows group members to raise prices without seeing a decline in sales revenue.

68.     While demand for cedar shakes and shingles is driven by residential and consumer construction, consumer demand for these particular products is unaffected by a significant and non-transitory price increase in them.

69.     Demand inelasticity for cedar shakes and shingles is not surprising when one examines their distinctive product qualities and attributes compared to shakes and shingles not bearing the CSSB's Certi-Label as well as other roofing and siding materials, as discussed further below.

**3.** **Cedar shakes and shingles are commodity-like products.**

70.     Cedar shake and shingle products containing the CSSB's Certi-Label trademark— the products at issue in this case—are undifferentiated, commodity-like products because each manufacturers' product within a relevant product type, size, and grade containing the Certi-Label

LAW OFFICES OF
McNaul Ebel Nawrot & Helgren PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

is interchangeable with the corresponding product of another manufacturer.

71.     Stated another way, cedar shakes and shingles are commodity-like products with little or no product differentiation based on manufacturer. To be sold as a product bearing the CSSB Certi-Label, all products must be uniform and meet the specifications required by the CSSB.

72.     Consequently, price is the primary basis on which Manufacturer Defendants and co-conspirator manufacturers compete for sales. In cases like this, anticompetitive coordination on pricing among competitors is easier because they cannot differentiate their products on other bases, like meaningful quality differences, to customers.

### 4.     There are no significant substitutes for cedar shakes and shingles.

73.     There are no significant substitutes for cedar shakes and shingles. While there are potential substitute products—non-Certi-Label shakes and shingles, asphalt shingle roofs, ceramic tile roofs, slate roofs, vinyl siding, or a different type wood siding—the characteristics of those products lack the unique characteristics of Certi-Label cedar wood shakes and shingles.

74.     Cedar shakes and shingles have a historic appearance and texture that cannot be attained with modern products. They are considered high-end products that have a distinctive look and feel.  They are typically found on more expensive homes and upscale commercial buildings.  One exemplar follows:

CLASS ACTION COMPLAINT - 16



**Residence with Cedar Shakes and Shingles**

75.     Cedar shakes and shingles are also more durable, which offers long-term cost savings compared to other products. This is reflected in the fact that these products have significantly longer warranties than alternative products.

76.     For all these reasons, cedar shakes and shingles are significantly more expensive than alternative products.  On average, these products are 15-20% more expensive than non-Certi-Label shakes and shingles, and approximately twice as expensive as other kinds of commonly used roofing and siding products, like asphalt shingles, ceramic tiles, and vinyl siding.

77.     Further, cedar shakes and shingles are only a small component of the overall cost of a home or building, so consumers are unlikely to substitute other products in the face of increasing prices.

        **5.      The cedar shakes and shingles market is highly concentrated.**

78.     The cedar shake and shingle industry has become significantly consolidated over the past two decades, with shake and shingle manufacturers now operating only in the Pacific Northwest. There are currently 45 total manufacturers who are members of CSSB: 17 manufacturers operate in Washington, three operate in Idaho, and 25 operate in British Columbia.

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

79.     Manufacturer Defendants are the three largest members of the CSSB. On information and belief, these Defendants, together with the co-conspirator manufacturers, collectively possess market power sufficient to control prices in and exclude price competition from the high-end cedar shake and shingle market.

### 6.     The voting structure of the CSSB concentrates power in the hands of the largest manufacturers.

80.     The structure of the CSSB allows Manufacturer Defendants to use the CSSB for anticompetitive purposes. These include colluding to fix prices on cedar shake and shingle products and to expel CSSB members, including upstart and low-cost rivals, that engage in price competition, thereby preventing them from using the indispensable CSSB label. These actions blatantly violate § 1 of the Sherman Act, which prohibits the member competitors of a trade association from engaging in collusive joint action that hinders robust competition.

81.     The CSSB grants member mills weighted votes based on each mill member's annual cedar shake and shingle production.

82.     During the last five years, several powerful, large mill members of the CSSB have conspired to promote and adopt an anticompetitive agenda that further concentrates voting power on the Board of Directors in their hands. Led by Waldun and Anbrook, whose executives have served on the CSSB Board of Directors during each of the last 10 years, the largest mill members of the CSSB have utilized their weighted voting power to defeat bylaw proposals by small CSSB members to eliminate weighted voting on non-manufacturing matters and to impose term limits on directors. This same group of large mills, again led by co-defendants Waldun and Anbrook, increased their collective power over the CSSB by adopting bylaw changes that reduced the number of seats on the Board of Directors, reduced membership meeting quorum requirements, and ensured that the Board chairperson (who is currently Anbrook's President) was not constrained by the historic practice of voting only in the event of a tie but rather was afforded full voting rights like other members of the Board of Directors.

CLASS ACTION COMPLAINT - 18

### 7. Defendants had ample opportunity to conspire.

83. Defendants had numerous opportunities to discuss, agree and act on anticompetitive schemes that had the purpose and intent of artificially raising the prices of cedar shakes and shingles.

84. *First* Manufacturer Defendants and their co-conspirators are members of the CSSB, which provided an important opportunity to meet and collude with one another.

85. Manufacturer Defendants each have executives who serve on the CSSB Board of Directors. Brooke Meeker, President and CEO of Anbrook, has been a member of the CSSB Board of Directors for more than 10 years and is the current Board Chairman. Curtis Walker, President and CEO of Waldun, has been a member of the CSSB Board of Directors for more than 10 years and is the current Secretary/Treasurer. G&R Cedar Sales Manager Stuart Dziedzic also currently sits on the Board of Directors. Other cedar shake and shingle manufacturer companies on the Board of Directors include co-conspirators A&R, Best, Premium Cedar, and Watkins.

86. Every year in August or September, the CSSB holds its Annual General Meeting, which includes a meeting of the Board of Directors. For instance, on September 10-12, 2015, the CSSB held its Annual General Meeting in Whistler, British Columbia. On August 26-27, 2016, the CSSB held its Annual General Meeting in Vancouver, British Columbia. On September 15, 2017, the CSSB held its Annual General Meeting in Vancouver, British Columbia.

87. The CSSB also holds regular conference calls and in-person meetings during the year. For instance, on February 17, 2016, the CSSB Board of Directors held a conference call, which included a confidential portion to which non-members were not invited. On May 27, 2016, the CSSB Board of Directors met in Ocean Shores, Washington.

88. The CSSB also holds various *ad hoc* events during the year attended by the Manufacturer Defendants' executives and senior management. For example, on December 17, 2015, the CSSB hosted a Lifetime Achievement Awards luncheon in Bellingham, Washington.

89. *Second*, the close proximity of Defendants and many manufacturer co-conspirators provided ample opportunities to meet and discuss pricing of cedar shakes and

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

shingles as well as conspire to exclude and eliminate competitive threats from the market.

90.     Manufacturer Defendants are all located in the greater Vancouver, British Columbia metro area. Anbrook is headquartered in Pitt Meadows, British Columbia, while Waldun is headquartered in the neighboring city, Maple Ridge, British Columbia—approximately 16 miles east of Anbrook. G&R Cedar is based in Matsqui, which is only about 23 miles to the west of both cities. Additionally, Defendant CSSB is located just outside the Vancouver metro area in Mission, British Columbia—approximately 7 miles east of Waldun.

91.     The co-conspirator manufacturers are also located close to each other and to Defendants. Premium Cedar and Watkins are both located in Maple Ridge, British Columbia, the same city where Waldun is located. A&R and Best are both headquartered in Hoquiam, Washington.

### 8.   High entry barriers exist in the cedar shakes and shingles market.

92.     There are significant barriers to entering the United States market for cedar shakes and shingles. This reality makes it difficult for upstart and potential competitors to enter the market in a meaningful way in order to offer competitive prices for cedar shakes and shingles to purchasers.

93.     To effectively compete with cedar shake and shingle products, the product must be CSSB Certi-Labeled. Although non-CSSB or "non-bureau" manufacturers can produce shingles that comply with the CSSB-97 grading rules, there is a 15%-20% price difference between CSSB Certi-Label cedar shakes and shingles and the same grades produced by non-bureau manufacturers. This prevents non-bureau manufacturers from being able to compete effectively for the high-cost cedar logs and cut blocks needed to make cedar shakes and shingles. Accordingly, a manufacturer participant in the cedar shakes and shingles market is required to be a member of the CSSB in order to compete.

94.     Even if an upstart or potential competitor managed to gain entry to CSSB to participate in the cedar shakes and shingles market, that competitor could not deviate from the

CLASS ACTION COMPLAINT - 20

price-fixing conspiracy implemented by the Defendants and gain substantial market share through price competition. Otherwise, that competitor would be expelled from the CSSB, as was S&W in December 2018.

**D.    The performance observed in the cedar shakes and shingles industry makes the conspiracy economically plausible.**

**1.    The prices of cedar shakes and shingles since at least 2011 cannot be explained by ordinary market forces.**

95.    Since at least January 1, 2011, the price of cedar shakes and shingles has risen and cannot be fully explained by normal market forces such as increased raw material costs or increased demand.

96.    Since at least January 1, 2011, there has been a consistent increase in the prices of cedar shingles and shakes. For example, as shown in the chart below, prices of Number 1 Grade products have surpassed pre-recession levels, with certain products experiencing 10 percent year-over-year price increases.

CLASS ACTION COMPLAINT - 21

LAW OFFICES OF
McNaul Ebel Nawrot & Helgren PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816



**Chart 1**
**Price per Square of Number 1 Grade Cedar Shingles and Shakes**[1]

97. Similarly, the price of the lower quality Grade 2 has also increased markedly since 2011, as illustrated in the chart below:

[1] Weekly price series as reported by Random Lengths Publications, Inc.

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816



**Chart 2**
**Price per Square of Number 2 Grade Cedar Shingles**[2]

Green W Red Cedar Shingles #2 5X Prices Per Square Net f.o.b. Mill
Green W Red Cedar Shingles #2 Perfections Prices Per Square Net f.o.b. Mill

98.     The increase in prices for finished cedar shingles and shakes contrasts with much lower price increases associated with softwood lumber, the main raw material and cost input for these products, as well as the export price of Canadian coniferous timber over the same period. The following chart shows the:

- Producer Price Index ("PPI") for Commodity data for Lumber and wood products, covering Wood ties, siding, shingles, and shakes, and contract sawing of logs owned by others;

- PPI for industry data for Sawmills, covering Wood ties, siding, shingles, and shakes, and contract sawing of logs owned by others, not seasonally adjusted; and

- Average Canadian export price index for coniferous industrial roundwood other than fir or spruce or pine (USD).

---

[2] Weekly price series as reported by Random Lengths Publications, Inc.

CLASS ACTION COMPLAINT - 23

**Chart 3**
**Producer Price Indices for Softwood Lumber and Sawmill Shingle**
**and Shake Products vs Price of Canadian Softwood Timber**[3]



99.     Comparing the above series shows that prices for cedar shingles and shakes have grown far more rapidly than the prices of other softwood lumber inputs and the price of Canadian timber. This disparity in price increases is also indicated by the following chart:

---

[3] US Bureau of Labor Statistics, "PPI industry data for Sawmills-Wood ties, siding, shingles, and shakes, and contract sawing of logs owned by others, not seasonally adjusted" and "PPI Commodity data for Lumber and wood products-Wood ties, siding, shingles, and shakes, and contract sawing of logs owned by others, not seasonally adjusted."   United Nations Economic Commission for Europe, Food and Agriculture Organization of the United Nations, TIMBER database (series: Coniferous industrial roundwood other than fir or spruce or pine).

CLASS ACTION COMPLAINT - 24

1
2
3
4
5
6
7
8
9
10
12
13
14
15
16

**Chart 4**
**Index of Cedar Shingles and Shakes Prices vs Input Prices**[4]



17      100.    The above charts and resulting analysis reveals that prices for cedar shingles and

18  shakes have displayed a consistent increase since 2011 when, all else being equal, one would

19  expect a decline as explained below.

20      101.    Moreover, tariffs recently being considered for softwood lumber imports from

21  Canada also do not explain the price increase in cedar shakes and shingles, since those tariffs

22  have not actually been implemented. While a September 2018 decision from the International

23  Trade Administration ("ITA") suggested that these producers were encompassed by a January

24

25  _____
    [4] US Bureau of Labor Statistics, "PPI industry data for Sawmills-Wood ties, siding,
26  shingles, and shakes, and contract sawing of logs owned by others, not seasonally adjusted" and
    "PPI Commodity data for Lumber and wood products-Wood ties, siding, shingles, and shakes,
27  and contract sawing of logs owned by others, not seasonally adjusted."   United Nations
    Economic Commission for Europe, Food and Agriculture Organization of the United Nations,
28  TIMBER database (series: Coniferous industrial roundwood other than fir or spruce or pine).
    Weekly price series as reported by Random Lengths Publications, Inc.

CLASS ACTION COMPLAINT - 25

2018 tariff order, manufacturers formed a Shake and Shingle Alliance ("SSA") to challenge the ITA's decision. On November 8, 2018, SSA sued to challenge the ITA decision in the Court of International Trade. Information from the International Trade Commission currently shows cedar shakes and shingles being free of any such tariff.

### 2. Cedar shakes and shingles inventories have significantly increased in recent years compared to production levels.

102.     One indicia of anticompetitive behavior in an industry is unexplained increases in inventories of a commodity product.  During the class period, this indicia was present.

103.     The chart below is a monthly comparison of the value of inventory of cedar shakes and siding to the value of cedar shakes and shingles manufactured each month. The manufacture of new cedar shakes and shingles began declining in 2009 and remained relatively low through 2016. However, in the 2011-2012 period, the inventories of cedar shakes and shingles maintained by these manufacturers started to stabilize and then increase substantially. At the same time, as seen above, prices for shingles and shakes were generally increasing over this time period. In a competitive market, manufacturers would opt to sell at a lower price rather than accumulate inventory. This build-up of inventory is suggestive of anti-competitive restrictions by manufacturers of cedar shakes and shingles in order to maintain or increase prices.

