Hon. Ricardo S. Martinez

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| FRASER CONSTRUCTION COMPANY, INC., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CEDAR SHAKE & SHINGLE BUREAU, a Washington nonprofit corporation; WALDUN FOREST PRODUCTS, LTD, a British Columbia corporation; ANBROOK INDUSTRIES LTD, a British Columbia corporation; and G&R CEDAR LTD., a British Columbia corporation,,<br><br>Defendants. | No. 2:19-cv-00451-RSM<br><br>DECLARATION OF CHRISTOPHER J. CORMIER RE RESELLER INDIRECT PURCHASER PLAINTIFFS' MOTION FOR APPOINTMENT OF INTERIM CO-LEAD CLASS COUNSEL AND LIAISON COUNSEL<br><br>NOTED FOR CONSIDERATION ON APRIL 26, 2019 |

I, CHRISTOPHER J. CORMIER, declare under penalty of perjury of the laws of the State of Washington that the following statements are true and correct and based upon my personal knowledge:

1. I am attorney licensed to practice in Colorado and the District of Columbia. I have been admitted *pro hac vice* to practice before this Court in this case.

2. I am a Partner of Burns Charest LLP ("Burns Charest"). I joined the firm in September 2018 as the founding Partner of the firm's Denver, Colorado office, after practicing for approximately 16 years, first as an associate and then as a partner, at Cohen Milstein Sellers & Toll PLLC, a 90-lawyer law firm nationally recognized for its

DECL. OF CHRISTOPHER J. CORMIER RE MOT. FOR APPOINTMENT OF INTERIM CO-LEAD CLASS COUNSEL AND LIAISON COUNSEL (Cause No. 2:19-cv-00451-RSM) – Page 1

LAW OFFICES OF
McNaul Ebel Nawrot & Helgren pllc
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

representation of plaintiffs in antitrust and other class actions in courts across the nation.

3. On March 27, 2019, my client, Plaintiff Fraser Construction Company, Inc. ("Plaintiff"), filed the first—and to my knowledge only—Reseller Indirect Purchaser Plaintiff class action complaint in the nation alleging that Defendants and their co-conspirators colluded to fix the prices of cedar shakes and shingles in violation of federal antitrust law as well as the antitrust and consumer protection laws of numerous states. *See Fraser Construction Co., Inc. v. Cedar Shake & Shingle Bureau, et al.*, No. 2:19-cv-00451 (W.D. Wash. Mar. 27, 2019), Class Action Complaint (Dkt. #1) ("Complaint") at ¶ 4.

4. Burns Charest has performed considerable work, and expended significant time and resources, to identify and investigate—as well as meaningfully further—the claims in this litigation. The firm's work began with a thorough review of the complaint and temporary restraining order papers filed earlier this year by S&W Forest Products, where allegations of collusion in the cedar shake and shingles industry first came to light. In the ensuing days and weeks, the firm undertook considerable investigation of the industry and claims at issue before filing suit for their client. The firm conducted an extensive review of publicly available information concerning the products at issue, relevant industry characteristics, the manufacturers (including Defendants and their co-conspirators), the industry trade association, and the distribution chain. The firm also spoke with numerous industry participants about market characteristics, observed pricing trends, and the core allegations. The firm also retained, at its own expense, an experienced economics consulting firm to evaluate relevant available industry pricing, cost and demand data to help inform their assessment of the existence and impact of any collusion that may have occurred. This economic assessment, showcased prominently in the complaint, reveals that pricing for the relevant products has increased significantly since at least January 2011 and that these increases cannot be explained by ordinary market forces.