CLASS ACTION COMPLAINT - 26



### E.    Traditional conspiracy evidence demonstrates the conspiracy's existence.

104.    Under the auspices of the Certi-Label labeling program, which accounts for the vast majority of cedar shakes and shingles sold in the United States, Defendants and their co-conspirators enacted a scheme to fix pricing and exclude competitive threats from the market.

105.    As noted above, due to consolidation and the weighted voting structure of the CSSB, Manufacturer Defendants have obtained a concentration of power in the CSSB. Manufacturer Defendants increased their collective voting power through a series of Board actions in November 2016, November 2017, and November 2018. As a result of these actions, Manufacturer Defendants, along with their co-conspirators, now effectively control the CSSB vote.

106.    On information and belief, no later than January 1, 2011 and continuing through the present, Defendants and their co-conspirators conspired to fix prices for cedar shakes and shingle products sold into the United States market.

107.    Manufacturer Defendants—the largest manufacturer members of the Board of

CLASS ACTION COMPLAINT - 27

Directors—did this by agreeing among themselves and their co-conspirators (and potentially others) on prices and price levels to charge for cedar shakes and shingles. As part of this illicit scheme, Defendants also pressured other CSSB members to hold their prices at consistent levels and not lower them or offer discounts to customers.

108.    As part of the same anticompetitive scheme, Manufacturer Defendants and CSSB, along with their co-conspirators, conspired to eliminate or discipline other CSSB members who compete on price and who are unwilling to follow the price leadership of Manufacturer Defendants. This blatantly anticompetitive and illegal motivation resulted in the CSSB Board of Directors voting to terminate the membership of S&W on December 21, 2018, a membership that S&W had held for 24 years dating back to 1994.

109.    In a lawsuit filed against Waldun, Anbrook and CSSB in this District on February 13, 2019, S&W alleges it was expelled from the CSSB for undercutting the pricing set by Defendants and others pursuant to the conspiracy. As S&W alleges in its complaint: "Throughout the four years predating the filing of this complaint, Waldun's Curtis Walker and Anbrook's Brooke Meeker have regularly conspired and colluded to fix prices for cedar shake and shingle products sold into the United States market and have encouraged other mill manufacturers to join in that price collusion."

110.    S&W specifically alleges that the reason it was terminated from the CSSB was that S&W would not participate in the price-fixing conspiracy. According to S&W, it was forced out of the CSSB during a "hastily convened special meeting by telephone conference call" involving presently unknown members of the CSSB Board of Directors. S&W maintains that the purported reason for its expulsion—a mislabeling violation—is false, pretextual, and unsupported: "Despite these facts, several CSSB Directors who are executives with Waldun, Anbrook and a number of other large member mills successfully secured a three-fourths vote in favor of terminating S&W's CSSB membership, not because of a mislabeling violation but in pursuit of their conspiracy to eliminate a competitor unwilling to engage in price fixing or collusion."

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

111.   A wholesaler with whom Plaintiff's counsel has spoken in connection with this matter echoes S&W's assessment.  A sales manager at a national wholesale company claims he heard that S&W got kicked out of CSSB "over a fairly minor thing" involving a specialty cut product.

112.   On information and belief, and as alleged in S&W's complaint, other manufacturers besides S&W have been excluded or removed from the CSSB as a result of not participating in the alleged anticompetitive pricing conspiracy.

113.   Kris Watkins, Chief of Operations of Watkins, submitted a declaration in support of the S&W Forest Products lawsuit. The declaration describes a discussion between Mr. Watkins and Waldun's Curtis Walker. During a December 5, 2018, visit that Mr. Walker made to Mr. Watkins' office, one of the issues discussed was "shake and shingle pricing." In response to Watkins' comment that his company had decided to absorb some of the impact of a tariff rather than pass it all on to customers, "Mr. Walker told me that we should not have done this and that Waldun Forest Products never dropped their pricing."

114.   Mr. Watkins continued in his declaration: "This conversation about pricing continued with Mr. Walker arguing that CSSB mills should hold their prices at consistent levels. I disagreed and told him such an approach was unrealistic because the smaller self-financed mills needed to drop their prices during times like winter slowdowns when cash flow was reduced in order to generate operating cash. Mr. Walker stated that he did not believe that many CSSB mills would do this. I countered that S&W Forest Products did it from time to time because I recalled specific situations where we offered shake or shingle products from S&W at discounted prices because Michael Watkins [Kris Watkins' relative] stated that the company needed to generate the cash flow. In response, Mr. Walker appeared very agitated and said: 'yeah, well we just need to get rid of that guy.'"

115.   Len Taylor, the President and Owner of Taylor Forest Products, Inc., also submitted a declaration in support of the S&W Forest Products lawsuit. The declaration describes a business trip that Mr. Taylor took to British Columbia sometime within the last five

CLASS ACTION COMPLAINT - 29

years. During the business trip, Mr. Taylor visited Defendant G&R's facility in Chilliwack, British Columbia. The purpose of his visit was to meet with G&R's Sales Manager Stuart Dziedzic.

116.    While Mr. Taylor cannot remember the month or year of this meeting, he distinctly recalls what happened during it. Mr. Taylor was waiting in Mr. Dziedzic's office while Mr. Dziedzic was finishing a telephone call. When Mr. Dziedzic got off the phone, Mr. Dziedzic said that some competitors were being tough on him and wanted him to raise G&R's cedar shake and shingle prices.

117.    Mr. Taylor is 100% certain that Mr. Dziedzic told him that the call was from either Anbrook's Brooke Meeker or Waldun's Curtis Walker, but he cannot remember which of the two was the person who called him. It was clear, however, from Mr. Dziedzic's statements to Mr. Taylor that Mr. Dziedzic was referring to collective pressure from both Anbrook and Waldun based upon the call Mr. Dziedzic received from either Ms. Meeker or Mr. Walker.

118.    Defendants' and co-conspirators' collusive conduct had the intended purpose and effect of increasing the price of cedar shakes and shingles sold to Plaintiff and the other members of the Classes.

## VII.    CLASS ACTION ALLEGATIONS

119.    Plaintiff brings this action on behalf of itself, and as a class action under the Federal Rules of Civil Procedure, Rule 23(a), (b)(2) and (b)(3), seeking injunctive relief pursuant to federal law, and damages pursuant to various state antitrust, unfair competition, unjust enrichment, and consumer protection laws of the states listed below on behalf of the members of the following classes:

> **Nationwide class**: All persons and entities who indirectly purchased Cedar shakes and shingles from Defendants or co-conspirators for resale in the United States during the Class Period.

> **Alaska class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for resale in Alaska during the Class Period.

CLASS ACTION COMPLAINT - 30

**Arizona class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for resale in Arizona during the Class Period.

**Arkansas class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for resale in Arkansas during the Class Period.

**California class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for resale in California during the Class Period.

**Colorado class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for resale in Colorado during the Class Period.

**Delaware class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for resale in Delaware during the Class Period.

**District of Columbia class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for resale in the District of Columbia during the Class Period.

**Florida class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for resale in Florida during the Class Period.

**Georgia class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for resale in Georgia during the Class Period.

**Hawaii class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for resale in Hawaii during the Class Period.

**Illinois class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for resale in Illinois during the Class Period.

**Iowa class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for resale in Iowa during the Class Period.

**Kansas class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for resale in Kansas during the Class Period.

**Maine class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for resale in Maine during the Class Period.

CLASS ACTION COMPLAINT - 31

**Massachusetts class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for resale in Massachusetts during the Class Period.

**Michigan class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for resale in Michigan during the Class Period.

**Minnesota class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for resale in Minnesota during the Class Period.

**Mississippi class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for resale in Mississippi during the Class Period.

**Missouri class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for resale in Missouri during the Class Period.

**Montana class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for resale in Montana during the Class Period.

**Nebraska class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for resale in Nebraska during the Class Period.

**Nevada class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for resale in Nevada during the Class Period.

**New Hampshire class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for resale in New Hampshire during the Class Period.

**New Mexico class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for resale in New Mexico during the Class Period.

**New York class**: All persons and who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for resale in New York during the Class Period.

**North Carolina class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for resale in North Carolina during the Class Period.

**North Dakota class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for resale in North Dakota during the Class Period.

CLASS ACTION COMPLAINT - 32

**Oregon class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for resale in Oregon during the Class Period.

**Rhode Island class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for resale in Rhode Island during the Class Period.

**South Carolina class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for resale in South Carolina during the Class Period.

**South Dakota class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for resale in South Dakota during the Class Period.

**Tennessee class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for resale in Tennessee during the Class Period.

**Utah class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for resale in Utah during the Class Period.

**Vermont class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for resale in Vermont during the Class Period.

**Virginia class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for resale in Virginia during the Class Period.

**West Virginia class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for resale in West Virginia during the Class Period.

**Wisconsin class**: All persons and entities who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for resale in Wisconsin during the Class Period

120.    Specifically excluded from the Classes are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded from the Classes are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and any co-conspirator identified in this action. Further excluded from the Classes are purchases of value-added products not manufactured, supplied or processed by Defendants, or

CLASS ACTION COMPLAINT - 33

1   otherwise not under the control of Defendants.

2   121.   **Class Period:** The Class Period (also referenced as the Conspiracy Period herein)

3   is defined as January 1, 2011 to the present. Additional discovery may reveal that the conduct

4   alleged in this Complaint commenced at an earlier time, and Plaintiff reserves all rights to amend

5   its complaint as appropriate.

6   122.   **Class Identity:** The above-defined Classes are readily identifiable and are ones

7   for which records should exist.

8   123.   **Numerosity:** Plaintiff does not know the exact number of the members of the

9   Classes because such information presently is in the exclusive control of Defendants, retailers,

10  resellers and other entities in the supply chain of cedar shakes and shingles. Plaintiff believes that

12  due to the nature of the trade and commerce involved, there are hundreds or thousands of

13  members of the Classes  geographically dispersed throughout the United States, such that joinder

14  of all members of the Classes  is impracticable.

15  124.   **Typicality**: Plaintiff's claims are typical of the claims of the members of the

16  Classes because Plaintiff purchased cedar shakes and shingles indirectly from one or more of the

17  Defendants for resale to end users, and therefore Plaintiff' claims arise from the same common

18  course of conduct giving rise to the claims of the Classes and the relief sought is common to the

19  Classes.

20  125.   **Common questions exist and predominate over any individual questions:**

21  There are questions of law and fact common to the Classes, including, but not limited to:

22  126.   Whether Defendants and their co-conspirators engaged in an agreement,

23  combination, or conspiracy to fix, raise, elevate, maintain, or stabilize prices of cedar shakes and

24  shingles sold in interstate commerce in the United States;

25        a.   The identity of the participants of the alleged conspiracy;

26        b.   The duration of the conspiracy alleged herein and the acts performed by

27             Defendants and their co-conspirators in furtherance of the conspiracy;

28        c.   Whether the alleged conspiracy violated federal antitrust law;

CLASS ACTION COMPLAINT - 34

LAW OFFICES OF
McNaul Ebel Nawrot & Helgren pllc
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

d. Whether the alleged conspiracy violated the antitrust and consumer protection laws of the various states;

e. Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of the Plaintiff and the other members of the Classes;

f. The effect of Defendants' alleged conspiracy on the prices of cedar shakes and shingles sold in the United States during the Class Period;

g. Whether Plaintiff and other members of the Classes are entitled to, among other things, injunctive relief and if so, the nature and extent of such injunctive relief; and

h. The appropriate class-wide measure of damages.

127. These and other questions of law and fact, which are common to the members of the Classes, predominate over any questions affecting only individual members of the Classes.

128. **Adequacy:** Plaintiff will fairly and adequately protect the interests of the Classes in that Plaintiff' interests are aligned with, and not antagonistic to, those of the other members of the Classes who indirectly purchased cedar shakes and shingles from Defendants or co-conspirators for resale, and Plaintiff has retained counsel competent and experienced in the prosecution of class actions and antitrust litigation to represent itself and the Classes.

129. **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual joinder of all damaged members of the Classes is impractical. Prosecution as a class action will eliminate the possibility of duplicative litigation. The relatively small damages suffered by individual members of the Classes compared to the expense and burden of individual prosecution of the claims asserted in this litigation means that, absent a class action, it would not be feasible for members of the Classes to seek redress for the violations of law herein alleged. Further, individual litigation presents the potential for inconsistent or contradictory judgments and would greatly magnify the delay and expense to all parties and to the court system. Accordingly, a class action presents far fewer case

LAW OFFICES OF
McNaul Ebel Nawrot & Helgren PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1    management difficulties and will provide the benefits of unitary adjudication, an economy of

2    scale, and comprehensive supervision by a single court.

3        130.    The prosecution of separate actions by individual members of the Classes would

4    create the risk of inconsistent or varying adjudications, establishing incompatible standards of

5    conduct for Defendants.

6        131.    Plaintiff brings this action on behalf of all persons similarly situated pursuant to

7    Rule 23, on behalf of all persons and entities that, as residents of various states, indirectly

8    purchased one or more cedar shakes and shingles that a defendant or co-conspirator

9    manufactured for resale during the Class Period.

10       132.    Defendants have acted on grounds generally applicable to the Classes, thereby

12   making final injunctive relief appropriate with respect to the Classes as a whole.

13   **VIII.   ANTITRUST INJURY**

14       133.    In an efficient market, manufacturers of cedar shakes and shingles would compete

15   on price to keep or increase their market share. For example, a company might choose to absorb

16   some of the impact of tariffs rather than passing the price increase to the customers. Similarly,

17   smaller self-financed mills may need to drop their prices during winter slowdowns to generate

18   operating cash.

19       134.    Defendants' anticompetitive conduct had the following effects, among others:

20           a.    Price competition has been restrained or eliminated with respect to cedar shakes

21                and shingles;

22           b.   The prices of cedar shakes and shingles have been fixed, raised, stabilized, or

23                maintained at artificially inflated levels; and

24           c.   Purchasers of cedar shakes and shingles have been deprived of free and open

25                competition among cedar shake and shingle manufacturers.