DECL. OF CHRISTOPHER J. CORMIER RE MOT. FOR APPOINTMENT OF INTERIM CO-LEAD CLASS COUNSEL AND LIAISON COUNSEL (Cause No. 2:19-cv-00451-RSM) – Page 2

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

5. Burns Charest possesses considerable experience—and has experienced considerable success—in prosecuting antitrust and other complex class actions in courts across the country. The firm has quickly gained a reputation as a leading antitrust and complex litigation boutique. Founded in 2015 by two former Susman Godfrey LLP partners, Burns Charest lawyers have been selected to lead numerous cases of national importance and scope. The firm also has an active practice representing individuals and businesses as plaintiffs in, among other matters, high-stakes antitrust and commercial litigation disputes. Across all of its practice areas, the firm prides itself in not only litigating cases, but in taking them to trial if necessary.

6. Now at 20 lawyers strong with offices in Dallas, Denver and New Orleans, Burns Charest has been appointed to leadership positions in the following antitrust class actions: *In re German Automotive Manufacturers Antitrust Litigation*, No. 17-MD-2796 (N.D. Cal.) (lead counsel); *In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litigation*, No. 17-MD-2785 (D. Kan.) (co-lead counsel); *In re Domestic Airlines Antitrust Litigation*, No. 15-MC-01404 (D.D.C.) (executive committee member; $60 million in partial settlements); *In re West Texas Intermediate Crude Oil Commodities and Antitrust Litigation*, No. 11-CV-3600 (S.D.N.Y.) (co-lead counsel; $16.5 million settlement); *In re Anadarko Oil and Gas Lease Antitrust Litigation*, No. CIV-16-0209-HE (W.D. Okla.) (co-lead counsel; $6.95 million settlement); *Kjessler v. Zaappaaz, Inc., et al.*, No. 18-CV-00430 (S.D. Tex.) (lead counsel); and *In re Vehicle Carriers Antitrust Litigation*, No. 13-CV-3306 (D.N.J.) (co-lead counsel).

7. I am the Burns Charest lawyer who personally will lead the firm's efforts in litigating this matter. I have gained extensive leadership and trial experience in major antitrust class actions during my career. For example, in 2013, I served on the trial team, in my role as co-lead counsel, for the plaintiff class in *In re Urethane Antitrust Litigation*, No. 04-MD-1616 (D. Kan.), where he was instrumental in securing a $1.06 billion

DECL. OF CHRISTOPHER J. CORMIER RE MOT. FOR APPOINTMENT OF INTERIM CO-LEAD CLASS COUNSEL AND LIAISON COUNSEL (Cause No. 2:19-cv-00451-RSM) – Page 3

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

judgment—believed to be the largest-ever in a price-fixing class action—against Dow Chemical after a month-long trial. I also served as co-lead counsel for the plaintiff class in *In re Plasma-Derivative Protein Therapies Antitrust Litigation*, No. 09-C-7666 (N.D. Ill.), where I helped obtain $128 million in settlements, and in *In re Dental Supplies Antitrust Litigation*, No. 16-CV-0696 (E.D.N.Y.), where I helped obtain $80 million in class-wide settlements. I was personally appointed co-lead counsel in the *Anadarko Oil and Gas Lease Antitrust* litigation noted above, where a $6.95 million class-wide settlement is awaiting final court approval.

8. I repeatedly have been named a Rising Star by *Super Lawyers* (2016-2017) as well as an Antitrust Litigation Star (2013-2015) by the *Benchmark Plaintiff* publication. I was personally recognized by the *Benchmark Litigation* publication in 2018 for my efforts in securing a $30 million settlement in an antitrust class action where the defendants, much liked those here, allegedly overcharged purchasers "by fixing prices and muscling out competitors."

9. Burns Charest has the resources to commit to the prosecution of this action. With 20 lawyers in three offices and decades of combined experience successfully funding and litigating complex class actions, my firm has the track record to back up this commitment.