26       135.    The purpose of the conspiratorial conduct of Defendants and their con-

27   spirators was to raise, fix, or maintain the price of cedar shakes and shingles and, as a direct

28   and foreseeable result, Plaintiff and the other members of the Classes paid supra-competitive

CLASS ACTION COMPLAINT - 36

prices for cedar shakes and shingles during the Class Period.

136.   By reason of the alleged violations of the antitrust and other laws, Plaintiff and the other members of the Classes have sustained injury to their businesses or property, having paid higher prices for cedar shakes and shingles than they would have paid in the absence of Defendants' illegal contract, combination, or conspiracy, and as a result have suffered damages.

137.   This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

## IX.   FRAUDULENT CONCEALMENT AND TOLLING

138.   Plaintiff had neither actual nor constructive knowledge of the facts constituting its claim for relief.

139.   Plaintiff and the other members of the Classes did not discover, and could not have discovered through the existence of reasonable diligence, the existence of the conspiracy alleged herein until on or about February 13, 2019, the date on which S&W Forest Products filed its antitrust complaint and exposed allegations of collusion among Defendants.

140.   Defendants and their co-conspirators engaged in a secret conspiracy that did not reveal facts that would put Plaintiff and the other members of the Classes on inquiry notice that there was a conspiracy to fix the prices of cedar shakes and shingles.

141.   Accordingly, Plaintiff could not have had either actual or constructive knowledge of the conspiracy until the S&W complaint was filed.

142.   Furthermore, Defendants and their co-conspirators took active steps to conceal the conspiracy and prevent Plaintiff and the other members of the Classes from discovering its existence until the S&W complaint was filed. For example, to discuss and implement the conspiracy, Defendants and their co-conspirators met in private at their places of business and during CSSB meetings that were not open to the public.  They also discussed the conspiracy during private telephone calls.  Finally, Defendants and their co-conspirators did not reveal in their price increase announcements or otherwise that a reason for the price increases and price levels during the Class Period was the anticompetitive conspiracy described herein.

CLASS ACTION COMPLAINT - 37

143.    Because the alleged conspiracy was kept secret, Plaintiff and the other members of the Classes were unaware of this unlawful conduct alleged herein and did not know that the prices they paid for cedar shakes and shingles were artificially high during the Class Period.

## X.    CLAIMS FOR RELIEF

### A.    Claims Under Federal Law

#### 1.    Violation of Section 1 of the Sherman Act

144.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

145.    Beginning at a time currently unknown to Plaintiff, but at least as early as January 1, 2011, and continuing through the present, the exact dates being unknown to Plaintiff, Defendants and their co-conspirators entered into a continuing agreement, understanding, and conspiracy in restraint of trade artificially to fix, raise, stabilize, and peg prices for cedar shakes and shingles in the United States, in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

146.    In forming and carrying out the alleged agreement, understanding, and conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices, and course of conduct set forth above, and the following, among others:

      a.  Fixing, raising, stabilizing, and maintaining the price of cedar shakes and shingles; and

      b.  Excluding upstart and lower-cost cedar shake and shingle manufacturers from the market.

147.    The combination and conspiracy alleged herein has had the following effects, among others:

      a.  Price competition in the sale of cedar shakes and shingles has been restrained, suppressed, or eliminated in the United States;

      b.  Prices for cedar shakes and shingles manufactured by Defendants and their co-conspirators have been fixed, raised, maintained and stabilized at artificially high,

CLASS ACTION COMPLAINT - 38

1    non-competitive levels throughout the United States; and

2        c.    Those who purchased cedar shakes and shingles manufactured by Defendants and

3            their co-conspirators have been deprived of the benefits of free and open

4            competition.

5    148.    Plaintiff and members of the Classes have been injured and will continue to be

6    injured in their businesses and property by paying more for cedar shakes and shingles

7    manufactured by Defendants and their co-conspirators for resale than they would have paid and

8    will pay in the absence of the combination and conspiracy.

9    **B.    State Law Antitrust Claims**

10       **1.    Violation of Arizona's Uniform State Antitrust Act (Arizona
            Revised Statutes §§ 44-1401, *et seq.*) on behalf of the Arizona
12           Class**

13   149.    Plaintiff incorporates and realleges, as though fully set forth herein, each and

14   every allegation set forth in the preceding paragraphs of this Complaint.

15   150.    Defendants have entered into an unlawful agreement in restraint of trade in

16   violation of Arizona Revised Statutes §§ 44-1401, *et seq.*

17   151.    Defendants entered into a contract, combination, or conspiracy between two or

18   more persons in restraint of, or to monopolize, trade or commerce in the cedar shakes and

19   shingles market, a substantial part of which occurred within Arizona.

20   152.    Defendants established, maintained, or used a monopoly, or attempted to establish

21   a monopoly, of trade or commerce in the relevant market, a substantial part of which occurred

22   within Arizona, for the purpose of excluding competition or controlling, fixing, or maintaining

23   prices in the cedar shakes and shingles market.

24   153.    During the Class Period, Defendants' illegal conduct was flagrant and

25   substantially affected Arizona's trade and commerce.

26   154.    As a direct and proximate cause of Defendants' unlawful conduct, the Arizona

27   Plaintiff(s) and members of the Arizona Class have been injured in their business or property and

28   are threatened with further injury.

CLASS ACTION COMPLAINT - 39

155.    The combination and conspiracy alleged herein has had the following effects, among others:

     a.   Price competition in the sale of cedar shakes and shingles has been restrained, suppressed, and/or eliminated in the United States;

     b.   Prices for cedar shakes and shingles manufactured by Defendants and all of their co-conspirators have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout the United States; and

     c.   Those who purchased cedar shakes and shingles manufactured by the Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

156.    By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Arizona Revised Statutes §§ 44-1401, *et seq.* Accordingly, Arizona Plaintiff(s) and members of the Arizona Class are entitled to and seek all damages and other forms of relief available under Arizona Revised Statutes §§ 44-1401, *et seq.*

157.    Notice and a copy of this Complaint is being served upon the Arizona Attorney General on behalf of Arizona Plaintiff(s) and the Arizona Class. Ariz. Rev. Stat. § 44-1415.

### 2.    Violation of California's Cartwright Act (Cal. Bus. & Prof. Code § 1600, *et seq.*) on behalf of the California Class

158.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the California Business and Professions Code §§ 16700, *et seq.*, ("The Cartwright Act").

159.    California policy is that "vigorous representation and protection of consumer interests are essential to the fair and efficient functioning of a free enterprise market economy," including by fostering competition in the marketplace. Cal. Bus. & Prof. Code § 301.

160.    Under the Cartwright Act, indirect purchasers have standing to bring and maintain an action for damages and other relief based on the facts alleged in this Complaint. Cal. Bus. & Prof. Code § 16750(a).

CLASS ACTION COMPLAINT - 40

161.     Under California law, a trust is any combination intended for various purposes, including but not limited to creating or carrying out restrictions in trade or commerce, limiting or reducing the production or increasing the price of merchandise, or preventing competition in the market for a commodity. Cal. Bus. & Prof. Code § 16720. Every trust in California is unlawful except as provided by the Code. Cal. Bus. & Prof. Code § 16726.

162.     During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720 of the California Business and Professions Code. Defendants, and each of them, have acted in violation of Section 16720 of the California Business and Professions Code to fix, raise, stabilize, and/or maintain prices of cedar shakes and shingles at supra-competitive levels. The aforesaid violations of Section 16720 of the California Business and Professions Code consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain, and/or stabilize the prices of cedar shakes and shingles.

163.     The combination and conspiracy alleged herein has had the following effects, among others:

a.     Price competition in the sale of cedar shakes and shingles has been restrained, suppressed, and/or eliminated in the United States;

b.     Prices for cedar shakes and shingles manufactured by Defendants and all of their Co-Conspirators have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout the United States; and

c.     Those who purchased cedar shakes and shingles manufactured by the Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

164.     The California Class purchased cedar shakes and shingles within the State of California during the Class Period.

165.     But for Defendants' conduct set forth herein, the price of cedar shakes and

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

shingles would have been lower, in an amount to be determined at trial.

166.    Defendants' anticompetitive conduct was knowing, willful and constitutes a flagrant violation of the California Business and Professions Code §§ 16700, *et seq.*

167.    For the purpose of forming and effectuating the unlawful trust, Defendants and their co-conspirators have done those things which they combined and conspired to do, including but not in any way limited to the acts, practices and course of conduct set forth above and the following: fixing, raising, stabilizing, and/or pegging the price of cedar shakes and shingles.

### 3.    Violation of the Colorado Revised Statutes §§ 6-4-101, *et seq.* on behalf of the Colorado Class.

168.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Colorado Revised Statutes §§ 6-4-101, *et seq.*

169.    The combination and conspiracy alleged herein has had the following effects, among others:

    a.   Price competition in the sale of cedar shakes and shingles has been restrained, suppressed, and/or eliminated in the United States;

    b.   Prices for cedar shakes and shingles manufactured by Defendants and all of their Co-Conspirators have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout the United States; and

    c.   Those who purchased cedar shakes and shingles manufactured by the Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

170.    During the Class Period, Defendants' illegal conduct substantially affected Colorado commerce.

171.    As a direct and proximate result of Defendants' unlawful conduct, Colorado Plaintiff(s) and members of the Colorado Class have been injured in their business and property and are threatened with further injury.

172.     By reason of the foregoing, Defendants entered into agreements in restraint of

CLASS ACTION COMPLAINT - 42

trade in violation of Colorado Revised Statutes §§ 6-4-101, *et seq.* Accordingly, Colorado Plaintiff(s) and members of the Colorado Class seek all damages and other forms of relief available under Colorado Revised Statutes §§ 6-4-101, *et seq.*

173.    Notice and a copy of this Complaint is being served upon the Colorado Attorney General on behalf of Colorado Plaintiff(s) and the Colorado Class. Colo. Rev. Stat. § 6-4-115.

### 4.    Violation of the District of Columbia Antitrust Act (D.C. Code § 28-4501, *et seq.*) on behalf of the District of Columbia Class

174.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

175.    The policy of District of Columbia Code, Title 28, Chapter 45 (Restraints of Trade) is to "promote the unhampered freedom of commerce and industry throughout the District of Columbia by prohibiting restraints of trade and monopolistic practices."

176.    The combination and conspiracy alleged herein has had the following effects, among others:

   a.    Price competition in the sale of cedar shakes and shingles has been restrained, suppressed, and/or eliminated in the United States;

   b.    Prices for cedar shakes and shingles manufactured by Defendants and all of their Co-Conspirators have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout the United States; and

   c.    Those who purchased cedar shakes and shingles manufactured by the Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

177.    Members of the District of Columbia Class purchased cedar shakes and shingles within the District of Columbia during the Class Period. But for Defendants' conduct set forth herein, the price of cedar shakes and shingles would have been lower, in an amount to be determined at trial.

178.    Under District of Columbia law, indirect purchasers have standing to maintain an

CLASS ACTION COMPLAINT - 43

action under the antitrust provisions of the D.C. Code based on the facts alleged in this Complaint, because "any indirect purchaser in the chain of manufacture, production or distribution of goods...shall be deemed to be injured within the meaning of this chapter." D.C. Code § 28-4509(a).

179.    Defendants contracted, combined or conspired to act in restraint of trade within the District of Columbia, and monopolized or attempted to monopolize the market for cedar shakes and shingles within the District of Columbia, in violation of D.C. Code § 28-4501, *et seq.*

180.    Plaintiff and members of the District of Columbia Class were injured with respect to purchases of cedar shakes and shingles in the District of Columbia and are entitled to all forms of relief, including actual damages, treble damages, and interest, reasonable attorney's fees and costs.

### 5.    Violation of the Illinois Antitrust Act (740 §§ ILCS 10/1, *et seq.*) on behalf of the Illinois Class

181.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

182.    The Illinois Antitrust Act, 740 ILCS 10/1, *et seq.*, aims "to promote the unhampered growth of commerce and industry throughout the State by prohibiting restraints of trade which are secured through monopolistic or oligarchic practices and which act or tend to act to decrease competition between and among persons engaged in commerce and trade. . . ." 740 ILCS 10/1.

183.    Illinois Plaintiff(s) and members of the Illinois Class have standing to pursue claims against the Defendants and their co-conspirators, as the Illinois Antitrust Act provides in relevant part that, "[n]o provision of this Act shall deny any person who is an indirect purchaser the right to sue for damages." 740 ILCS 10/7.

184.    Plaintiff purchased cedar shakes and shingles within the State of Illinois during the Class Period. But for Defendants' conduct set forth herein, the price of cedar shakes and shingles would have been lower, in an amount to be determined at trial.

CLASS ACTION COMPLAINT - 44

185.    Under the Illinois Antitrust Act, indirect purchasers have standing to maintain an action for damages based on the facts alleged in this Complaint. 740 ILCS 10/7(2).

186.    Defendants made contracts or engaged in a combination or conspiracy with each other, though they would have been competitors but for their prior agreement, for the purpose of fixing, controlling or maintaining prices for cedar shakes and shingles sold, and/or for allocating customers or markets for cedar shakes and shingles within the intrastate commerce of Illinois.

187.    Defendants further unreasonably restrained trade or commerce and established, maintained or attempted to acquire monopoly power over the market for cedar shakes and shingles in Illinois for the purpose of excluding competition, in violation of 740 ILCS 10/1, *et seq.*

188.    During the Class Period, Defendants' illegal conduct substantially affected Illinois commerce, including by causing the price of cedar shakes and shingles in Illinois to be artificially elevated to the detriment of the Illinois Plaintiff(s) and the members of the Illinois Class.

189.    Plaintiff and members of the Illinois Class were injured with respect to purchases of cedar shakes and shingles in Illinois and are entitled to all forms of relief, including actual damages, treble damages, reasonable attorney's fees, and costs.

### 6.    Violation of Iowa Competition Law (Iowa Code §§ 553.1, *et seq.*) on behalf of the Iowa Class

190.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

191.    The Iowa Competition Law aims to "prohibit[] restraint of economic activity and monopolistic practices." Iowa Code § 553.2.