10. I and my firm have worked cooperatively with the proposed interim co-lead counsel for the End User Indirect Purchaser Plaintiff classes in other antitrust class actions. For example, Burns Charest and Keller Rohrback, one of the proposed End User interim co-lead counsel, currently serve as interim co-lead class counsel in the *EpiPen* class action noted above, Burns Charest and Keller Rohrback serve as co-lead counsel and sit on the executive committee, respectively, in the *Anadarko Basin Oil and Gas Lease* class action noted above, and Burns Charest and Lockridge Grindal, the other proposed End User interim co-lead counsel, each represent different proposed classes in *In re*

DECL. OF CHRISTOPHER J. CORMIER RE MOT.
FOR APPOINTMENT OF INTERIM CO-LEAD
CLASS COUNSEL AND LIAISON COUNSEL
(Cause No. 2:19-cv-00451-RSM) – Page 4

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

*Broiler Chicken Antitrust Litigation,* No. 16-CV-08637 (N.D. Ill.).

11. Based on my experience dealing with the proposed End User co-lead counsel in this litigation thus far, I fully intend to carry on this tradition here. For instance, we already have begun discussing ways to coordinate our efforts to maximize the efficient and successful prosecution of our respective classes' claims on matters of shared interest.

12. Burns Charest is committed to managing this litigation efficiently and economically, and I and the other lawyers who will work on this case intend to use our experience and background in similar cases to streamline the litigation. *First,* the firm is well-versed in using case management strategies to focus litigation with an eye on getting the best result possible without spending a fortune. If appointed, the firm will implement a timekeeping and cost reporting protocol that will require all Reseller plaintiffs' counsel to maintain a daily record of their time and expenses incurred in connection with this litigation and provide monthly reports for review by the firms. Should the Court request it, the firm will provide *in camera* submissions of time records for the Court's review. *Second*, the firm will take measures of the kind used in its other cases to ensure that this litigation is prosecuted leanly yet effectively. For example, it will ensure that each assignment is sufficiently but not overly staffed, that state-of-the art technology (like technology assisted review and predictive coding) is implemented to streamline document discovery, that certain tasks like document review have reasonable hourly rate caps, and that a core group of lawyers as opposed to a small army will be responsible for making all major decisions on behalf of the proposed classes.

13. Oher indirect purchaser plaintiff class action complaints making similar allegations recently were filed. *See Fraser Construction Co., Inc. v. Cedar Shake & Shingle Bureau, et al.*, No. 2:19-cv-00451 (W.D. Wash. Apr. 5, 2019), Notice of Related Cases and Request for Re-Assignment (Dkt. #18).

DECL. OF CHRISTOPHER J. CORMIER RE MOT. FOR APPOINTMENT OF INTERIM CO-LEAD CLASS COUNSEL AND LIAISON COUNSEL (Cause No. 2:19-cv-00451-RSM) – Page 5

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

14. The End User complaints differ from Plaintiff's Complaint in an important way: they were filed on behalf of proposed classes of End User Indirect Purchaser Plaintiffs (the lowest level of the distribution chain), while this Complaint was filed on behalf of proposed classes of Reseller Indirect Purchaser Plaintiffs (one level above the End Users). The End User class members will want to prove that as much of the illegal overcharge as possible was passed on to them from the Reseller class members, while the Reseller class members will want to prove that they themselves absorbed as much of the illegal overcharges as possible.

15. Counsel for both the Reseller Indirect Purchaser Plaintiffs and the End User Indirect Purchaser Plaintiffs recognize that a conflict exists between the two groups on the essential elements of antitrust impact and damages, and thus seek appointment to represent their respective proposed classes in this litigation.