192.    Plaintiff purchased cedar shakes and shingles within the State of Iowa during the Class Period. But for Defendants' conduct set forth herein, the price of cedar shakes and shingles would have been lower, in an amount to be determined at trial.

193.    Defendants contracted, combined or conspired to restrain or monopolize trade in

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

the market for cedar shakes and shingles, and attempted to establish or did in fact establish a monopoly for the purpose of excluding competition or controlling, fixing or maintaining prices for cedar shakes and shingles, in violation of Iowa Code § 553.1, *et seq.*

194.    During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce, including by causing the price in Iowa of cedar shakes and shingles to be artificially elevated.

195.    Plaintiff and members of the Iowa Class were injured with respect to purchases of cedar shakes and shingles in Iowa, and are entitled to all forms of relief, including actual damages, exemplary damages for willful conduct, reasonable attorney's fees and costs, and injunctive relief.

### 7.    Violation of the Kansas Restraint of Trade Act (Kan. Stat. Ann. §§ 50-112, *et seq.*) on behalf of the Kansas Class

196.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

197.    The Kansas Restraint of Trade Act aims to prohibit practices which, inter alia, "tend to prevent full and free competition in the importation, transportation or sale of articles imported into this state." Kan. Stat. Ann. § 50-112.

198.    Plaintiff purchased cedar shakes and shingles within the State of Kansas during the Class Period. But for Defendants' conduct set forth herein, the price of cedar shakes and shingles would have been lower, in an amount to be determined at trial.

199.    Under the Kansas Restraint of Trade Act, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. Kan. Stat. Ann § 50-161(b).

200.    Defendants combined capital, skill or acts for the purposes of creating restrictions in trade or commerce of cedar shakes and shingles, increasing the price of cedar shakes and shingles, preventing competition in the sale of cedar shakes and shingles, or binding themselves not to sell cedar shakes and shingles, in a manner that established the price of cedar shakes and shingles and precluded free and unrestricted competition among themselves in the sale of cedar

CLASS ACTION COMPLAINT - 46

shakes and shingles, in violation of Kan. Stat. Ann. § 50-101, *et seq.*

201.     Plaintiff and members of the Kansas Class were injured with respect to purchases of cedar shakes and shingles in Kansas and are entitled to all forms of relief, including actual damages, reasonable attorney's fees and costs, and injunctive relief.

### 8.     Violation of Maine's Antitrust Statute (Me. Rev. Stat. Ann. Tit. 10, § 1101, *et seq.*) on behalf of the Maine Class

202.     Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

203.     Part 3 of Title 10 the Maine Revised Statutes generally governs regulation of trade in Maine. Chapter 201 thereof governs monopolies and profiteering, generally prohibiting contracts in restraint of trade and conspiracies to monopolize trade. Me. Rev. Stat. Ann. Tit. 10, §§ 1101-02.

204.     Plaintiff purchased cedar shakes and shingles within the State of Maine during the Class Period. But for Defendants' conduct set forth herein, the price of cedar shakes and shingles would have been lower, in an amount to be determined at trial.

205.     Under Maine law, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. Me. Rev. Stat. Ann. Tit. 10, § 1104(1).

206.     Defendants contracted, combined or conspired in restraint of trade or commerce of cedar shakes and shingles within the intrastate commerce of Maine, and monopolized or attempted to monopolize the trade or commerce of cedar shakes and shingles within the intrastate commerce of Maine, in violation of Me. Rev. Stat. Ann. Tit. 10, § 1101, *et seq.*

207.     Plaintiff and members of the Maine Class were injured with respect to purchases of cedar shakes and shingles in Maine and are entitled to all forms of relief, including actual damages, treble damages, reasonable attorneys' and experts' fees and costs.

### 9.     Violation of the Michigan Antitrust Reform Act (Mich. Comp. Laws §§ 445.771, *et seq.*) on behalf of the Michigan Class

208.     Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

CLASS ACTION COMPLAINT - 47

209.    The Michigan Antitrust Reform Act aims "to prohibit contracts, combinations, and conspiracies in restraint of trade or commerce...to prohibit monopolies and attempts to monopolize trade or commerce...[and] to provide remedies, fines, and penalties for violations of this act." Mich. Act 274 of 1984.

210.    Plaintiff purchased cedar shakes and shingles within the State of Michigan during the Class Period. But for Defendants' conduct set forth herein, the price of cedar shakes and shingles would have been lower, in an amount to be determined at trial.

211.    Under the Michigan Antitrust Reform Act, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. Mich. Comp. Laws. § 452.778(2).

212.    Defendants contracted, combined or conspired to restrain or monopolize trade or commerce in the market for cedar shakes and shingles, in violation of Mich. Comp. Laws § 445.772, *et seq.*

213.    Plaintiff and members of the Michigan Class were injured with respect to purchases of cedar shakes and shingles in Michigan and are entitled to all forms of relief, including actual damages, treble damages for flagrant violations, interest, costs, reasonable attorney's fees, and injunctive or other appropriate equitable relief.

**10.    Violation of Minnesota Antitrust Law (Minn. Stat. §§ 325D.49, *et seq.*) on behalf of the Minnesota Class**

214.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

215.    The Minnesota Antitrust Law of 1971 aims to prohibit any contract, combination or conspiracy when any part thereof was created, formed, or entered into in Minnesota; any contract, combination or conspiracy, wherever created, formed or entered into; any establishment, maintenance or use of monopoly power; and any attempt to establish, maintain or use monopoly power, whenever any of these affect Minnesota trade or commerce.

216.    Plaintiff purchased cedar shakes and shingles within the State of Minnesota

CLASS ACTION COMPLAINT - 48

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

during the Class Period. But for Defendants' conduct set forth herein, the price of cedar shakes and shingles would have been lower, in an amount to be determined at trial.

217.     Under the Minnesota Antitrust Act of 1971, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. Minn. Stat. § 325D.56.

218.     Defendants contracted, combined or conspired in unreasonable restraint of trade or commerce in the market for cedar shakes and shingles within the intrastate commerce of and outside of Minnesota; established, maintained, used or attempted to establish, maintain or use monopoly power over the trade or commerce in the market for cedar shakes and shingles within the intrastate commerce of and outside of Minnesota; and fixed prices and allocated markets for cedar shakes and shingles within the intrastate commerce of and outside of Minnesota, in violation of Minn. Stat. § 325D.49, *et seq.*

219.     Plaintiff and members of the Minnesota Class were injured with respect to purchases of cedar shakes and shingles in Minnesota and are entitled to all forms of relief, including actual damages, treble damages, costs and disbursements, reasonable attorney's fees, and injunctive relief necessary to prevent and restrain violations hereof.

**11.     Violation of the Mississippi Antitrust Statute (Miss. Code Ann. § 74-21-1, *et seq.*) on behalf of the Mississippi Class**

220.     Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

221.     Title 75 of the Mississippi Code regulates trade, commerce and investments. Chapter 21 thereof generally prohibits trusts and combines in restraint or hindrance of trade, with the aim that "trusts and combines may be suppressed, and the benefits arising from competition in business [are] preserved" to Mississippians. Miss. Code Ann. § 75-21-39.

222.     Trusts are combinations, contracts, understandings or agreements, express or implied, when inimical to the public welfare and with the effect of, inter alia, restraining trade, increasing the price or output of a commodity, or hindering competition in the production or sale of a commodity. Miss. Code Ann. § 75-21-1.

CLASS ACTION COMPLAINT - 49

223.    Plaintiff purchased cedar shakes and shingles within the State of Mississippi during the Class Period. But for Defendants' conduct set forth herein, the price of cedar shakes and shingles would have been lower, in an amount to be determined at trial.

224.    Under Mississippi law, indirect purchasers have standing to maintain an action under the antitrust provisions of the Mississippi Code based on the facts alleged in this Defendants combined, contracted, understood and agreed in the market for cedar shakes and shingles, in a manner inimical to public welfare, with the effect of restraining trade, increasing the price of cedar shakes and shingles and hindering competition in the sale of cedar shakes and shingles, in violation of Miss. Code Ann. § 75-21-1(a), *et seq.*

225.    Defendants monopolized or attempted to monopolize the production, control or sale of cedar shakes and shingles, in violation of Miss. Code Ann. § 75-21-3, *et seq.*

226.    Defendants' cedar shakes and shingles are sold indirectly via distributors throughout the State of Mississippi. During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce.

227.    Plaintiff and members of the Mississippi Class were injured with respect to purchases of cedar shakes and shingles in Mississippi and are entitled to all forms of relief, including actual damages and a penalty of $500 per instance of injury.

**12.    Violation of the Missouri Merchandising Practices Act (Mo. Stat. § 407.010, *et seq.*) on behalf of the Missouri Class**

228.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

229.    Chapter 407 of the Missouri Merchandising Practices Act (the "MMPA") generally governs unlawful business practices, including antitrust violations such as restraints of trade and monopolization.

230.    Plaintiff purchased cedar shakes and shingles within the State of Missouri during the Class Period. But for Defendants' conduct set forth herein, the price of cedar shakes and shingles would have been lower, in an amount to be determined at trial.

CLASS ACTION COMPLAINT - 50

231.    Under Missouri law, indirect purchasers have standing to maintain an action under the MMPA based on the facts alleged in this Complaint. *Gibbons v. J. Nuckolls, Inc*., 216 S.W.3d 667, 669 (Mo. 2007).

232.    Defendants contracted, combined or conspired in restraint of trade or commerce of cedar shakes and shingles within the intrastate commerce of Missouri, and monopolized or attempted to monopolize the market for cedar shakes and shingles within the intrastate commerce of Missouri by possessing monopoly power in the market and willfully maintaining that power through agreements to fix prices, allocate markets and otherwise control trade, in violation of Mo. Ann. Stat. § 407.010, *et seq.*

233.    Plaintiff and members of the Missouri Class were injured with respect to purchases of cedar shakes and shingles in Missouri and are entitled to all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained, as well as reasonable attorney's fees, costs, and injunctive relief.

### 13.    Violation of the Nebraska Junkin Act (Neb. Rev. Stat. § 59-801, *et seq.*) on behalf of the Nebraska Class

234.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

235.    Chapter 59 of the Nebraska Revised Statute generally governs business and trade practices. Sections 801 through 831 thereof, known as the Junkin Act, prohibit antitrust violations such as restraints of trade and monopolization.

236.    Plaintiff purchased cedar shakes and shingles within the State of Nebraska during the Class Period. But for Defendants' conduct set forth herein, the price of cedar shakes and shingles would have been lower, in an amount to be determined at trial.

237.    Under Nebraska law, indirect purchasers have standing to maintain an action under the Junkin Act based on the facts alleged in this Complaint. Neb. Rev. Stat. § 59-821.

238.    Defendants contracted, combined or conspired in restraint of trade or commerce

CLASS ACTION COMPLAINT - 51

of cedar shakes and shingles within the intrastate commerce of Nebraska, and monopolized or attempted to monopolize the market for cedar shakes and shingles within the intrastate commerce of Nebraska by possessing monopoly power in the market and willfully maintaining that power through agreements to fix prices, allocate markets and otherwise control trade, in violation of Neb. Rev. Stat. § 59-801, *et seq.*

239.    Plaintiff and members of the Nebraska Class were injured with respect to purchases of cedar shakes and shingles in Nebraska and are entitled to all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained, as well as reasonable attorney's fees, costs, and injunctive relief.

### 14.    Violations of the Nevada Unfair Trade Practices Act (Nev. Rev. Stat § 598A.030(1)) on behalf of the Nevada Class

240.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

241.    The Nevada Unfair Trade Practice Act ("NUTPA") states that "free, open and competitive production and sale of commodities...is necessary to the economic well-being of the citizens of the State of Nevada." Nev. Rev. Stat. Ann. § 598A.030(1).

242.    The policy of NUTPA is to prohibit acts in restraint of trade or commerce, to preserve and protect the free, open and competitive market, and to penalize all persons engaged in anticompetitive practices. Nev. Rev. Stat. Ann. § 598A.030(2). Such acts include price fixing, division of markets, allocation of customers, and monopolization of trade. Nev. Rev. Stat. Ann. § 598A.060.

243.    Plaintiff purchased cedar shakes and shingles within the State of Nevada during the Class Period. But for Defendants' conduct set forth herein, the price of cedar shakes and shingles would have been lower, in an amount to be determined at trial.

244.    Under Nevada law, indirect purchasers have standing to maintain an action under NUTPA based on the facts alleged in this Complaint. Nev. Rev. Stat. Ann. §598A.210(2).

CLASS ACTION COMPLAINT - 52

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

245.    Defendants fixed prices by agreeing to establish prices for cedar shakes and shingles in Nevada, divided Nevada markets, allocated Nevada customers, and monopolized or attempted monopolize trade or commerce of cedar shakes and shingles within the intrastate commerce of Nevada, constituting a contract, combination or conspiracy in restraint of trade in violation of Nev. Rev. Stat. Ann. § 598A, *et seq.*

246.    Plaintiff and members of the Nevada Class were injured with respect to purchases of cedar shakes and shingles in Nevada in that many of sales of Defendants' cedar shakes and shingles took place in Nevada, purchased by Nevada consumers at supra-competitive prices caused by Defendants' conduct.

247.    Accordingly, Plaintiff and members of the Nevada Class are entitled to all forms of relief, including actual damages, treble damages, reasonable attorney's fees, costs, and injunctive relief.

248.    In accordance with the requirements of § 598A.210(3), notice of this action was mailed to the Nevada Attorney General by Plaintiff.

**15.    Violation of New Hampshire's Antitrust Statute (N.H. Rev. Stat. Ann. §§ 356, *et seq.*) on behalf of the New Hampshire Class**

249.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

250.    Title XXXI of the New Hampshire Statutes generally governs trade and commerce. Chapter 356 thereof governs combinations and monopolies and prohibits restraints of trade. N.H. Rev. Stat. Ann. §§ 356:2, 3.

251.    Plaintiff purchased cedar shakes and shingles within the State of New Hampshire during the Class Period. But for Defendants' conduct set forth herein, the price of cedar shakes and shingles would have been lower, in an amount to be determined at trial.