16. This conflict between the two proposed classes is actual and direct. Indeed, End Users' counsel expressly have disclaimed representing any Resellers. *See Liebo v. Cedar Shake & Shingle Bureau, et al.*, No. 19-CV-00288 (W.D. Wash. Feb. 27, 2019), Complaint (Dkt. #1) ("Liebo Complaint") at ¶ 80 (bringing class action on behalf of residents of various states who indirectly purchased the products "for end use and not for resale"); *Liebo v. Cedar Shake & Shingle Bureau, et al.*, No. 19-CV-00288 (W.D. Wash. Feb. 27, 2019), End User Indirect Purchaser Plaintiffs' Mot. and Mem. in Supp. of Appointment of Interim Co-Lead Class Counsel (Dkt. #26) (seeking appointment as "interim co-lead class counsel for End User IPPs and the End User IPP class"), and, by the same token, Plaintiff and its counsel only seek to represent Resellers, not End Users. Moreover, End Users' counsel allege their clients, not the Resellers, are the ones who absorbed "all or most of the overcharge" illegally set. Liebo Compl. at ¶ 86. This conflict will continue as the litigation proceeds, as the different plaintiff groups will pursue certain discovery differently, proffer experts who will favor their respective positions on impact

DECL. OF CHRISTOPHER J. CORMIER RE MOT.
FOR APPOINTMENT OF INTERIM CO-LEAD
CLASS COUNSEL AND LIAISON COUNSEL
(Cause No. 2:19-cv-00451-RSM) – Page 6

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

*Shingle Bureau, et al.*, No. 19-CV-00288 (W.D. Wash. Feb. 27, 2019), Complaint (Dkt. #1) ("Liebo Complaint") at ¶ 80 (bringing class action on behalf of residents of various states who indirectly purchased the products "for end use and not for resale"); *Liebo v. Cedar Shake & Shingle Bureau, et al.*, No. 19-CV-00288 (W.D. Wash. Feb. 27, 2019), End User Indirect Purchaser Plaintiffs' Mot. and Mem. in Supp. of Appointment of Interim Co-Lead Class Counsel (Dkt. #26) (seeking appointment as "interim co-lead class counsel for End User IPPs and the End User IPP class"), and, by the same token, Plaintiff and its counsel only seek to represent Resellers, not End Users. Moreover, End Users' counsel allege their clients, not the Resellers, are the ones who absorbed "all or most of the overcharge" illegally set. Liebo Compl. at ¶ 86. This conflict will continue as the litigation proceeds, as the different plaintiff groups will pursue certain discovery differently, proffer experts who will favor their respective positions on impact and damages, and present different class-wide damages models and testimony at class certification, summary judgment and trial. There is thus a concurrent conflict of interest in having one set of counsel represent both plaintiff groups in this litigation.

17. Attached hereto as Exhibit A are true and correct copies of excerpts from the Burns Charest website, including information about the firm, its antitrust and class action practice, and my individual biography.

DATED this 9th day of April, 2019, at Denver, Colorado.

_____
Christopher J. Cormier
Email: ccormier@burnscharest.com

# DECLARATION OF SERVICE

I hereby certify that on April 9, 2019 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

| | |
|---|---|
| Gregory Hollon: | ghollon@mcnaul.com |
| Will Thompson: | wthompson@burnscharest.com |
| Spencer Cox: | scox@burnscharest.com |
| Christopher Cormier: | ccormier@burnscharest.com |
| Warren Burns: | wburns@burnscharest.com |

*Attorneys for Plaintiff Fraser Construction Company, Inc. and the Proposed Classes*

Further, I hereby certify that I have sent courtesy copies to counsel for defendants in the related cases:

Larry Steven Gangnes
LANE POWELL PC
1420 Fifth Ave., Ste. 4200
Seattle, WA 9811109402
E: gangnesl@lanepowell.com

Heidi Brooks Bradley
Lane Powell PC
E: bradleyh@lanepowell.com

Molly A. Terwilliger
YARMUTH LLP
1420 5th Ave., Ste. 1400
Seattle, WA 98101
E: mterwilliger@yarmuth.com

Jacob Alejandro Zuniga (Lead)
STOKES LAWRENCE
1420 Fifth Ave., Ste. 3000
Seattle, WA 98101-2393
E: Jacob.zuniga@stokeslaw.com

Matthew L. Harrington
STOKES LAWRENCE
E: mlh@stokeslaw.com

DATED this 9th day of April, 2019.