252.    Under New Hampshire law, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. N.H. Rev. Stat. Ann. § 356:11(II).

253.    Defendants fixed, controlled or maintained prices for cedar shakes and shingles,

CLASS ACTION COMPLAINT - 53

allocated customers or markets for cedar shakes and shingles, and established, maintained or used monopoly power, or attempted to, constituting a contract, combination or conspiracy in restraint of trade in violation of N.H. Rev. Stat. Ann. § 356:1, *et seq.*

254.   Plaintiff and members of the New Hampshire Class were injured with respect to purchases of cedar shakes and shingles in New Hampshire and are entitled to all forms of relief, including actual damages sustained, treble damages for willful or flagrant violations, reasonable attorney's fees, costs, and injunctive relief.

### 16.   Violation of the New Mexico Antitrust Act (N.M. Stat. Ann. §§ 57-1-1, *et seq.*) on behalf of the New Mexico Class.

255.   Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

256.   The New Mexico Antitrust Act aims to prohibit restraints of trade and monopolistic practices. N.M. Stat. Ann. 57-1-15.

257.   Plaintiff purchased cedar shakes and shingles within the State of New Mexico during the Class Period. But for Defendants' conduct set forth herein, the price of cedar shakes and shingles would have been lower, in an amount to be determined at trial.

258.   Under New Mexico law, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. N.M. Stat. Ann. § 57-1-3.

259.   Defendants contracted, agreed, combined or conspired, and monopolized or attempted to monopolize trade for cedar shakes and shingles within the intrastate commerce of New Mexico, in violation of N.M. Stat. Ann. § 57-1-1, *et seq.*

260.   Plaintiff and members of the New Mexico Class were injured with respect to purchases of cedar shakes and shingles in New Mexico and are entitled to all forms of relief, including actual damages, treble damages, reasonable attorney's fees, costs, and injunctive relief.

### 17.   Violation of New York General Business Laws §§ 340, *et seq.*, on behalf of the New York Class

261.   Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

CLASS ACTION COMPLAINT - 54

262.     Article 22 of the New York General Business Law general prohibits monopolies and contracts or agreements in restraint of trade, with the policy of encouraging competition or the free exercise of any activity in the conduct of any business, trade or commerce in New York. N.Y. Gen. Bus. Law § 340(1).

263.     Plaintiff purchased cedar shakes and shingles within the State of New York during the Class Period. But for Defendants' conduct set forth herein, the price of cedar shakes and shingles would have been lower, in an amount to be determined at trial.

264.     Under New York law, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. N.Y. Gen. Bus. Law § 340(6).

265.     Defendants established or maintained a monopoly within the intrastate commerce of New York for the trade or commerce of cedar shakes and shingles and restrained competition in the free exercise of the conduct of the business of cedar shakes and shingles within the intrastate commerce of New York, in violation of N.Y. Gen. Bus. Law § 340, *et seq.*

266.     Plaintiff and members of the New York Class were injured with respect to purchases of cedar shakes and shingles in New York and are entitled to all forms of relief, including actual damages, treble damages, costs not exceeding $10,000, and reasonable attorney's fees.

### 18.     Violation of the North Carolina General Statutes §§ 75-1, *et seq.*, on behalf of the North Carolina Class

267.     205. Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

268.     Defendants entered into a contract or combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce in the cedar shakes and shingles market, a substantial part of which occurred within North Carolina.

269.     Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the cedar shakes and shingles market, for the purpose of affecting competition or controlling, fixing, or maintaining prices, a substantial part of which

CLASS ACTION COMPLAINT - 55

1   occurred within North Carolina.

2       270.    Defendants' unlawful conduct substantially affected North Carolina's trade and

3   commerce.

4       271.    As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and

5   the members of the North Carolina Class have been injured in their business or property and are

6   threatened with further injury.

7       272.    By reason of the foregoing, Plaintiff and members of the North Carolina Class are

8   entitled to seek all forms of relief available, including treble damages, under N.C. Gen. Stat. §

9   75-1, *et seq.*

10          **19.    Violation of the North Dakota Uniform State Antitrust Act**
11                   **(N.D. Cent. Code §§ 51-08.1, *et seq.*) on behalf of the North**
12                   **Dakota Class**

13      273.    211. Plaintiff incorporates and realleges, as though fully set forth herein, each and

14  every allegation set forth in the preceding paragraphs of this Complaint.

15      274.    The North Dakota Uniform State Antitrust Act generally prohibits restraints on or

16  monopolization of trade. N.D. Cent. Code § 51-08.1, *et seq.*

17      275.    Plaintiff purchased cedar shakes and shingles within the State of North Dakota

18  during the Class Period. But for Defendants' conduct set forth herein, the price of cedar shakes

19  and shingles would have been lower, in an amount to be determined at trial.

20      276.    Under the North Dakota Uniform State Antitrust Act, indirect purchasers have

21  standing to maintain an action based on the facts alleged in this Complaint. N.D. Cent. Code §

22  51-08.1-08.

23      277.    Defendants contracted, combined or conspired in restraint of, or to monopolize

24  trade or commerce in the market for cedar shakes and shingles, and established, maintained, or

25  used a monopoly, or attempted to do so, for the purposes of excluding competition or controlling,

26  fixing or maintaining prices for cedar shakes and shingles, in violation of N.D. Cent. Code §§

27  51-08.1-02, 03.

28      278.    Plaintiff and members of the North Dakota Class were injured with respect to

CLASS ACTION COMPLAINT - 56

purchases in North Dakota and are entitled to all forms of relief, including actual damages, treble damages for flagrant violations, costs, reasonable attorney's fees, and injunctive or other equitable relief.

### 20.   Violation of the Oregon Antitrust Law (Or. Rev. Stat §§ 646.705, *et seq.*) on behalf of the Oregon Class

279.   Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

280.    Chapter 646 of the Oregon Revised Statutes generally governs business and trade practices within Oregon. Sections 705 through 899 thereof govern antitrust violations, with the policy to "encourage free and open competition in the interest of the general welfare and economy of the state." Or. Rev. Stat. § 646.715.

281.   Plaintiff purchased cedar shakes and shingles within the State of Oregon during the Class Period. But for Defendants' conduct set forth herein, the price of cedar shakes and shingles would have been lower, in an amount to be determined at trial.

282.   Under Oregon law, indirect purchasers have standing under the antitrust provisions of the Oregon Revised Statutes to maintain an action based on the facts alleged in this Complaint. Or. Rev. Stat. § 646.780(1)(a).

283.   Defendants contracted, combined, or conspired in restraint of trade or commerce of cedar shakes and shingles, and monopolized or attempted to monopolize the trade or commerce of cedar shakes and shingles, in violation of Or. Rev. Stat. § 646.705, *et seq.*

284.   Plaintiff and members of the Oregon Class were injured with respect to purchases of cedar shakes and shingles within the intrastate commerce of Oregon, or alternatively to interstate commerce involving actual or threatened injury to persons located in Oregon, and are entitled to all forms of relief, including actual damages, treble damages, reasonable attorney's fees, expert witness fees and investigative costs, and injunctive relief.

### 21.   Violation of the Rhode Island Antitrust Act (R.I. Gen. Laws §§ 6-36-1, *et seq.*) on behalf of the Rhode Island Class

285.   223. Plaintiff incorporates and realleges, as though fully set forth herein, each and

CLASS ACTION COMPLAINT - 57

every allegation set forth in the preceding paragraphs of this Complaint.

286.    The Rhode Island Antitrust Act aims to promote the unhampered growth of commerce and industry throughout Rhode Island by prohibiting unreasonable restraints of trade and monopolistic practices that hamper, prevent or decrease competition. R.I. Gen. Laws § 6-36-2(a)(2).

287.    Plaintiff purchased cedar shakes and shingles within the State of Rhode Island during the Class Period. But for Defendants' conduct set forth herein, the price of cedar shakes and shingles would have been lower, in an amount to be determined at trial.

288.    Under the Rhode Island Antitrust Act, no later than January 1, 2011 (further investigation and discovery may reveal an earlier date), indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. R.I. Gen. Laws § 6-36-11(a). In Rhode Island, the claims of the Plaintiff and the Class alleged herein run no later than January 1, 2011 (further investigation and discovery may reveal an earlier date) through the date that the effects of Defendants' anticompetitive conduct cease.

289.    Defendants contracted, combined and conspired in restraint of trade of cedar shakes and shingles within the intrastate commerce of Rhode Island, and established, maintained or used, or attempted to establish, maintain or use, a monopoly in the trade of cedar shakes and shingles for the purpose of excluding competition or controlling, fixing or maintaining prices within the intrastate commerce of Rhode Island, in violation of R.I. Gen. Laws § 6-36-1, *et seq.*

290.    Plaintiff and members of the Rhode Island Class were injured with respect to purchases of cedar shakes and shingles in Rhode Island and are entitled to all forms of relief, including actual damages, treble damages, reasonable costs, reasonable attorney's fees, and injunctive relief.

### 22.    Violation of the South Dakota Antitrust Statute (S.D. Codified Laws §§ 37-1, *et seq.*) on behalf of the South Dakota Class

291.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

CLASS ACTION COMPLAINT - 58

292.    Chapter 37-1 of the South Dakota Codified Laws prohibits restraint of trade, monopolies and discriminatory trade practices. S.D. Codified Laws §§ 37-1- 3.1, 3.2.

293.    Plaintiff purchased cedar shakes and shingles within the State of South Dakota during the Class Period. But for Defendants' conduct set forth herein, the price of cedar shakes and shingles would have been lower, in an amount to be determined at trial.

294.    Under South Dakota law, indirect purchasers have standing under the antitrust provisions of the South Dakota Codified Laws to maintain an action based on the facts alleged in this Complaint. S.D. Codified Laws § 37-1-33.

295.    Defendants contracted, combined or conspired in restraint of trade or commerce of cedar shakes and shingles within the intrastate commerce of South Dakota, and monopolized or attempted to monopolize trade or commerce of cedar shakes and shingles within the intrastate commerce of South Dakota, in violation of S.D. Codified Laws § 37-1, *et seq.*

296.    Plaintiff and members of the South Dakota Class were injured with respect to purchases of cedar shakes and shingles in South Dakota and are entitled to all forms of relief, including actual damages, treble damages, taxable costs, reasonable attorney's fees, and injunctive or other equitable relief.

### 23.    Violation of the Tennessee Trade Practices Act (Tenn. Code §§ 47-25-101, *et seq.*) on behalf of the Tennessee Class

297.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

298.    The Tennessee Trade Practices Act generally governs commerce and trade in Tennessee, and it prohibits, inter alia, all arrangements, contracts, agreements, or combinations between persons or corporations made with a view to lessen, or which tend to lessen, full and free competition in goods in Tennessee. All such arrangements, contracts, agreements, or combinations between persons or corporations designed, or which tend, to increase the prices of any such goods, are against public policy, unlawful, and void. Tenn. Code, § 47-25-101.

299.    Defendants competed unfairly and colluded by meeting to fix prices, divide

CLASS ACTION COMPLAINT - 59

markets, and otherwise restrain trade as set forth herein, in violation of Tenn. Code, § 47-25-101, *et seq.*

300.     Defendant's conduct violated the Tennessee Trade Practice Act because it was an arrangement, contract, agreement, or combination to lessen full and free competition in goods in Tennessee, and because it tended to increase the prices of goods in Tennessee. Specifically, Defendants' combination or conspiracy had the following effects: (1) price competition for cedar shakes and shingles was restrained, suppressed, and eliminated throughout Tennessee; (2) prices for cedar shakes and shingles were raised, fixed, maintained and stabilized at artificially high levels throughout Tennessee; (3) Plaintiff and the Tennessee Class were deprived of free and open competition; and (4) Plaintiff and the Tennessee Class paid supra-competitive, artificially inflated prices for cedar shakes and shingles.

301.     During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce as cedar shakes and shingles were sold in Tennessee.

302.     Plaintiff and the Tennessee Class purchased cedar shakes and shingles within the State of Tennessee during the Class Period. But for Defendants' conduct set forth herein, the price of cedar shakes and shingles would have been lower, in an amount to be determined at trial. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the Tennessee Class have been injured in their business and property and are threatened with further injury

303.     Under Tennessee law, indirect purchasers (such as Plaintiff and the Tennessee Class) have standing under the Tennessee Trade Practice Acts to maintain an action based on the facts alleged in this Complaint.

304.     Plaintiff and members of the Tennessee Class were injured with respect to purchases of cedar shakes and shingles in Tennessee and are entitled to all forms of relief available under the law, including return of the unlawful overcharges that they paid on their purchases, damages, equitable relief, and reasonable attorney's fees.

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

**24.    Violation of the Utah Antitrust Act (Utah Code Ann. § 76-10-3101, *et seq.*) on behalf of the Utah Class**

305.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

306.    The Utah Antitrust Act aims to "encourage free and open competition in the interest of the general welfare and economy of this state by prohibiting monopolistic and unfair trade practices, combinations and conspiracies in restraint of trade or commerce . . . ." Utah Code Ann. § 76-10-3102.

307.    Plaintiff purchased cedar shakes and shingles within the State of Utah during the Class Period. But for Defendants' conduct set forth herein, the price of cedar shakes and shingles would have been lower, in an amount to be determined at trial.

308.    Under the Utah Antitrust Act, indirect purchasers who are either Utah residents or Utah citizens have standing to maintain an action based on the facts alleged in this Complaint. Utah Code Ann. § 76-10-3109(1)(a).

309.    Defendants contracted, combined or conspired in restraint of trade or commerce of cedar shakes and shingles, and monopolized or attempted to monopolize trade or commerce of cedar shakes and shingles, in violation of Utah Code Ann. § 76-10-3101, *et seq.*

310.    Plaintiff and members of the Utah Class who are either Utah residents or Utah citizens were injured with respect to purchases of cedar shakes and shingles in Utah and are entitled to all forms of relief, including actual damages, treble damages, costs of suit, reasonable attorney's fees, and injunctive relief.