By: *s/Gregory J. Hollon*
Gregory J. Hollon, WSBA No. 26311

DECL. OF CHRISTOPHER J. CORMIER RE MOT.
FOR APPOINTMENT OF INTERIM CO-LEAD
CLASS COUNSEL AND LIAISON COUNSEL
(Cause No. 2:19-cv-00451-RSM) – Page 8

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

4148-001 id086f06zf 2019-04-09

# EXHIBIT A

# About Us

Burns Charest is a young firm with a dynamic and impressive pedigree. Our founders were partners and attorneys at some of the finest commercial litigation boutiques in the nation. In 2015, we came together to build a new, aggressive platform to pursue our clients' interests.

We know that experience matters to clients and judges. And we have it. Our lawyers have actually tried a complex class action to verdict, served as co-lead counsel in multi-district litigation, secured a $106 million judgment in the first of the 2008 mortgage meltdown cases to go to trial, obtained significant settlements in royalty-owner disputes, and regularly represented individuals and businesses in complex, bet-the-company cases.

We currently serve as co-lead counsel in national antitrust and commodity class actions. We represent numerous royalty owners in disputes against oil and gas giants. We serve hundreds of individuals whose lives have been threatened by exposure to asbestos. And we are helping landowners clean up decades of environmental damage.

We have a strong team. Our lawyers are some of the most experienced and talented of their generation, and we are happy to match our credentials against others.

Our focus is on the future. We believe firmly that our nation's legal system was designed to protect individuals and businesses from the wrongdoing of others and to assure a level playing field. As lawyers, we have an incredibly important role to play in making that system work for our clients. And we will not shy away from a fight to protect their interests.

## We are Burns Charest LLP.

# Why We Win

We are *trial lawyers*. We are not litigators.

What is the difference? From day one, we focus on how we are going to win your case at trial. We know from experience that success in the courtroom begins with a well-planned and efficient case strategy that focuses on what truly matters.

Our focus is not on the billable hour. We prefer to work under fee agreements that reward success and efficiency. By fully aligning our clients' interests with our own, we are able to focus on success.

We work smartly. In each case we conduct discovery and motion practice in a way that advances our client's goals. We identify key witnesses and documents, and then focus our efforts on how to tell our client's story through targeted depositions and discovery.

Many firms preach efficiency; we practice it. Our clients' interests are not best served by assigning multiple lawyers to perform the same task. That is not our style. We adhere to our Texas roots: One Riot, One Ranger.

The best lawyers are not those who scream loudest. We do not advance our clients' cases by engaging in meaningless disputes with our adversaries. That wastes time and money. But be assured, we know what's important and we will not shy away from zealously advancing our clients' interests.

We engage our clients each step of the way as members of the team. They help shape strategy. They participate in every significant decision.

We know how to communicate complex ideas to judges and juries. We use innovative techniques and technologies to advocate for our clients at trial, employing creative means to impart their story and serve their interests.

## We are Burns Charest LLP.

Corporations and special interest groups have spent millions of dollars in an effort to convince Americans that class actions are bad for business. Why? Because they know that class actions are the single most effective means of compensating Americans for corporate wrongdoing.

At Burns Charest, we believe that class actions are often the only way to assure that victims of corporate greed and unlawful conduct are compensated for their damages. Class actions are an integral part of our system of civil justice. We firmly believe in this fundamental right and are willing to stake our own financial resources on our clients' behalf.

## Antitrust

Antitrust laws are essential to our nation's economy. Without them, businesses would be free to conspire to charge American consumers higher prices. And monopolists would be able to squeeze competitors out of the market.

Antitrust laws are so important that state and federal governments have empowered American consumers and businesses to bring legal claims to enforce these laws, and in some cases they may obtain three times their damages if successful. We gladly represent those who have been harmed and are seeking to enforce their rights.