**25.    Violation of the West Virginia Antitrust Act (W. Va. Code § 47-18-1, *et seq.*) on behalf of the West Virginia Class**

311.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

312.    The violations of federal antitrust law set forth above also constitute violations of section 47-18-1 of the West Virginia Code.

313.    During the Class Period, Defendants and their co-conspirators engaged in a

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

continuing contract, combination or conspiracy in unreasonable restraint of trade and commerce and other anticompetitive conduct alleged above in violation of W. Va. Code § 47-18-1, *et seq.*

314.    Defendants' anticompetitive acts described above were knowing, willful and constitute violations or flagrant violations of the West Virginia Antitrust Act.

315.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the West Virginia Class have been injured in their business and property in that they paid more for cedar shakes and shingles than they otherwise would have paid in the absence of Defendants' unlawful conduct. As a result of Defendants' violation of Section 47-18-3 of the West Virginia Antitrust Act, Plaintiff and members of the West Virginia Class seek treble damages and their cost of suit, including reasonable attorney's fees, pursuant to section 47-18-9 of the West Virginia Code.

**26.    Violation of the Wisconsin Antitrust Act (Wis. Stat. §§ 133.01, *et seq.*) on behalf of the Wisconsin Class**

316.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

317.    Chapter 133 of the Wisconsin Statutes governs trust and monopolies, with the intent "to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition by prohibiting unfair and discriminatory business practices which destroy or hamper competition." Wis. Stat. § 133.01.

318.    Plaintiff purchased cedar shakes and shingles within the State of Wisconsin during the Class Period. But for Defendants' conduct set forth herein, the price of cedar shakes and shingles would have been lower, in an amount to be determined at trial.

319.    Under Wisconsin law, indirect purchasers have standing under the antitrust provisions of the Wisconsin Statutes to maintain an action based on the facts alleged in this Complaint. Wis. Stat. 133.18(a).

320.    Defendants contracted, combined or conspired in restraint of trade or commerce of cedar shakes and shingles, and monopolized or attempted to monopolize the trade or

CLASS ACTION COMPLAINT - 62

commerce of cedar shakes and shingles, with the intention of injuring or destroying competition therein, in violation of Wis. Stat. § 133.01, *et seq.*

321.    Plaintiff and members of the Wisconsin Class were injured with respect to purchases of cedar shakes and shingles in Wisconsin in that the actions alleged herein substantially affected the people of Wisconsin, with many in Wisconsin paying substantially higher prices for Defendants' cedar shakes and shingles in Wisconsin.

322.    Accordingly, Plaintiff and members of the Wisconsin Class are entitled to all forms of relief, including actual damages, treble damages, costs and reasonable attorney's fees, and injunctive relief.

323.    Defendants' and their co-conspirators' anticompetitive activities have directly, foreseeably, and proximately caused injury to Plaintiff and members of the Classes in the United States. Their injuries consist of: (1) being denied the opportunity to purchase lower-priced cedar shakes and shingles from Defendants, and (2) paying higher prices for Defendants' cedar shakes and shingles than they would have in the absence of Defendants' conduct. These injuries are of the type of the laws of the above States were designed to prevent, and flow from that which makes Defendants' conduct unlawful.

324.    Defendants are jointly and severally liable for all damages suffered by Plaintiff and members of the Classes.

C.    **Violations of State Consumer Protection Law**

1.    **Violation of Alaska Statute § 45.50.471, *et seq.*, on behalf of the Alaska Class**

325.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

326.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of Alaska Statute § 45.50.471, *et seq.*

327.    Defendants knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially

CLASS ACTION COMPLAINT - 63

inflated levels, the prices at which cedar shakes and shingles were sold, distributed, or obtained in Alaska and took efforts to conceal their agreements from Plaintiff and members of the Class.

328.     The aforementioned conduct on the part of Defendants constituted "unconscionable" and "deceptive" acts or practices in violation of Alaska law.

329.     Defendants' unlawful conduct had the following effects: (1) cedar shakes and shingles price competition was restrained, suppressed, and eliminated throughout Alaska; (2) cedar shakes and shingles prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Alaska; (3) Plaintiff and members of the Alaska Class were deprived of free and open competition; and (4) Plaintiff and members of the Alaska Class paid supra-competitive, artificially inflated prices for cedar shakes and shingles.

330.     During the Class Period, Defendants' illegal conduct substantially affected Alaska commerce and consumers.

331.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Alaska Class have been injured and are threatened with further injury.

332.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. § 45.50.471, *et seq.*, and, accordingly, Plaintiff and members of the Alaska Class seek all relief available under that statute.

### 2.     Violation of the Colorado Consumer Protection Act (Colo. Rev. Stat. §§ 6-1-101, *et seq.*) on behalf of the Colorado Class

333.     Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

334.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of Colorado Consumer Protection Act, Colorado Rev. Stat. § 6-1-101, *et seq.*

335.     Defendants engaged in an unfair and deceptive trade practices during the course of their business dealings, which significantly impacted Plaintiff as an actual or potential consumers of the Defendants' goods and which caused Plaintiff to suffer injury.

CLASS ACTION COMPLAINT - 64

336.    Defendants took efforts to conceal their agreements from Plaintiff. Defendants' unlawful conduct had the following effects: (1) cedar shakes and shingles price competition was restrained, suppressed, and eliminated throughout Colorado; (2) cedar shakes and shingles prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Colorado; (3) Plaintiff and members of the Colorado Class were deprived of free and open competition; and (4) Plaintiff and members of the Colorado Class paid supracompetitive, artificially inflated prices for cedar shakes and shingles.

337.    During the Class Period, Defendants' illegal conduct substantially affected Colorado commerce and consumers.

338.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Colorado Class have been injured and are threatened with further injury.

339.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Colorado Rev. Stat. § 6-1-101, *et seq.*, and, accordingly, Plaintiff and members of the Colorado Class seek all relief available under that statute and as equity demands.

**3.      Violation of California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*) ("UCL") on behalf of the California Class**

340.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

341.    The violations of federal antitrust law set forth above also constitute violations of section 17200, *et seq.* of California Business and Professions Code.

342.    Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the UCL by engaging in the acts and practices specified above.

343.    This claim is instituted pursuant to sections 17203 and 17204 of California Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged herein, that violated the UCL.

344.    The Defendants' conduct as alleged herein violated the UCL. The acts, omissions,

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

misrepresentations, practices and non-disclosures of Defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of the UCL, including, but not limited to, the violations of section 16720, *et seq.*, of California Business and Professions Code, set forth above.

345.    Defendants' acts, omissions, misrepresentations, practices, and non- disclosures, as described above, whether or not in violation of section 16720, *et seq.*, of California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent.

346.    Plaintiff and members of the California Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business acts or practices.

347.    The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future.

348.    The unlawful and unfair business practices of Defendants, and each of them, as described above, have caused and continue to cause Plaintiff and the members of the California Class to pay supra-competitive and artificially-inflated prices for cedar shakes and shingles sold in the State of California. Plaintiff and the members of the California Class suffered injury in fact and lost money or property as a result of such unfair competition.

349.    As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition. Plaintiff and the members of the California Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business practices, pursuant to California Business and Professions Code sections 17203 and 17204.

CLASS ACTION COMPLAINT - 66

### 4.      Violation of Delaware's Consumer Fraud Act (6 Del. Code §§ 2511, *et seq.*) on behalf of the Delaware Class

350.     Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

351.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Delaware Consumer Fraud Act, 6 Del. Code §2511, *et seq.*

352.     Defendants agreed to, and did in fact, act in restraint of trade or commerce in Delaware, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which cedar shakes and shingles were sold, distributed, or obtained in Delaware.

353.     Defendants deliberately failed to disclose material facts to Plaintiff and members of the Delaware Class concerning Defendants' unlawful activities and artificially inflated prices for cedar shakes and shingles.

354.     Defendants misrepresented to all purchasers during the Class Period that Defendants' cedar shakes and shingles prices were competitive and fair. Defendants' unlawful conduct had the following effects: (1) cedar shakes and shingles price competition was restrained, suppressed, and eliminated throughout Delaware; (2) cedar shakes and shingles prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Delaware; (3) Plaintiff and members of the Delaware Class were deprived of free and open competition; and (4) Plaintiff and members of the Delaware Class paid supracompetitive, artificially inflated prices for cedar shakes and shingles.

355.     During the Class Period, Defendants' illegal conduct had a substantial effect on Delaware commerce and consumers.

356.     As a direct and proximate result of Defendants' violations of law, Plaintiff and members of the Delaware Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described

CLASS ACTION COMPLAINT - 67

herein.

357.    Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of cedar shakes and shingles, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing cedar shakes and shingles at prices set by a free and fair market.

358.    Defendants' misleading conduct and unconscionable activities constitute violations of 6 Del. Code § 2511, *et seq.*, and, accordingly, Plaintiff and members of the Delaware Class seek all relief available under that statute.

> **5.    Violation of the District of Columbia Consumer Protection Procedures Act (D.C. Code § 28-3901, *et seq.*) on behalf of the District of Columbia Class**

359.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

360.    Plaintiff and members of the District of Columbia Class purchased cedar shakes and shingles for personal, family, or household purposes.

361.    By reason of the conduct alleged herein, Defendants have violated D.C. Code § 28-3901, *et seq.*

362.    Defendants are "merchants" within the meaning of D.C. Code § 28- 3901(a)(3).

363.    Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the cedar shakes and shingles market, a substantial part of which occurred within the District of Columbia.

364.    Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the relevant market, a substantial part of which occurred within the District of Columbia, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the cedar shakes and shingles market.

365.    Defendants' conduct was an unfair method of competition, and an unfair or deceptive act or practice within the conduct of commerce within the District of Columbia.

366.    Defendants' unlawful conduct substantially affected the District of Columbia's

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

trade and commerce.

367.    As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and members of the District of Columbia Class have been injured in their business or property and are threatened with further injury.

368.    By reason of the foregoing, Plaintiff and members of the District of Columbia Class are entitled to seek all forms of relief, including treble damages or $1500 per violation (whichever is greater) plus punitive damages, reasonable attorney's fees and costs under D.C. Code § 28-3901, *et seq.*

> **6.**      **Violation of the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. § 501.201(2), *et seq.*) on behalf of the Florida Class**

369.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

370.    The Florida Deceptive & Unfair Trade Practices Act, Florida Stat. §§ 501.201, *et seq.* (the "FDUTPA"), generally prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce," including practices in restraint of trade. Florida Stat. § 501.204(1).

371.    The primary policy of the FDUTPA is "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Florida Stat. § 501.202(2).

372.    A claim for damages under the FDUTPA has three elements: (1) a prohibited practice; (2) causation; and (3) actual damages.

373.    Under Florida law, indirect purchasers have standing to maintain an action under the FDUTPA based on the facts alleged in this Complaint. Fla. Stat. § 501.211(a) ("anyone aggrieved by a violation of this [statute] may bring an action . . .").

374.    Plaintiff purchased cedar shakes and shingles within the State of Florida during the Class Period. But for Defendants' conduct set forth herein, the price of cedar shakes and

CLASS ACTION COMPLAINT - 69

shingles would have been lower, in an amount to be determined at trial.

375.    Defendants entered into a contract, combination or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the cedar shakes and shingles market, a substantial part of which occurred within Florida.

376.    Defendants established, maintained or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the market for cedar shakes and shingles, for the purpose of excluding competition or controlling, fixing or maintaining prices in Florida at a level higher than the competitive market level, beginning at least as early as 2008 and continuing through the date of this filing.

377.    Accordingly, Defendants' conduct was an unfair method of competition, and an unfair or deceptive act or practice within the conduct of commerce within the State of Florida.

378.    Defendants' unlawful conduct substantially affected Florida's trade and commerce.

379.    As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff and the members of the Florida Class have been injured in their business or property by virtue of overcharges for cedar shakes and shingles and are threatened with further injury.

380.    By reason of the foregoing, Plaintiff and the members of the Florida Class is entitled to seek all forms of relief, including injunctive relief pursuant to Florida Stat. §501.208 and declaratory judgment, actual damages, reasonable attorney's fees and costs pursuant to Florida Stat. § 501.211.

### 7.    Violation of the Hawaii Revised Statutes Annotated §§ 480-1, *et seq.*, on behalf of the Hawaii Class

381.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

382.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Hawaii Revised Statutes Annotated §§ 480-1, *et seq.*

CLASS ACTION COMPLAINT - 70

383.   Defendants' unlawful conduct had the following effects: (1) cedar shakes and shingles price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) cedar shakes and shingles prices were, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) Plaintiff and members of the Hawaii Class were deprived of free and open competition; and (4) Plaintiff and members of the Hawaii Class paid supracompetitive, artificially inflated prices for cedar shakes and shingles.

384.   During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce and consumers.

385.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury.

**8.     Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Ill. Comp. Stat. Ann. 815 Ill. Comp. Stat. Ann. 505/10a, *et seq.*) on behalf of the Illinois Class**

386.   Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

387.   By reason of the conduct alleged herein, Defendants have violated 740 Ill. Comp. Stat. Ann. 10/3(1), *et seq.*

388.   Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the cedar shakes and shingles market, a substantial part of which occurred within Illinois.

389.   Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the relevant market, a substantial part of which occurred within Illinois, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the cedar shakes and shingles market.

390.   Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of Illinois.

391.   Defendants' conduct misled consumers, withheld material facts, and resulted in material misrepresentations to Plaintiff and members of the Classes.

CLASS ACTION COMPLAINT - 71

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

392.   Defendants' unlawful conduct substantially affected Illinois's trade and commerce.

393.   As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and members of the Illinois Class were actually deceived and have been injured in their business or property and are threatened with further injury.

394.   By reason of the foregoing, Plaintiff and members of the Illinois Class are entitled to seek all forms of relief, including actual damages or any other relief the Court deems proper under 815 Ill. Comp. Stat. Ann. 505/10a, *et seq.*

### 9.   Violation of the Massachusetts Consumer Protection Act (Mass. Gen. Laws Ch. 93A § 1, *et seq.*) on behalf of the Massachusetts Class

395.   335. Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

396.   By reason of the conduct alleged herein, Defendants have violated the Massachusetts Consumer Protection Act, Mass. Gen. Laws Ch. 93A § 2, *et seq.*

397.   Plaintiff purchased cedar shakes and shingles within the State of Massachusetts during the Class Period. But for Defendants' conduct set forth herein, the price of cedar shakes and shingles would have been lower, in an amount to be determined at trial.