We have deep experience in representing classes and individuals in antitrust suits against some of the world's largest corporations. We currently serve as co-lead counsel on behalf of a class of American car purchasers in the Vehicle Carrier Services Antitrust Litigation case that is pending in federal court in New Jersey. We are also co-lead counsel in the Crude Oil Commodity Futures Litigation, where we brought antitrust and Commodity Exchange Act claims against individual traders and companies on behalf of a nationwide class. Our lawyers have served as co-lead counsel in other national class action cases before forming Burns Charest. And we have obtained hundreds of millions of dollars for the classes we have represented.

## Consumer Class Actions

Federal and state governments have also enacted laws to safeguard Americans' privacy rights and to protect consumers and businesses from unfair practices. These laws often provide individuals and businesses a means to bring claims against defendants for unlawful actions.

We have brought claims on behalf of American consumers and businesses in cases throughout the United States. Our consumer cases have involved federal and state privacy and consumer protection laws, as well as state statutes regulating trade practices.

# Christopher J. Cormier

Burns Charest LLP
5290 Denver Tech Center Parkway, Suite 150
Denver | Colorado | 80111
Direct:  (720) 630-2092
Mobile:  (202) 577-3977
ccormier@burnscharest.com

## The founding partner of the firm's Denver office, Chris is an accomplished plaintiffs lawyer who has substantial experience litigating high-stakes antitrust and commercial cases.  He has obtained more than $1.5 billion in verdicts and settlements in federal courts from Kansas City to New York City.

Chris is actively litigating numerous contingency cases on the plaintiffs' side in federal and state courts throughout the country, from large-scale breach of contract cases in the oil and gas industry to nationwide antitrust cases affecting various products and services.

From deposing the president or CEO of a Fortune 500 Company and drafting case-dispositive briefs to rolling up his sleeves and learning the documents of a case inside and out, Chris takes pride in effectively and efficiently representing his clients' interests in all phases of litigation, from complaint filing to trial and appeal, and all points in between.

Chris honed his legal skills at a large prominent plaintiffs-side litigation firm for more than 15 years before moving his practice to Burns Charest in 2018.  He is eager to put that experience and drive to work for you, whether you are a big company or an individual who has been wronged by misconduct.

## Courts throughout the country have commented favorably on his work:

*I do think the result here was remarkable.  This is a case which I think a lot of experienced class action antitrust lawyers turned their back on, others who decided they'd rather do it their own way, and this group of lawyers stuck with it, built this case….  This was a matter of the jurors being persuaded by the presentation made at trial, based on copious preparation….  And I think that the result in this case in the end was truly exceptional.*

— Hon. John Lungstrum, U.S. District Judge, District of Kansas, *In re Urethane Antitrust Litigation* (July 27, 2016 Hearing)

*I've heard how counsel have performed, how thoroughly and faithfully and zealously they represented their clients and sought a fair and reasonable outcome….  And that's important to have skilled counsel.  That makes all the difference….  I think counsel can feel very good about themselves professionally, that they've served their clients well.*

— Hon. Anne Thompson, U.S. District Judge, District of New Jersey, *In re Ductile Iron Pipe Fittings Direct Purchaser Antitrust Litigation* (May 10, 2018 Hearing)

*I was sincere when I said I think both sides have received excellent legal representation in this case.*

— Hon. Harry Mattice, Jr., U.S. District Judge, Eastern District of Tennessee, *In re Cast Iron Soil Pipe and Fittings Antitrust Litigation* (May 23, 2017 Hearing)

Chris's clients, like the General Counsel's office at the University of Utah Health System, similarly speak to his attributes as a trusted and reliable advocate and counselor:

*I can see why you are a successful attorney.  Many of our outside law firms take us for granted a bit and don't communicate regularly so I appreciate this….  It is nice to work with people in whom I have such confidence.*

**Honors and Professional Involvement**

Named an "Antitrust Litigation Star" by *Benchmark Plaintiff: The Definitive Guide to America's Leading Plaintiff Litigation Firms and Attorneys*, 2013-2015