398.   Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the cedar shakes and shingles market, a substantial part of which occurred within Massachusetts.

399.   Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the market for cedar shakes and shingles, a substantial part of which occurred within Massachusetts, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the cedar shakes and shingles market.

400.   Defendants' conduct was an unfair method of competition, and an unfair or deceptive act or practice within the conduct of commerce within the State of Massachusetts.

401.   Defendants' unlawful conduct substantially affected Massachusetts' trade and

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

commerce.

402.    As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and the members of the Massachusetts Class have been injured in their business or property and are threatened with further injury.

403.    By reason of the foregoing, the Plaintiff and the Massachusetts Class are entitled to seek all forms of relief, including up to treble damages and reasonable attorney's fees and costs under Mass. Gen. Laws Ch. 93A § 9.

404.    Certain of the Defendants have been served with a demand letter or, upon information and belief, such service of a demand letter was unnecessary due to the defendant not maintaining a place of business within the Commonwealth of Massachusetts or not keeping assets within the Commonwealth.  Mass. Gen. Laws Ch. 93A § 2.

**10.    Violation of the Michigan Consumer Protection Act (Mich. Comp. Laws Ann. §§ 445.901, *et seq.*) on behalf of the Michigan Class**

405.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

406.    By reason of the conduct alleged herein, Defendants have violated Mich. Comp. Laws Ann. § 445.901, *et seq.*

407.    Defendants have entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the cedar shakes and shingles market, a substantial part of which occurred within Michigan.

408.    Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the cedar shakes and shingles market, for the purpose of excluding or limiting competition or controlling or maintaining prices, a substantial part of which occurred within Michigan.

409.    Defendants' conduct was conducted with the intent to deceive Michigan consumers regarding the nature of Defendants' actions within the stream of Michigan commerce.

410.    Defendants' conduct was unfair, unconscionable, or deceptive within the conduct

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

of commerce within the State of Michigan.

411.   Defendants' conduct misled consumers, withheld material facts, and took advantage of Plaintiff and members-of-the-Classes' inability to protect themselves.

412.   Defendants' unlawful conduct substantially affected Michigan's trade and commerce.

413.   As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and members of the Michigan Class have been injured in their business or property and are threatened with further injury.

414.   By reason of the foregoing, the Plaintiff and the Michigan Class are entitled to seek all forms of relief available under Mich. Comp. Laws Ann. § 445.911.

### 11.   Violation of the Minnesota Consumer Fraud Act (Minn. Stat. § 235F.68, *et seq.*) on behalf of the Minnesota Class

415.   Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

416.   By reason of the conduct alleged herein, Defendants have violated Minn. Stat. § 325F.68, *et seq.*

417.   Defendants engaged in a deceptive trade practice with the intent to injure competitors and consumers through supra-competitive profits.

418.   Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the cedar shakes and shingles market, a substantial part of which occurred within Minnesota, for the purpose of controlling, fixing, or maintaining prices in the cedar shakes and shingles market.

419.   Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of Minnesota.

420.   Defendants' conduct, specifically in the form of fraudulent concealment of their horizontal agreement, created a fraudulent or deceptive act or practice committed by a supplier in connection with a consumer transaction.

CLASS ACTION COMPLAINT - 74

421.    Defendants' unlawful conduct substantially affected Minnesota's trade and commerce.

422.    Defendants' conduct was willful.

423.    As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and the members of the Minnesota Class have been injured in their business or property and are threatened with further injury.

424.    By reason of the foregoing, the Plaintiff and the members of the Minnesota Class are entitled to seek all forms of relief, including damages, reasonable attorney's fees and costs under Minn. Stat. § 325F.68, *et seq.* and applicable case law.

###### 12.    Violation of the Montana Unfair Trade Practices and Consumer Protection Act of 1970 (Mont. Code §§ 30-14-103, *et seq.*) on behalf of the Montana Class

425.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

426.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Montana Unfair Trade Practices and Consumer Protection Act of 1970, Mont. Code, §§ 30-14-103, *et seq.*, and §§ 30-14-201, *et. seq.*

427.    Defendants' unlawful conduct had the following effects: (1) cedar shakes and shingles price competition was restrained, suppressed, and eliminated throughout Montana; (2) cedar shakes and shingles prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Montana; (3) Plaintiff and members of the Montana Class were deprived of free and open competition; and (4) Plaintiff and members of the Montana Class paid supracompetitive, artificially inflated prices for cedar shakes and shingles.

428.    During the Class Period, defendants' illegal conduct substantially affected Montana commerce and consumers.

429.    As a direct and proximate result of defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

violation of Mont. Code, §§ 30-14-103, *et seq.*, and §§ 30-14-201, *et seq.*, and, accordingly,

430.    Plaintiff and members of the Montana Class seek all relief available under that statute.

### 13.    Violation of the Nebraska Consumer Protection Act (Neb. Rev. Stat. § 59-1602) on behalf of the Nebraska Class

431.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

432.    By reason of the conduct alleged herein, Defendants have violated Neb. Rev. Stat. § 59-1602, *et seq.*

433.    Defendants have entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the cedar shakes and shingles market, a substantial part of which occurred within Nebraska.

434.    Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the cedar shakes and shingles market, for the purpose of excluding or limiting competition or controlling or maintaining prices, a substantial part of which occurred within Nebraska.

435.    Defendants' conduct was conducted with the intent to deceive Nebraska consumers regarding the nature of Defendants' actions within the stream of Nebraska commerce.

436.    Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of Nebraska.

437.    Defendants' conduct misled consumers, withheld material facts, and had a direct or indirect impact upon the ability of Plaintiff and the other members of the Classes to protect themselves.

438.    Defendants' unlawful conduct substantially affected Nebraska's trade and commerce.

439.    As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and the members of the Nebraska Class have been injured in their business or property and are

CLASS ACTION COMPLAINT - 76

threatened with further injury.

440.    By reason of the foregoing, Plaintiff and members of the Nebraska Class are entitled to seek all forms of relief available under Neb. Rev. Stat. § 59- 1614.

**14.    Violation of the Nevada Deceptive Trade Practices Act (Nev. Rev. Stat § 598.0903, *et seq.*) on behalf of the Nevada Class**

441.    380. Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

442.    By reason of the conduct alleged herein, Defendants have violated Nev. Rev. Stat. § 598.0903, *et seq.*

443.    Defendants engaged in a deceptive trade practice with the intent to injure competitors and to substantially lessen competition.

444.    Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the cedar shakes and shingles market, a substantial part of which occurred within Nevada, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the cedar shakes and shingles market.

445.    Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of Nevada.

446.    Defendants' conduct amounted to a fraudulent act or practice committed by a supplier in connection with a consumer transaction.

447.    Defendants' unlawful conduct substantially affected Nevada's trade and commerce.

448.    Defendants' conduct was willful.

449.    As a direct and proximate cause of Defendants' unlawful conduct, the members of the Nevada Class have been injured in their business or property and are threatened with further injury.

450.    By reason of the foregoing, the Nevada Class is entitled to seek all forms of relief, including damages, reasonable attorney's fees and costs, and a civil penalty of up to $5,000 per

CLASS ACTION COMPLAINT - 77

violation under Nev. Rev. Stat. § 598.0993.

**15.    Violation of the New Hampshire Consumer Protection Act (N.H. Rev. Stat. Ann. tit. XXXI, § 358-A, *et seq.*) on behalf of the New Hampshire Class**

451.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

452.    By reason of the conduct alleged herein, Defendants have violated N.H. Rev. Stat. Ann. tit. XXXI, § 358-A, *et seq.*

453.    Defendants have entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the cedar shakes and shingles market, a substantial part of which occurred within New Hampshire.

454.    Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the cedar shakes and shingles market, for the purpose of excluding or limiting competition or controlling or maintaining prices, a substantial part of which occurred within New Hampshire.

455.    Defendants' conduct was conducted with the intent to deceive New Hampshire consumers regarding the nature of Defendants' actions within the stream of New Hampshire commerce.

456.    Defendants' conduct was unfair or deceptive within the conduct of commerce within the State of New Hampshire.

457.    Defendants' conduct was willful and knowing.

458.    Defendants' conduct misled consumers, withheld material facts, and had a direct or indirect impact upon Plaintiff and members-of-the-Classes' ability to protect themselves.

**16.    Violation of the New Mexico Unfair Practices Act (N.M. Stat. Ann. §§ 57-12-3, *et seq.*) on behalf of the New Mexico Class**

459.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

460.    By reason of the conduct alleged herein, Defendants have violated N.M. Stat.

CLASS ACTION COMPLAINT - 78

Ann. §§ 57-12-3, *et seq.*

461.    Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the cedar shakes and shingles market, a substantial part of which occurred within New Mexico.

462.    Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Relevant market, a substantial part of which occurred within New Mexico, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the cedar shakes and shingles market.

463.    Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of New Mexico.

464.    Defendants' conduct misled consumers, withheld material facts, and resulted in material misrepresentations to Plaintiff and members of the Class.

465.    Defendants' unlawful conduct substantially affected New Mexico's trade and commerce.

466.    Defendants' conduct constituted "unconscionable trade practices" in that such conduct, inter alia, resulted in a gross disparity between the value received by the New Mexico class members and the price paid by them for cedar shakes and shingles as set forth in N.M. Stat. Ann. § 57-12-2E.

467.    Defendants' conduct was willful.

468.    As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and the members of the New Mexico Class have been injured in their business or property and are threatened with further injury.

469.    By reason of the foregoing, Plaintiff and members of the New Mexico Class are entitled to seek all forms of relief, including actual damages or up to $300 per violation, whichever is greater, plus reasonable attorney's fees under N.M. Stat. Ann. §§ 57-12-10.

CLASS ACTION COMPLAINT - 79

### 17.   Violation of the North Carolina Unfair Trade and Business Practices Act (N.C. Gen. Stat. § 75-1.1, *et seq.*) on behalf of the North Carolina Class

470.   Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

471.   By reason of the conduct alleged herein, Defendants have violated N.C. Gen. Stat. § 75-1.1, *et seq.*

472.   Defendants entered into a contract, combination, or conspiracy in restraint of, or to monopolize, trade or commerce in the cedar shakes and shingles market, a substantial part of which occurred within North Carolina.

473.   Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of North Carolina.

474.   Defendants' trade practices are and have been immoral, unethical, unscrupulous, and substantially injurious to consumers.

475.   Defendants' conduct misled consumers, withheld material facts, and resulted in material misrepresentations to Plaintiff and members of the Class.

476.   Defendants' unlawful conduct substantially affected North Carolina's trade and commerce.

477.   Defendants' conduct constitutes consumer-oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of North Carolina consumers in an honest marketplace in which economic activity is conducted in a competitive manner.

478.   As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and the members of the North Carolina Class have been injured in their business or property and are threatened with further injury.

479.   By reason of the foregoing, the Plaintiff and the members of the North Carolina Class are entitled to seek all forms of relief, including treble damages under N.C. Gen. Stat. § 75-16.

CLASS ACTION COMPLAINT - 80

**18.   Violation of the North Dakota Unfair Trade Practices Law
(N.D. Cent. Code § 51-10-01, *et seq.*) on behalf of the North
Dakota Class**

480.   Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

481.   By reason of the conduct alleged herein, Defendants have violated N.D. Cent. Code § 51-10-01, *et seq.*

482.   Defendants engaged in a deceptive trade practice with the intent to injure competitors and consumers through supra-competitive profits.

483.   Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the cedar shakes and shingles market, a substantial part of which occurred within North Dakota, for the purpose of controlling, fixing, or maintaining prices in the cedar shakes and shingles market.

484.   Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of North Dakota.

485.   Defendants' conduct amounted to a fraudulent or deceptive act or practice committed by a supplier in connection with a consumer transaction.

486.   Defendants' unlawful conduct substantially affected North Dakota's trade and commerce.

487.   Defendants' conduct was willful.

488.   As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and the members of the North Dakota Class have been injured in their business or property and are threatened with further injury.

489.   By reason of the foregoing, the Plaintiff and the members of the North Dakota Class are entitled to seek all forms of relief, including damages and injunctive relief under N.D. Cent. Code § 51-10-06.

**19.   Violation of the Oregon Unlawful Trade Practices Act (Or. Rev.
Stat. § 646.608, *et seq.*) on behalf of the Oregon Class**

490.   Plaintiff incorporates and realleges, as though fully set forth herein, each and

CLASS ACTION COMPLAINT - 81

1     every allegation set forth in the preceding paragraphs of this Complaint.

2     491.    By reason of the conduct alleged herein, Defendants have violated Or. Rev. Stat. §

3     646.608, *et seq.*

4     492.    Defendants have entered into a contract, combination, or conspiracy between two

5     or more persons in restraint of, or to monopolize, trade or commerce in the cedar shakes and

6     shingles market, a substantial part of which occurred within Oregon.

7     493.    Defendants established, maintained, or used a monopoly, or attempted to establish

8     a monopoly, of trade or commerce in the cedar shakes and shingles market, for the purpose of

9     excluding or limiting competition or controlling or maintaining prices, a substantial part of which

10     occurred within Oregon.

12     494.    Defendants' conduct was conducted with the intent to deceive Oregon consumers

13     regarding the nature of Defendants' actions within the stream of Oregon commerce.

14     495.    Defendants' conduct was unfair or deceptive within the conduct of commerce

15     within the State of Oregon.

16     496.    Defendants' conduct misled consumers, withheld material facts, and had a direct

17     or indirect impact upon Plaintiff' and members-of-the-Classes' ability to protect themselves.

18     497.    Defendants' unlawful conduct substantially affected Oregon's trade and

19     commerce.

20     498.    As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff

21     and the members of the Oregon Class have been injured in their business or property and are

22     threatened with further injury.