Named a "Rising Star" in Antitrust Litigation by *Super Lawyers (*Thompson Reuters), 2016-2017

Graduated from American University Washington College of Law, J.D., *magna cum laude* (Top 10%), 2002

Graduated from the University of Virginia, Dean's List, B.A., 1999

Intern, Hon. Deborah K. Chasanow, U.S. District Court for the District of Maryland, 2000

Admitted to practice in the U.S. Supreme Court, Colorado state and federal courts, Washington, DC state and federal courts, and other federal courts throughout the nation

**Representative Cases**

**Urethane Antitrust Litigation**
Chris was co-lead counsel for a class of direct purchaser plaintiffs in an antitrust class action alleging a nationwide conspiracy to fix the prices of chemicals used to make polyurethane foam, a basic component of ubiquitous everyday products such as bed mattresses, car seat cushioning and furniture cushioning. Four defendants — Bayer, BASF, Huntsman, and Lyondell — settled for a total of $139.5 million, while the case against the fifth manufacturer, Dow Chemical, went to trial. After a four-week jury trial, in which Chris was a member of the trial team, the jury returned a $400 million verdict for the plaintiffs, which the district court trebled under federal antitrust law to more than $1 billion. This was the largest verdict in the nation in 2013, as reported by the *National Law Journal*. The U.S. Court of Appeals for the Tenth Circuit affirmed the judgment. In early 2016, Dow ultimately settled for $835 million while the case was on appeal to the Supreme Court, bringing the total recovery to $974 million – nearly 250 percent of the damages found by the jury.

**Anadarko Basin Oil and Gas Lease Antitrust Litigation**
Chris represent hundreds of Oklahoma and Kansas property owners who entered into oil and gas leases with two of the nation's largest independent oil and gas companies. Unbeknownst to the clients, those same companies had agreed to fix the prices they were offering on gas leases and allocate the market between them. Chris has been appointed co-lead counsel for the class. The parties recently entered into a class-wide settlement agreement for $7 million, which is pending final approval from the court.

**Plasma-Derivative Protein Therapies Antitrust**
Chris was part of the co-lead counsel group for direct purchaser plaintiffs alleging a conspiracy to reduce the supply and increase prices of IVIG and Albumin



— life-saving therapies derived from blood plasma. Following numerous depositions across the globe and the filing of plaintiffs' opening class certification motion and expert report, his team obtained settlements with all defendants totaling $128 million

**Cast Iron Soil Pipe & Fittings Antitrust Litigation**
As a key member of the co-lead counsel team, Chris represented a plumbing distributor and a putative class of direct purchaser plaintiffs against the two largest soil pipe and fittings manufacturers in the nation (McWane Inc. and Charlotte Pipe & Foundry) and the trade association they controlled (Cast Iron Soil Pipe Institute) in a lawsuit alleging that the defendants engaged in a nationwide price-fixing conspiracy. Following the completion of extensive fact discovery, he helped obtain a $30 million settlement from all defendants for the direct purchaser class, which the court approved in 2017.

**Ductile Iron Pipe Fittings Antitrust Litigation**
Chris played a leading role in representing a putative class of direct purchaser plaintiffs in a price-fixing case against the three largest manufacturers of ductile iron pipe fittings — McWane Inc., Sigma Corporation, and Star Pipe Products — and a monopolization case against McWane for excluding significant competition in the domestic ductile iron pipe fittings market. Settlements of greater than $17 million were approved in 2017 following the completion of fact and expert discovery and briefing on class certification.

**Dental Supplies Antitrust Litigation**
Chris was part of the leadership team representing a proposed class of dental practices and dental laboratories. The case alleges that the three largest dental supply and dental equipment distributors in the United States — fixed price margins on dental equipment, jointly pressured manufacturers to squeeze out competitors, and agreed not to "poach" each other's employees, in violation of federal antitrust law. In September 2018, the parties signed a settlement agreement resolving the case for $80 million; the settlement is currently awaiting court approval.