23     499.    By reason of the foregoing, the Plaintiff and the members of the Oregon Class are

24     entitled to seek all forms of relief available under Or. Rev. Stat. § 646.638.

25     500.    Pursuant to section 646.638 of the Oregon Unlawful Trade Practices Act, with the

26     filing of this action, a copy of this Complaint is being served upon the Attorney General of

27     Oregon.

28

CLASS ACTION COMPLAINT - 82

**20.     Violation of the Rhode Island Deceptive Trade Practices Act (R.I. Gen. Laws § 6-13.1-1, *et seq.*) on behalf of the Rhode Island Class**

501.     Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

502.     By reason of the conduct alleged herein, Defendants have violated R.I. Gen Laws § 6-13.1-1, *et seq.*

503.      Defendants engaged in an unfair or deceptive act or practice with the intent to injure competitors and consumers through supra-competitive profits.

504.     Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the cedar shakes and shingles market, a substantial part of which occurred within Rhode Island, for the purpose of controlling, fixing, or maintaining prices in the cedar shakes and shingles market.

505.     Defendants' conduct was unfair or deceptive within the conduct of commerce within the State of Rhode Island.

506.     Defendants' conduct amounted to an unfair or deceptive act or practice committed by a supplier in connection with a consumer transaction.

507.     Defendants' unlawful conduct substantially affected Rhode Island's trade and commerce.

508.     Defendants' conduct was willful.

509.     Defendants deliberately failed to disclose material facts to Plaintiff and members of the Rhode Island Class concerning Defendants' unlawful activities, including the horizontal conspiracy and artificially-inflated prices for cedar shakes and shingles.

510.     Defendants' deception, including its affirmative misrepresentations and/or omissions concerning the price of cedar shakes and shingles, constitutes information necessary to Plaintiff and members of the Rhode Island Class relating to the cost of cedar shakes and shingles purchased.

511.     Plaintiff and members of the Rhode Island class purchased goods, namely cedar

CLASS ACTION COMPLAINT - 83

shakes and shingles, primarily for personal, family, or household purposes.

512.    As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and the members of the Rhode Island Class have been injured in their business or property and are threatened with further injury.

513.    By reason of the foregoing, Plaintiff and the members of the Rhode Island Class are entitled to seek all forms of relief, including actual damages or $200 per violation, whichever is greater, and injunctive relief and punitive damages under R.I. Gen Laws § 6-13.1-5.2.

### 21.    Violation of South Carolina's Unfair Trade Practices Act (S.C. Code Ann. §§ 39-5-10) on behalf of the South Carolina Class

514.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

515.    By reason of the conduct alleged herein, Defendants have violated S.C. Code Ann. §§ 39-5-10.

516.    Defendants have entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the cedar shakes and shingles market, a substantial part of which occurred within Oregon.

517.    Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the cedar shakes and shingles market, for the purpose of excluding or limiting competition or controlling or maintaining prices, a substantial part of which occurred within South Carolina.

518.    Defendants' conduct was conducted with the intent to deceive South Carolina consumers regarding the nature of Defendants' actions within the stream of South Carolina commerce.

519.    Defendants' conduct was unfair or deceptive within the conduct of commerce within the State of South Carolina.

520.    Defendants' conduct misled consumers, withheld material facts, and had a direct or indirect impact upon Plaintiff' and members-of-the-Classes' ability to protect themselves.

CLASS ACTION COMPLAINT - 84

LAW OFFICES OF
McNaul Ebel Nawrot & Helgren pllc
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

521.     Defendants' unlawful conduct substantially affected South Carolina trade and commerce.

522.     Defendants' unlawful conduct substantially harmed the public interest of the State of South Carolina, as numerous citizens purchase cedar shakes and shingles for their homes and businesses.

**22.     Violation of South Dakota Deceptive Trade Practices and Consumer Protection Law (S.D. Codified Laws § 37-24-6) on behalf of the South Dakota Class**

523.     Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

524.     By reason of the conduct alleged herein, Defendants have violated S.D. Codified Laws § 37-24-6.

525.     Defendants engaged in a deceptive trade practice with the intent to injure competitors and consumers through supra-competitive profits.

526.     Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the cedar shakes and shingles market, a substantial part of which occurred within South Dakota, for the purpose of controlling, fixing, or maintaining prices in the cedar shakes and shingles market.

527.     Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of South Dakota.

528.     Defendants' conduct amounted to a fraudulent or deceptive act or practice committed by a supplier in connection with a consumer transaction.

529.     Defendants' unlawful conduct substantially affected South Dakota's trade and commerce.

530.     Defendants' conduct was willful.

531.     As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and the members of the South Dakota Class have been injured in their business or property and are threatened with further injury.

CLASS ACTION COMPLAINT - 85

532.    By reason of the foregoing, Plaintiff and the members of the South Dakota Class are entitled to seek all forms of relief, including actual damages and injunctive relief under S.D. Codified Laws § 37-24-31.

### 23.    Violation of the Utah Consumer Sales Practices Act (Utah Code Ann. §§ 13-11-1, *et seq.*) on behalf of the Utah Class

533.    475. Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

534.    By reason of the conduct alleged herein, Defendants have violated Utah Code Ann. §§ 13-11-1, *et seq.*

535.    Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the cedar shakes and shingles market, a substantial part of which occurred within Utah.

536.    Defendants are suppliers within the meaning of Utah Code Ann. §§ 13-11-3.

537.    Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Relevant market, a substantial part of which occurred within Utah, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the cedar shakes and shingles market.

538.    Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of Utah.

539.    Defendants' conduct and/or practices were unconscionable and were undertaken in connection with consumer transactions.

540.    Defendants knew or had reason to know that their conduct was unconscionable.

541.    Defendants' conduct misled consumers, withheld material facts, and resulted in material misrepresentations to Plaintiff and members of the Class.

542.    Defendants' unlawful conduct substantially affected Utah's trade and commerce.

543.    As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and the members of the Utah Class have been injured in their business or property and are

CLASS ACTION COMPLAINT - 86

LAW OFFICES OF
McNaul Ebel Nawrot & Helgren pllc
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

threatened with further injury.

544.   By reason of the foregoing, the Plaintiff and the members of the Utah Class are entitled to seek all forms of relief, including declaratory judgment, injunctive relief, and ancillary relief, pursuant to Utah Code Ann. §§ 13-11-19(5) and 13-11-20.

### 24.   Violation of the Utah Unfair Practices Act (Utah Code Ann. §§ 13-5-1, *et seq.*) on behalf of the Utah Class

545.   Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

546.   By reason of the conduct alleged herein, Defendants have violated Utah Code Ann. §§ 13-5-1, *et seq.*

547.   Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the cedar shakes and shingles market, a substantial part of which occurred within Utah.

548.   Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Relevant market, a substantial part of which occurred within Utah, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the cedar shakes and shingles market.

549.   Defendants' conduct caused or was intended to cause unfair methods of competition within the State of Utah.

550.   Defendants' unlawful conduct substantially affected Utah's trade and commerce.

551.   As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and the members of the Utah Class have been injured in their business or property and are threatened with further injury.

552.   By reason of the foregoing, the Plaintiff and the members of the Utah Class are entitled to seek all forms of relief, including actual damages or $2000 per Utah Class member, whichever is greater, plus reasonable attorney's fees under Utah Code Ann. §§ 13-5-14, *et seq.*

CLASS ACTION COMPLAINT - 87

**25.    Violation of Vermont Stat. Ann. 9 § 2453, *et seq.* on behalf of the Vermont Class**

553.    495. Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

554.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Vermont Stat. Ann. 9 § 2453, *et seq.*

555.    Defendants' combination or conspiracy had the following effects: (1) cedar shakes and shingles price competition was restrained, suppressed, and eliminated throughout Vermont; (2) cedar shakes and shingles prices were raised, fixed, maintained and stabilized at artificially high levels throughout Vermont; (3) Plaintiff and members of the Vermont Class were deprived of free and open competition; and (4) Plaintiff and members of the Vermont Class paid supracompetitive, artificially inflated prices for cedar shakes and shingles.

556.    During the Class Period, Defendants' illegal conduct had a substantial effect on Vermont commerce.

557.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Vermont Class have been injured in their business and property and are threatened with further injury.

558.    By reason of the foregoing, Defendants have entered into an agreement in restraint of trade in violation of Vermont Stat. Ann. 9 § 2453, *et seq.* Accordingly, Plaintiff and members of the Vermont Class seek all relief available under Vermont Stat. Ann. 9 § 2453, *et seq.*

**26.    Violation of the Virginia Consumer Protection Act of 1997 Va. Code § 59.1-196, *et seq.* on behalf of the Virginia Class**

559.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

560.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Virginia Consumer Protection Act of 1977, Va. Code § 59.1-196, *et seq.*

561.    Defendants have engaged in unfair competition or unfair, unconscionable, or

CLASS ACTION COMPLAINT - 88

deceptive acts or practices in violation of the Virginia Consumer Protection Act of 1977, Va. Code § 59.1-196, *et seq.*

562.    Members of the Virginia Class purchased and/or reimbursed for cedar shakes and shingles to be used for personal, family, or household purposes.

563.    Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Virginia, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which cedar shakes and shingles were sold, distributed, or obtained in Virginia.

564.    Defendants deliberately failed to disclose material facts to Plaintiff and members of the Virginia Class concerning Defendants' unlawful activities and artificially inflated prices for cedar shakes and shingles. Defendants misrepresented to all purchasers during the Class Period that Defendants' cedar shakes and shingles prices were competitive and fair.

565.    Defendants' unlawful conduct had the following effects: (1) cedar shakes and shingles price competition was restrained, suppressed, and eliminated throughout Virginia; (2) cedar shakes and shingles prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Virginia; (3) Plaintiff and members of the Virginia Class were deprived of free and open competition; and (4) Plaintiff and members of the Virginia Class paid supracompetitive, artificially inflated prices for cedar shakes and shingles.

566.    Defendants' illegal conduct substantially affected Virginia commerce and consumers.

567.    As a direct and proximate result of Defendants' violations of law, Plaintiff and members of the Virginia Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above.

568.    That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of cedar shakes and shingles, likely misled all purchasers acting reasonably

LAW OFFICES OF
McNaul Ebel Nawrot & Helgren pllc
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

under the circumstances to believe that they were purchasing cedar shakes and shingles at prices set by a free and fair market.

569.    Defendants' affirmative misrepresentations and omissions constitute information important to Plaintiff and members of the Virginia Class as they related to the cost of cedar shakes and shingles they purchased.

570.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code § 59.1-196, *et seq.*, and, accordingly, Plaintiff and members of the Virginia Class seek all relief available under that statute.

**D.    Unjust Enrichment**

571.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

572.    As a result of their unlawful conduct described above, Defendants have and will continued to be unjustly enriched by the receipt of unlawfully inflated prices and unlawful profits of cedar shakes and shingles.

573.    Under common law principles of unjust enrichment, Defendants should not be permitted to retain the benefits conferred on them by overpayments by Plaintiff and members of the Classes in the following states: Arizona, California, Delaware, District of Columbia, Florida, Georgia, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, North Carolina, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, West Virginia, and Wisconsin.

**XI. REQUEST FOR RELIEF**

574.    WHEREFORE, Plaintiff, on behalf of himself and the Classes of all others so similarly situated, respectfully requests judgment against Defendants as follows:

   a.  The Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, appoint Plaintiff as a Class Representative and its counsel of record as Class Counsel, and direct that notice of this action, as provided by Rule 23(c) of the Federal Rules of

CLASS ACTION COMPLAINT - 90

Civil Procedure, be given to the Classes, once certified;

b.  The unlawful conduct, conspiracy or combination alleged herein be adjudged and decreed in violation of Section 1 of the Sherman Act and listed state antitrust laws, unfair competition laws, state consumer protection laws, and common law;

c.  Plaintiff and the Classes recover damages, to the maximum extent allowed under the listed state antitrust laws, unfair competition laws, state consumer protection laws, and common law;

d.  Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining or renewing the conduct, conspiracy, or combination alleged herein, or from entering into any other conspiracy or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

e.  Plaintiff and the members of the Classes be awarded pre- and post-judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

f.  Plaintiff and the members of the Classes recover their costs of suit, including reasonable attorney's fees, as provided by law; and

g.  Plaintiff and the members of the Classes have such other and further relief as the case may require and the Court may deem just and proper.

## XII.   JURY TRIAL DEMANDED

Plaintiff demands a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues so triable.

Dated: March 26, 2019

CLASS ACTION COMPLAINT - 91

1

2

3

4

5

6

7

8

9

10

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/ Greg J. Hollon*
Greg J. Hollon
MCNAUL EBEL NAWROT
& HELGREN PLLC
One Union Square
600 University Street, Suite 2700
Seattle, Washington 98101
Tel: (206) 467-1816
ghollon@mcnaul.com

Christopher J. Cormier (to be admitted PHV)
BURNS CHAREST LLP
5290 Denver Tech Center Pkwy., Suite 150
Greenwood Village, Colorado 80111
Tel: (720) 630-2092
ccormier@burnscharest.com

Warren T. Burns (to be admitted PHV)
Will Thompson (to be admitted PHV)
Spencer Cox (to be admitted PHV)
BURNS CHAREST LLP
900 Jackson Street, Suite 500
Dallas, Texas 75201
Tel: (469) 904-4550
wburns@burnscharest.com
wthompson@burnscharest.com
scox@burnscharest.com

Lydia Wright (to be admitted PHV)
BURNS CHAREST LLP
65 Canal Street, Suite 1170
New Orleans, Louisiana 70130
Tel: (504) 799-2845
lwright@burnscharest.com

George Farah
HANDLEY FARAH ANDERSON
81 Prospect Street
Brooklyn, NY 11201
Tel: (212) 477-8090
gfarah@hfajustice.com

Keith Dubanevich
STOLL BERNE
209 SW Oak Street, Suite 500
Portland, Oregon 97204
Tel: (503) 227-1600
tdejong@stollberne.com
kdubanevich@stollberne.com

*Counsel for Plaintiff Fraser Construction Company, Inc. and the Proposed Classes*

CLASS ACTION COMPLAINT - 92

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816