THE HONORABLE MARSHA J. PECHMAN

1

2

3

4

5

6

7 **UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
8 **AT SEATTLE**

9 FRASER CONSTRUCTION COMPANY, | CASE NO. 2:19-CV-451-MJP
INC.; SOUND RENOVATION LLC; |
10 KUHL'S CONTRACTING; PROCRAFT |
EXTERIORS INC.; and PK MORIN | **RESELLER INDIRECT**
12 ENTERPRISES INC. dba ROOF LIFE OF | **PURCHASER PLAINTIFFS'**
OREGON, individually and on behalf of | **CONSOLIDATED SECOND**
13 all others similarly situated, | **AMENDED CLASS ACTION**
| **COMPLAINT**
14 |
Plaintiffs, |
15 | **JURY DEMAND REQUESTED**
v. |
16 |
CEDAR SHAKE & SHINGLE BUREAU, |
17 a Washington nonprofit corporation; |
WALDUN FOREST PRODUCTS |
18 PARTNERSHIP, a British Columbia |
partnership; WALDUN FOREST |
19 PRODUCTS, LTD., a British Columbia |
corporation; WALDUN FOREST |
20 PRODUCTS SALES, LTD., a British |
Columbia corporation; ANBROOK |
21 INDUSTRIES LTD, a British Columbia |
corporation; and G&R CEDAR LTD., a |
22 British Columbia corporation, |
|
23 Defendants. |

24

25

26

27

28

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - i

LAW OFFICES OF
MᴄNᴀᴜʟ Eʙᴇʟ Nᴀᴡʀᴏᴛ & Hᴇʟɢʀᴇɴ ᴘʟʟᴄ
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

## TABLE OF CONTENTS

I.    NATURE OF THE ACTION ................................................................ 1

II.   JURISDICTION AND VENUE ........................................................... 5

III.  PARTIES ............................................................................................ 6

      A.   Plaintiffs ................................................................................... 6

      B.   Defendants ................................................................................ 7

IV.   NON-DEFENDANT CO-CONSPIRATORS AND OTHER NON-PARTIES ................. 15

V.    TRADE AND COMMERCE ............................................................. 28

VI.   FACTUAL ALLEGATIONS ............................................................. 30

      A.   Relevant Products .................................................................. 30

      B.   Industry Background ............................................................... 31

           1.   CSSB and the Certi-Label Trademark ......................... 31

           2.   The CSSB's Structure, Bylaws and Meetings .............. 37

           3.   The Domestic Certi-Label Cedar Shakes and Shingles Market ................ 45

      C.   The structure and characteristics of the Certi-Label cedar shakes and shingles
           market make the conspiracy economically plausible ............................. 47

           1.   The Certi-Label cedar shakes and shingles market is vertically integrated.
                ................................................................................ 47

           2.   Demand for Certi-Label cedar shakes and shingles is inelastic ............... 48

           3.   Certi-Label cedar shakes and shingles are commodity-like products ....... 48

           4.   There are no significant substitutes for cedar shakes and shingles .......... 49

           5.   The Certi-Label cedar shakes and shingles market is highly concentrated.
                ................................................................................ 51

           6.   The voting structure of the CSSB concentrates power in the hands of the
                largest manufacturers. .................................................. 51

           7.   Defendants had ample opportunity to conspire. ......................... 52

           8.   High entry barriers exist in the Certi-Label cedar shakes and shingles
                market. ...................................................................... 54

      D.   The performance observed in the Certi-Label cedar shakes and shingles industry
           makes the conspiracy economically plausible. .......................... 56

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - ii

LAW OFFICES OF
MᴄNᴀᴜʟ Eʙᴇʟ Nᴀᴡʀᴏᴛ & Hᴇʟɢʀᴇɴ ᴘʟʟᴄ
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1.      The prices of Certi-Label cedar shakes and shingles since at least 2011 cannot be explained by ordinary market forces. .................................... 56

2.      Cedar shakes and shingles inventories have significantly increased in recent years compared to production levels. ............................................ 60

E.      Traditional conspiracy evidence demonstrates the conspiracy's existence. ......... 61

VII.    CLASS ACTION ALLEGATIONS .................................................. 70

VIII.   ANTITRUST INJURY .................................................................. 76

IX.     FRAUDULENT CONCEALMENT AND TOLLING ................................... 77

X.      CLAIMS FOR RELIEF .............................................................. 78

A.      Claims Under Federal Law ...................................................... 78

1.      Violation of Section 1 of the Sherman Act ................................ 78

B.      State Law Antitrust Claims ..................................................... 80

1.      Violation of Arizona's Uniform State Antitrust Act (Arizona Revised Statutes §§ 44-1401, *et seq.*) on behalf of the Arizona Class .................. 80

2.      Violation of California's Cartwright Act (Cal. Bus. & Prof. Code § 1600, *et seq.*) on behalf of the California Class ................................................. 81

3.      Violation of the Colorado Revised Statutes §§ 6-4-101, *et seq.* on behalf of the Colorado Class. .................................................................... 83

4.      Violation of the District of Columbia Antitrust Act (D.C. Code § 28-4501, *et seq.*) on behalf of the District of Columbia Class ................................ 84

5.      Violation of the Illinois Antitrust Act (740 §§ ILCS 10/1, *et seq.*) on behalf of the Illinois Class .................................................................... 85

6.      Violation of Iowa Competition Law (Iowa Code §§ 553.1, *et seq.*) on behalf of the Iowa Class ................................................................... 86

7.      Violation of the Kansas Restraint of Trade Act (Kan. Stat. Ann. §§ 50-112, *et seq.*) on behalf of the Kansas Class ...................................................... 87

8.      Violation of Maine's Antitrust Statute (Me. Rev. Stat. Ann. Tit. 10, § 1101, *et seq.*) on behalf of the Maine Class ..................................................... 88

9.      Violation of the Michigan Antitrust Reform Act (Mich. Comp. Laws §§ 445.771, *et seq.*) on behalf of the Michigan Class ................................... 89

10.     Violation of Minnesota Antitrust Law (Minn. Stat. §§ 325D.49, *et seq.*) on behalf of the Minnesota Class ................................................ 90

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - iii

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

11.    Violation of the Mississippi Antitrust Statute (Miss. Code Ann. § 74-21-1, *et seq.*) on behalf of the Mississippi Class ................................................. 91

12.    Violation of the Missouri Merchandising Practices Act (Mo. Stat. § 407.010, *et seq.*) on behalf of the Missouri Class ...................................... 92

13.    Violation of the Nebraska Junkin Act (Neb. Rev. Stat. § 59-801, *et seq.*) on behalf of the Nebraska Class ........................................................ 93

14.    Violations of the Nevada Unfair Trade Practices Act (Nev. Rev. Stat § 598A.030(1)) on behalf of the Nevada Class ............................................. 94

15.    Violation of New Hampshire's Antitrust Statute (N.H. Rev. Stat. Ann. §§ 356, *et seq.*) on behalf of the New Hampshire Class ............................... 95

16.    Violation of the New Mexico Antitrust Act (N.M. Stat. Ann. §§ 57-1-1, *et seq.*) on behalf of the New Mexico Class. ............................................. 96

17.    Violation of New York General Business Laws §§ 340, *et seq.*, on behalf of the New York Class ................................................................. 97

18.    Violation of the North Carolina General Statutes §§ 75-1, *et seq.*, on behalf of the North Carolina Class ............................................................. 98

19.    Violation of the North Dakota Uniform State Antitrust Act (N.D. Cent. Code §§ 51-08.1, *et seq.*) on behalf of the North Dakota Class .............. 98

20.    Violation of the Oregon Antitrust Law (Or. Rev. Stat §§ 646.705, *et seq.*) on behalf of the Oregon Class .................................................... 99

21.    Violation of the Rhode Island Antitrust Act (R.I. Gen. Laws §§ 6-36-1, *et seq.*) on behalf of the Rhode Island Class ........................................ 100

22.    Violation of the South Dakota Antitrust Statute (S.D. Codified Laws §§ 37-1, *et seq.*) on behalf of the South Dakota Class ................................ 101

23.    Violation of the Tennessee Trade Practices Act (Tenn. Code §§ 47-25-101, *et seq.*) on behalf of the Tennessee Class ............................... 102

24.    Violation of the Utah Antitrust Act (Utah Code Ann. § 76-10-3101, *et seq.*) on behalf of the Utah Class ................................................... 103

25.    Violation of the West Virginia Antitrust Act (W. Va. Code § 47-18-1, *et seq.*) on behalf of the West Virginia Class ........................................ 104

26.    Violation of the Wisconsin Antitrust Act (Wis. Stat. §§ 133.01, *et seq.*) on behalf of the Wisconsin Class .................................................... 105

C.    Violations of State Consumer Protection Law .................................................. 106

1.    Violation of Alaska Statute § 45.50.471, *et seq.*, on behalf of the Alaska Class ................................................................................. 106

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - iv

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

2.     Violation of the Colorado Consumer Protection Act (Colo. Rev. Stat. §§ 6-1-101, *et seq.*) on behalf of the Colorado Class......................................109

3.     Violation of California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*) ("UCL") on behalf of the California Class...............107

4.     Violation of Delaware's Consumer Fraud Act (6 Del. Code §§ 2511, *et seq.*) on behalf of the Delaware Class....................................................109

5.     Violation of the District of Columbia Consumer Protection Procedures Act (D.C. Code § 28-3901, *et seq.*) on behalf of the District of Columbia Class ......................................................................................................111

6.     Violation of the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. § 501.201(2), *et seq.*) on behalf of the Florida Class......................112

7.     Violation of the Hawaii Revised Statutes Annotated §§ 480-1, *et seq.*, on behalf of the Hawaii Class ........................................................................114

8.     Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Ill. Comp. Stat. Ann. 815 Ill. Comp. Stat. Ann. 505/10a, *et seq.*) on behalf of the Illinois Class ........................................................................114

9.     Violation of the Massachusetts Consumer Protection Act (Mass. Gen. Laws Ch. 93A § 1, *et seq.*) on behalf of the Massachusetts Class...........115

10.    Violation of the Michigan Consumer Protection Act (Mich. Comp. Laws Ann. §§ 445.901, *et seq.*) on behalf of the Michigan Class....................116

11.    Violation of the Minnesota Consumer Fraud Act (Minn. Stat. § 235F.68, *et seq.*) on behalf of the Minnesota Class ....................................................117

12.    Violation of the Montana Unfair Trade Practices and Consumer Protection Act of 1970 (Mont. Code §§ 30-14-103, *et seq.*) on behalf of the Montana Class..........................................................................................................119

13.    Violation of the Nebraska Consumer Protection Act (Neb. Rev. Stat. § 59-1602) on behalf of the Nebraska Class ....................................................119

14.    Violation of the Nevada Deceptive Trade Practices Act (Nev. Rev. Stat § 598.0903, *et seq.*) on behalf of the Nevada Class...................................120

15.    Violation of the New Hampshire Consumer Protection Act (N.H. Rev. Stat. Ann. tit. XXXI, § 358-A, *et seq.*) on behalf of the New Hampshire Class..........................................................................................................121

16.    Violation of the New Mexico Unfair Practices Act (N.M. Stat. Ann. §§ 57-12-3, *et seq.*) on behalf of the New Mexico Class ..................................122

17.    Violation of the North Carolina Unfair Trade and Business Practices Act (N.C. Gen. Stat. § 75-1.1, *et seq.*) on behalf of the North Carolina Class ......................................................................................................123

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - v

18. Violation of the North Dakota Unfair Trade Practices Law (N.D. Cent. Code § 51-10-01, *et seq.*) on behalf of the North Dakota Class ............ 124

19. Violation of the Oregon Unlawful Trade Practices Act (Or. Rev. Stat. § 646.608, *et seq.*) on behalf of the Oregon Class ................................... 125

20. Violation of the Rhode Island Deceptive Trade Practices Act (R.I. Gen. Laws § 6-13.1-1, *et seq.*) on behalf of the Rhode Island Class .............. 126

21. Violation of South Carolina's Unfair Trade Practices Act (S.C. Code Ann. §§ 39-5-10) on behalf of the South Carolina Class................................ 128

22. Violation of South Dakota Deceptive Trade Practices and Consumer Protection Law (S.D. Codified Laws § 37-24-6) on behalf of the South Dakota Class ................................................................................ 129

23. Violation of the Utah Consumer Sales Practices Act (Utah Code Ann. §§ 13-11-1, *et seq.*) on behalf of the Utah Class .......................................... 130

24. Violation of the Utah Unfair Practices Act (Utah Code Ann. §§ 13-5-1, *et seq.*) on behalf of the Utah Class ........................................................... 131

25. Violation of Vermont Stat. Ann. 9 § 2453, *et seq.* on behalf of the Vermont Class.............................................................................................. 132

26. Violation of the Virginia Consumer Protection Act of 1997 Va. Code § 59.1-196, *et seq.* on behalf of the Virginia Class .................................... 132

D. Unjust Enrichment ......................................................................... 134

XII. JURY TRIAL DEMANDED ........................................................................ 136

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - vi

LAW OFFICES OF
McNaul Ebel Nawrot & Helgren pllc
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

Plaintiffs Sound Renovation LLC, Fraser Construction Company, Inc., Kuhl's Contracting, ProCraft Exteriors Inc., and PK Morin Enterprises Inc. dba Roof Life of Oregon (collectively, "Plaintiffs") bring this action on behalf of themselves and on behalf of numerous State damages classes (defined below) and a nationwide injunctive relief class (collectively, the "Classes") consisting of all individuals and entities in the United States that indirectly purchased Certi-Label trademark cedar shakes and shingles for resale that were manufactured by a Manufacturer Defendant or co-conspirator named in this complaint from at least as early as January 1, 2011 through the present ("Class Period").

## I.    NATURE OF THE ACTION

1.    This is an antitrust conspiracy case involving cedar shakes and shingles (or "CSS") bearing the Certi-Label trademark. Cedar shakes are rustic-looking roof shingles split by hand. They have a relatively rough appearance and are almost always used for roofing. Cedar shingles, on the other hand, are uniformly sawn by machine for a consistent look and thickness. They are used for both sidewalls and roofing applications.

2.    Three Defendants— Defendant Anbrook Industries Ltd. ("Anbrook"), Defendant G&R Cedar Ltd. ("G&R"), and Defendants Waldun Forest Products Partnership, Waldun Forest Products Ltd., and Waldun Forest Product Sales, Ltd. (collectively, the "Waldun Defendants" or "Waldun")[1]—as well as other non-defendant co-conspirator manufacturers produce Certi-Label cedar shakes and shingles and sell them to direct purchasers, which predominantly if not exclusively consist of wholesalers. Those direct purchasers then sell these Certi-Label cedar shakes and shingles to indirect purchasers who, in turn, resell them to other entities like contractors and end users. Plaintiffs are indirect purchasers who resell Certi-Label cedar shakes and shingles to other entities and individuals further down the distribution chain.

3.    The remaining Defendant, the Cedar Shake & Shingle Bureau ("CSSB" and, collectively with Manufacturer Defendants, "Defendants"), is the only trade association serving

---

[1] Anbrook, G&R and the Waldun Defendants are referred to collectively herein as the "Manufacturer Defendants."

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 1

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

the cedar shake and shingle industry in North America. The CSSB controls the "Certi-Label" trademark placed on cedar shakes and shingles, including the Certigrade, Certi-Sawn, and Certi-Split trademark labels. CSSB Certi-Label products account for about 95% of the high-end cedar shake and shingle products sold in the United States. Each of the Manufacturer Defendants, as well as several other co-conspirator manufacturers, sit on the CSSB's Board of Directors. During the Class Period, Manufacturer Defendants and their co-conspirator manufacturers regularly attended in-person meetings held by the CSSB.

4.      This action arises out of a conspiracy orchestrated by Defendants to fix, increase, maintain, or stabilize the price of Certi-Label cedar shakes and shingles and reduce price competition among Certi-Label cedar shake and shingle manufacturers in violation of federal antitrust law as well as the antitrust, consumer protection, and unjust enrichment laws of numerous states. Defendants' conspiracy began at least as early as January 1, 2011 and continues through today.

5.      Although Plaintiffs have not yet had the opportunity to obtain any discovery from Defendants, Plaintiffs already can allege numerous highly-detailed facts that demonstrate the existence, let alone plausibility, of the alleged conspiracy.

6.      On numerous occasions throughout the Class Period, senior high-ranking personnel employed by Manufacturer Defendants, including Waldun's Curtis Walker, Anbrook's Brooke Meeker, and G&R Cedar's Stuart Dziedzic, expressly discussed and agreed on pricing levels to charge purchasers, including in person and over the telephone.

7.      For example, in late 2018, Waldun's Mr. Walker paid a visit to co-conspirator Watkins Sawmills Ltd. ("Watkins"). During this meeting, Mr. Walker told Kris Watkins, Chief of Operations of Watkins, that "Waldun Forest Products never dropped their pricing" and that all CSSB-affiliated manufacturers should keep their prices at consistent levels. When Mr. Watkins noted that an emerging competitor, S&W Forest Products Ltd. ("S&W"), discounted its prices during months of lowered demand, Mr. Walker responded, "Yeah, well we just need to get rid of

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 2

LAW OFFICES OF
McNaul Ebel Nawrot & Helgren pllc
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1    that guy."

2        8.    In addition, Manufacturer Defendants have concentrated their power in the

3    CSSB, partly due to the consolidation of the shake and shingle industry, and partly due to the

4    voting structure of the CSSB, which weighs votes based on each manufacturer member's annual

5    cedar shake and shingle production.

6        9.    Through this consolidation of power over the CSSB, Manufacturer Defendants

7    have used their weighted voting power to terminate the membership of CSSB members who do

8    not follow the price leadership of the Manufacturer Defendants. The Manufacturer Defendants

9    disallowed low-cost competitors from obtaining Certi-Label approval, regardless of the quality

10   of their work. These low-cost competitors' inability to use the Certi-Label trademark has

12   prevented them from pricing their products at a level that would permit them to stay in business.

13   Accordingly, low-cost competitors effectively have been eliminated from the Certi-Label cedar

14   shake and shingles market.

15       10.    One such recently terminated manufacturer is S&W. Defendants conspired to and

16   did terminate the CSSB membership of S&W in late 2018 based on a pretextual reason that was

17   both false and not applied to other manufacturers that did not undercut Manufacturer Defendants

18   on price. S&W recently filed a lawsuit in this Court challenging the termination of its CSSB

19   membership, and it has temporarily had its membership reinstated by the Court pending a final

20   decision on the merits.

21       11.    In addition to helping the Manufacturer Defendants and their co-conspirators

22   remove low-cost competitors from the Certi-Label cedar shake and shingles market, the CSSB,

23   under the control of the Manufacturer Defendants, also has enacted policies aimed at further

24   eliminating competition among and between the CSSB member manufacturers. For example, the

25   CSSB bylaws contain an "All or Nothing" rule, which requires all CSSB members to produce

26   and sell **only** Certi-Label cedar shakes and shingles. This rule was intended to eliminate, and has

27   had the actual impact of eliminating, price competition among CSSB manufacturers. The "All or

28

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 3

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

Nothing" rule therefore helps to ensure that Certi-Label cedar shakes and shingles continue to be sold at higher, supra-competitive prices. This rule has no competitive purpose.

12.     Due to the Manufacturer Defendants' success in consolidating their power in the CSSB and eliminating price discounters from the trade association, the other member manufacturers of the CSSB, who normally would compete with the Manufacturer Defendants on the basis of price, agreed to join the price-fixing conspiracy. These non-party conspirators joined the conspiracy and continued to facilitate the conspiracy because of fears they would face the same fate as other CSSB price discounters before them: expulsion from the association and the significant loss of revenue that would entail.

13.     Plaintiffs do not rely only on direct evidence of collusive conduct. The structure and characteristics of the cedar shakes and shingles market, the market's performance (*i.e.*, pricing trends), and Defendants' exchange of highly sensitive pricing information all demonstrate the plausibility of the alleged conspiracy. Moreover, the United States Department of Justice ("DOJ") has been investigating the CSS industry for possible violations of the antitrust laws.

14.     The following industry characteristics, which are seen in many industries victimized by price-fixing, render the existence of the alleged conspiracy plausible: the industry is highly vertically integrated; product demand is inelastic; the products are commodity-like; there are no good substitute products; the market is highly concentrated; barriers to enter the market are high; and there is ample opportunity to conspire.

15.     Plaintiffs also have conducted a thorough economic analysis of pricing in the industry with the assistance of an experienced economics consulting firm. This analysis, which is discussed and illustrated in several charts below, demonstrates that the price of Certi-Label cedar shake and shingles sold in the United States has increased substantially since January 1, 2011 and that these price increases cannot be explained by normal market forces such as raw material costs or supply and demand.

16.     Defendants' anticompetitive actions had the intended purpose and effect of

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 4

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

artificially fixing, raising, maintaining, and stabilizing the price of cedar shakes and shingles to Plaintiffs and other members of the Classes in the United States.

17.     As a result of Defendants' unlawful conduct, Plaintiffs and other members of the Classes paid artificially inflated prices for Certi-Label cedar shakes and shingles. These prices exceeded the amount they would have paid for Certi-Label cedar shakes and shingles if the price had been set by a competitive, collusion-free market. Accordingly, Plaintiffs and other members of the Classes suffered an antitrust injury as a result of Defendants' conduct.

## II.     JURISDICTION AND VENUE

18.     Plaintiffs bring this action under Section 16 of the Clayton Act (15 U.S.C. § 26) to secure injunctive relief against Defendants for violating Section 1 of the Sherman Act (15 U.S.C. § 1). This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1337, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

19.     Plaintiffs assert claims for actual and exemplary damages and injunctive relief pursuant to state antitrust, unfair competition, and consumer protection laws, and seek to obtain restitution, recover damages, and secure other relief against Defendants for violation of those state laws. Plaintiffs and the other members of the Classes also seek attorney's fees, costs, and other expenses under federal and state laws. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1332(d) and 1367 because: (a) this is a class action where the matter or controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and in which some members of the proposed Classes are citizens of a state different from some Defendants; and (b) Plaintiffs' state law claims form part of the same case or controversy as their federal claims under Article III of the United States Constitution.

20.     Venue is appropriate in this District under 28 U.S.C. § 1391(b), (c) and (d) because one or more Defendants resided or transacted business in this District and are licensed to do business or are doing business in this District, and because a substantial portion of the affected interstate commerce described herein was carried out in this District.

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 5

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

21. This Court has personal jurisdiction over each Defendant because each Defendant: (a) transacted business throughout the United States, including in this District; (b) manufactured, sold, shipped, or delivered substantial quantities of cedar shakes and shingles throughout the United States, including this District; (c) had substantial contacts with the United States, including this District; or (d) engaged in an antitrust conspiracy that was directed at and had a direct, foreseeable, and intended effect of causing injury to the business or property of persons residing in, located in, or doing business throughout the United States, including this District.

22. The activities of the Defendants and all co-conspirators, as described herein, were within the flow of, and were intended to and did have direct, substantial, and reasonably foreseeable effects on the foreign and interstate commerce of the United States.

23. No other forum would be more convenient for the parties and witnesses to litigate this case.

## III.    PARTIES

### A.    Plaintiffs

24. Plaintiff Sound Renovation LLC ("Sound Renovation") is a Connecticut limited liability company with a principal place of business in Norwalk, Connecticut.  The company also has had an additional business address in Westchester County, New York and been licensed to perform contracting work in New York during the class period as well. Sound Renovation purchased cedar shakes and shingles bearing the CSSB Certi-Label trademark indirectly from one or more of the Manufacturer Defendants or co-conspirator manufacturers for resale during the Class Period.

25. Plaintiff Fraser Construction Company, Inc. ("Fraser") is a Massachusetts corporation with a principal place of business in Mashpee, Massachusetts. Fraser purchased cedar shakes and shingles bearing the CSSB Certi-Label trademark indirectly from one or more of the Manufacturer Defendants or co-conspirator manufacturers for resale during the Class

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 6

Period.

26.     Plaintiff Kuhl's Contracting ("Kuhl's") is a Minnesota corporation with a principal place of business in Hopkins, Minnesota. Kuhl's purchased cedar shakes and shingles bearing the CSSB Certi-Label trademark indirectly from one or more of the Manufacturer Defendants or co-conspirator manufacturers for resale during the Class Period.

27.     Plaintiff ProCraft Exteriors Inc. ("ProCraft") is a Missouri corporation with a principal place of business in Chesterfield, Missouri. ProCraft purchased cedar shakes and shingles bearing the CSSB Certi-Label trademark indirectly from one or more of the Manufacturer Defendants or co-conspirator manufacturers for resale during the Class Period.

28.     Plaintiff PK Morin Enterprises Inc. dba Roof Life of Oregon ("Roof Life") is an Oregon corporation with a principal place of business in Tigard, Oregon. Roof Life purchased cedar shakes and shingles bearing the CSSB Certi-Label trademark indirectly from one or more of the Manufacturer Defendants or co-conspirator manufacturers for resale during the Class Period.

**B.     Defendants**

29.     Defendant Cedar Shake & Shingle Bureau is a Washington nonprofit corporation that is the only trade association serving the cedar shake and shingle industry in the United States and Canada. The CSSB is headquartered in Mission, British Columbia, and maintains an office in Sumas, Washington.

30.     Defendant Anbrook Industries Ltd. is a British Columbia corporation with its principal place of business in Pitt Meadows, British Columbia. Anbrook is one of the largest cedar shake and shingle manufacturers in the world. It is a member of the CSSB, and its President, Brooke Meeker, sits on the CSSB's Board of Directors, acting as its Chairman. Anbrook owns and operates a cedar shake and shingle manufacturing facility in Pitt Meadows, British Columbia. Anbrook manufactures Certigrade Shingles, Certi-Sawn Shakes, and Certi-Split Shakes. During the Class Period, Anbrook or its predecessors, wholly-owned or controlled

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 7

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

subsidiaries, or affiliates sold Certi-Label cedar shakes and shingles in interstate commerce, directly or through its wholly-owned or controlled affiliates, to purchasers in the United States.

31.     Defendants Waldun Forest Products Partnership, Waldun Forest Products, Ltd., and Waldun Forest Product Sales, Ltd. are collectively referred to herein as the "Waldun Defendants." As described in greater detail below, the Waldun Defendants are controlled by two individuals – Kirk Nagy and Curtis Walker – and the Waldun Defendants have repeatedly held themselves out as a single entity: the Waldun Group. As the Waldun Defendants' corporate disclosures state: "The name 'Waldun Group' is not and has never been a legal entity. The name 'Waldun Group' is sometimes used to refer to Waldun entities including Waldun Forest Products Partnership."

32.     Defendant Waldun Forest Products Partnership is a British Columbia partnership with its principal place of business in Maple Ridge, British Columbia.

33.     According to Waldun's court-ordered corporate disclosures, "Waldun Forest Products Partnership" has five general partners – (1) Three W Holdings Ltd, (2) Clarksher Holdings Ltd, (3) Nagy Family Holdings Ltd., (4) Cormel Holdings, Ltd., and (5) Curtis Walker Milling Ltd. – and is involved in the "[a]cquisition of raw materials; manufacture of [CSS]; and sale of [CSS] to non-U.S. customers." Waldun's corporate disclosures do not provide any additional information about the individuals or entities controlling the general partners.

34.     The general partners identified in Waldun's corporate disclosures are not among the companies identified in the British Columbia corporate registry documents for Defendant Waldun Forest Products Partnership. Based on British Columbia corporate registry documents, Defendant Waldun Forest Products Partnership is or was comprised of several companies: (1) Waldun Forest Holdings, Ltd.; (2) Twin River Cedar Products, Ltd.; (3) Twin Rivers Cedar Products (1994), Ltd.; (4) Crescent Island Lumber Holdings Ltd.; (5) Crescent Island Lumber Ltd.; (6) Stave Lake Cedar Mills, Inc.; (7) Stave Lake Cedar Mills (1992) Inc.; (8) Clark 5 Investments Ltd.; (9) Heros Investments Ltd.; (10) KRJN Holdings Ltd.; and (11) I Say So Co

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 8

Investments Ltd.

35.     On July 31, 2019, Plaintiffs asked Waldun to provide information on each of these entities as part of Waldun's corporate disclosures, including (a) the names of all current officers and directors, (b) all prior or former name(s) of the entities, (c) the names and contact information for all current owners, (d) the status of these entities, (e) their relationship to one another, and (f) the business of each entity. Waldun declined do so, and its corporate disclosures (served on August 9, 2019) provide no information on any of these entities, but for Stave Lake Cedar Mills Inc.

36.     All of the member companies identified in the British Columbia corporate registry documents as comprising Defendant Waldun Forest Products Partnership are or were British Columbia corporations, and the majority are or were owned and controlled by the same two individuals: Curtis Walker and Kirk Nagy. In addition, CSSB's Clay Walker (Waldun's Curtis Walker's brother) was a Director and likely part owner of I Say So Co. Investments Ltd.; that is, CSSB's Clay Walker was instrumental in the formation of Waldun Forest Products Partnership and may still have a financial stake in Waldun Forest Products Partnership.

37.     Defendant Waldun Forest Products Partnership owns, operates, and/or controls a CSS manufacturing facility in Maple Ridge, British Columbia that manufactures Certi-Label™ CSS. Defendant Waldun Forest Products Partnership also maintains a "**US Address**: P.O. Box 96, Sumas, WA 98295" as listed on its website (emphases in original). Likewise, Defendant Waldun Forest Products Partnership's Limited Warranty covers "Waldun Brand cedar shakes and/or shingles" and the Warranty Registration must be sent to either "Waldun Forest Products Partnership, P.O. Box 96, Sumas, WA 98295 or 9393 287th Street, Maple Ridge, BC, V2W 1L1." In a Certi-Scene newsletter in 2016, Waldun Forest Products Partnership was profiled, and Curtis Walker wrote that "[i]n 2012, [the partnership]'s customized products were used to restore Philadelphia's Independence Hall, one of the most significant historical sites in North America."

38.     Defendant Waldun Forest Products Partnership, under the common control of

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 9

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

Waldun's Nagy and Walker, shared in the intent of the other Waldun Defendants to use the CSSB to fix, raise, or maintain prices of Certi-Label CSS sold into the United States.

39.     Defendant Waldun Forest Products, Ltd. is a British Columbia corporation with its principal place of business in Maple Ridge, British Columbia.

40.     Defendant Waldun Forest Products Ltd. was formed in or around 1974. On or around December 1, 2014, Crescent Island Lumber Ltd., merged into Defendant Waldun Forest Products Ltd., with the surviving name of Crescent Island Lumber Ltd. (one of the companies identified in the British Columbia corporate registry documents as having an interest in Defendant Waldun Forest Products Partnership). On or around December 25, 2015, the amalgamated Crescent Island Lumber Ltd. changed its name to Waldun Forest Products, Ltd.

41.     Kirk Nagy is also the President of Waldun Forest Products, Ltd., and he, along with Curtis Walker, are the directors of Waldun Forest Products, Ltd. Waldun's corporate disclosures state that Waldun Forest Products, Ltd. "is an asset holding company that does not manufacture, distribute, or sell" CSS.

42.     Waldun Forest Products, Ltd. is the sole shareholder of Defendant Waldun Forest Product Sales, Ltd.

43.     Defendant Waldun Forest Products, Ltd., under the common control of Waldun's Nagy and Walker, shared in the intent of the other Waldun Defendants to use the CSSB to fix, raise, or maintain prices of Certi-Label CSS sold into the United States.

44.     Defendant Waldun Forest Product Sales Ltd. us a British Columbia corporation with its principal place of business in Surrey, British Columbia.

45.     Defendant Waldun Forest Product Sales Ltd. was formed on or around March 31, 2003.

46.     According to Waldun's court-ordered corporate disclosures, Defendant Waldun Forest Product Sales, Ltd. is responsible for the "[a]cquisition of [CSS]" and the "sale of [CSS] to U.S. customers." These corporate disclosures identify Kirk Nagy and Curtis Walker as the

RESELLER INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED SECOND AMENDED CLASS ACTION COMPLAINT (NO. 2:19-CV-451-MJP) - 10

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

Directors, and Kirk Nagy as the President of Waldun Forest Product Sales, Ltd.

47.     Defendant Waldun Forest Products Sales, Ltd., under the common control of Waldun's Nagy and Walker, shared in the intent of the other Waldun Defendants to use the CSSB to fix, raise, or maintain prices of Certi-Label CSS sold into the United States.

48.     In addition to their common ownership and control (under Walker and Nagy), the Waldun Defendants have routinely held themselves out to the public as a single entity: the Waldun Group.

49.     The Waldun Defendants' website claims as follows: "The Group has integrated the various aspects of cedar manufacturing, producing cedar lumber, shakes, and value-added rebutted and rejointed sidewall shingles. In fact, the Waldun Group is the largest company in the world manufacturing such a selection of cedar products." Elsewhere, its website touts that "the Waldun Group has worked hard to understand customer needs . . . Today, we are one of the select few North American companies capable of meeting the ever-changing demands of our customers."

50.     The Waldun Defendants employ a Waldun Group logo:



51.     There is also a single LinkedIn page for The Waldun Group, which boasts its connection to the CSSB:

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 11

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816





52.     Defendant CSSB has also, at times, treated the Waldun Defendants as a single entity: the Waldun Group. For example, CSSB's website listed The Waldun Group as a member in 2014, and Kirk Nagy was a CSSB director that year. In all other years of the Class Period (and through today), Defendant WFPP has been listed as a CSSB member, and Waldun's Walker has been a CSSB director.

53.     Additionally, another Waldun Group entity, Stave Lake Cedar Mills, Inc. ("Stave Lake"), claims to be a "proud member[]" of the CSSB. Stave Lake also states that it was acquired by The Waldun Group and is "part of the Waldun Group"—despite the fact that the B.C. Corporate Registry states that it was purchased by Defendant Waldun Forest Products Partnership. Stave Lake's website also notes, among other things, that "The Waldun Group is your source for quality certified responsible forest products."

54.     According to Waldun's corporate disclosures, Stave Lake's shareholders are

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 12

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

Defendant Waldun Forest Products Partnership, Estate of Alec Clark, Marianne Nagy, Heather Holmes, Curtis Walker (Trustee), Colin Walker (Trustee), and Wynn Walker Alter Ego Trust. These corporate disclosures also identify the Directors of Stave Lake as Kirk Nagy and Curtis Walker, and identify the President as Kirk Nagy.

55.     Defendant Waldun Forest Products Partnership, through Waldun's Nagy and Walker, control Defendant Stave Lake and hold out Stave Lake as part of Defendant Waldun Forest Products Partnership and/or the Waldun Group. Stave Lake's website advertises an address at "P.O. Box 96, Sumas, WA" (similar to Defendant WFPP)—the same exact P.O. Box as Waldun Forest Products Partnership—and directs all sales questions to the Waldun Defendants at Waldun's sales@waldun.com email and its toll-free "1-800-4-WALDUN" number. Additionally, in a Certi-Scene newsletter in 2016, the Waldun Forest Products Partnership was profiled, and Curtis Walker wrote that Stave Lake is "[o]ur sidewall division" and a "part of The Waldun Group."

56.     Through the common ownership and control of the Waldun Defendants, as well as their affiliated entities and a unity of interests and purpose between these entities, the Waldun Defendants used their influence on and with the CSSB to facilitate the price-fixing conspiracy and to increase the prices by which its affiliated company, Defendant Waldun Forest Product Sales, Ltd. and/or the other Waldun Group entities, predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label CSS in interstate commerce to purchasers in the United States.

57.     Defendant G&R Cedar Ltd. is a British Columbia corporation headquartered in Matsqui, British Columbia. G&R is a self-described industry leader in the cedar shake and shingle industry. It is a member of the CSSB, and its Sales Manager, Stuart Dziedzic, sits on CSSB's Board of Directors. G&R owns and operates a cedar shake and shingle manufacturing facility in Matsqui, British Columbia and an additional sidewall shingle manufacturing facility in Chilliwack, British Columbia. G&R manufactures Certigrade Shingles, Certi-Sawn Shakes,

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 13

LAW OFFICES OF
McNaul Ebel Nawrot & Helgren pllc
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

and Certi-Split Shakes, as well as Custom Dimension products, Sidewall, and Specialty Cuts. During the Class Period, G&R or its predecessors, wholly-owned or controlled subsidiaries, or affiliates sold Certi-Label cedar shakes and shingles in interstate commerce, directly or through its wholly-owned or controlled affiliates, to purchasers in the United States.

58.     "Defendant" or "Defendants" as used herein includes, in addition to those named specifically above, all of the named Defendants' predecessors, including cedar shake and shingle companies that merged with or were acquired by the named Defendants and each named Defendant's wholly-owned or controlled subsidiaries or affiliates that sold Certi-Label cedar shakes and shingles in interstate commerce, directly or through their wholly-owned or controlled affiliates, to purchasers in the United States during the Class Period.

59.     To the extent that subsidiaries and divisions within each Defendant's corporate family sold or distributed Certi-Label cedar shakes and shingles to purchasers, these subsidiaries played a material role in the conspiracy alleged in this Complaint because Defendants wished to ensure that the prices paid for such cedar shakes and shingles would not undercut the artificially raised and inflated pricing that was the aim and intended result of Defendants' coordinated and collusive behavior as alleged herein. Thus, all such entities within the corporate family were active, knowing participants in the conspiracy alleged herein, and their conduct in selling, pricing, distributing and collecting monies from Plaintiffs and the members of the Classes for Certi-Label cedar shakes and shingles was known to and approved by their respective corporate parent named as a Defendant in this Complaint.

60.     Each of the Defendants named herein acted as the agent or joint-venturer of or for the other Defendants with respect to the acts, violations, and common course of conduct alleged herein.

61.     Defendants are also liable for acts done in furtherance of the alleged conspiracy by companies they acquired through mergers and acquisitions.

62.     Whenever reference is made to any act of any corporation, the allegation means

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 14

LAW OFFICES OF
MᶜNᴀᵁʟ Eʙᴇʟ Nᴀᴡʀᴏᴛ & Hᴇʟɢʀᴇɴ ᴘʟʟᴄ
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

that the corporation engaged in the act by or through its officers, directors, agents, employees, or representatives while they were actively engaged in the management, direction, control, or transaction of the corporation's business or affairs.

## IV. NON-DEFENDANT CO-CONSPIRATORS AND OTHER NON-PARTIES

63.     Various other persons, firms, and corporations not currently named as defendants have participated as co-conspirators of Defendants and have performed acts and made statements in furtherance of the conspiracy (collectively, the "co-conspirators"). Defendants are jointly and severally liable for the acts of the co-conspirators whether or not named as defendants in this Complaint. A list of the known non-defendant co-conspirators follows.

64.     A&R Cedar, Inc. ("A&R") is a Washington corporation headquartered in Hoquiam, Washington. It is a member of the CSSB, and a member of its senior management team, Cecilia Acuna, sits on the CSSB Board of Directors. A&R manufactures Certigrade Shingles and Certi-Sawn Shakes, as well as Certi-Ridge, Custom Dimension products, and Sidewall. During the Class Period, A&R or its predecessors, wholly-owned or controlled subsidiaries, or affiliates sold Certi-Label cedar shakes and shingles in interstate commerce, directly or through its wholly-owned or controlled affiliates, to purchasers in the United States.

65.     Best Shingle Sales Inc. ("Best") is a Washington corporation headquartered in Hoquiam, Washington. It is a member of the CSSB, and its owner, Terry Kost, sits on CSSB's Board of Directors. Best manufactures Certigrade Shingles and Certi-Sawn Shakes, as well as Sidewall.   During the Class Period, Best or its predecessors, wholly-owned or controlled subsidiaries, or affiliates sold Certi-Label cedar shakes and shingles in interstate commerce, directly or through its wholly-owned or controlled affiliates, to purchasers in the United States.

66.     Premium Cedar Products Ltd. ("Premium") is a British Columbia corporation headquartered in Mission, British Columbia. It is a member of the CSSB, and one of its senior managers, Ed Watkins, sits on CSSB's Board of Directors and served as its Past Chairman. Premium manufactures Certigrade Shingles, Certi-Ridge, Certi-Sawn Shakes, and Certi-Split

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 15

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

Shakes, as well as Custom Dimension products and Specialty Cuts. During the Class Period, Premium or its predecessors, wholly-owned or controlled subsidiaries, or affiliates sold Certi-Label cedar shakes and shingles in interstate commerce, directly or through its wholly-owned or controlled affiliates, to purchasers in the United States.

67.     Watkins Sawmills Ltd. is a British Columbia corporation headquartered in Mission, British Columbia. It has common ownership and management with Premium, and even uses the same main telephone number. It is a member of the CSSB, and its President, Ed Watkins, sits on CSSB's Board of Directors and served as its Past Chairman. Watkins manufactures Certigrade Shingles, Certi-Sawn Shakes, and Certi-Split Shakes, as well as Certi-Ridge, Custom Dimension products, Sidewall, and Specialty Cuts. During the Class Period, Watkins or its predecessors, wholly-owned or controlled subsidiaries, or affiliates sold Certi-Label cedar shakes and shingles in interstate commerce, directly or through its wholly-owned or controlled affiliates, to purchasers in the United States.

68.     #208 Shake & Shingle/Griffiths Inc. ("#208") is a Washington corporation headquartered in Moclips, Washington. It is a member of the CSSB and manufactures Certi-Label cedar shakes and shingles. During the Class Period, #208 and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

69.     A.B. Cedar Shingle ("A.B. Cedar") is a British Columbia corporation headquartered in Sicamous, British Columbia. It is a member of the CSSB and manufactures Certi-Label cedar shakes and shingles. During the Class Period, A.B. Cedar and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

70.     A.C.S. Cedar, Inc. ("A.C.S.") is a Washington corporation headquartered in Aberdeen, Washington. It is a member of the CSSB and manufactures Certi-Label cedar shakes and shingles. During the Class Period, A.C.S. and/or its predecessors, agents, wholly owned or

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 16

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

controlled subsidiaries, or affiliates sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

71.     Acuna Cedar Products, Inc. ("Acuna Cedar") is a Washington corporation headquartered in Sedro-Woolley, Washington. It is a member of the CSSB and manufactures Certi-Label cedar shakes and shingles. During the Class Period, Acuna Cedar and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

72.     Alfa Red Cedar Products, Inc. ("Alfa Red") is a Washington corporation headquartered in Hoquiam, Washington. It is a member of the CSSB and manufactures Certi-Label cedar shakes and shingles. During the Class Period, Alfa Red and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label cedar shakes and shingles in interstate commerce, directly or through its wholly-owned or controlled affiliates, to purchasers in the United States.

73.     American Cedar Sales, LLC ("American Cedar") is an Idaho corporation headquartered in Kamiah, Idaho. It is a member of the CSSB and manufactures Certi-Label cedar shakes and shingles. During the Class Period, American Cedar and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

74.     Anderson Shake and Shingle Mill, Inc. ("Anderson") is a Washington corporation headquartered in Cathlamet, Washington. It is a member of the CSSB and manufactures Certi-Label cedar shakes and shingles. During the Class Period, Anderson and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

75.     Campbell River Shake & Shingle Co. Ltd. ("Campbell River") is a British Columbia corporation headquartered in Campbell River, British Columbia. It is a member of the CSSB and manufactures Certi-Label cedar shakes and shingles. During the Class Period,

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 17

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

Campbell River and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

76.     Cape Scott Cedar Products Ltd. ("Cape Scott") is a British Columbia corporation headquartered in Port Hardy, British Columbia. It is a member of the CSSB and manufactures Certi-Label cedar shakes and shingles. During the Class Period, Cape Scott and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

77.     Clearbrook Shake & Shingle Ltd. ("Clearbrook") is a British Columbia corporation headquartered in Abbotsford, British Columbia. It is a member of the CSSB and manufactures Certi-Label cedar shakes and shingles. During the Class Period, Clearbrook and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

78.     Comox Valley Shakes (2019) Ltd. ("Comox") is a British Columbia corporation headquartered in Campbell River, British Columbia. It is a member of the CSSB and manufactures Certi-Label cedar shakes and shingles. During the Class Period, Comox and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

79.     Confederate Shake & Shingle Ltd. ("Confederate") is a British Columbia corporation headquartered in Duncan, British Columbia. It is a member of the CSSB and manufactures Certi-Label cedar shakes and shingles. During the Class Period, Confederate and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

80.     DLM Shake Co. ("DLM") is an Idaho business based in Saint Maries, Idaho. It is a member of the CSSB and manufactures Certi-Label cedar shakes and shingles. During the

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 18

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

Class Period, DLM and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

81.     Fabian Shingles LLC ("Fabian") is a Washington corporation headquartered in Amanda Park, Washington. It is a member of the CSSB and manufactures Certi-Label cedar shakes and shingles. During the Class Period, Fabian and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

82.     Goat Lake Forest Products (1985) Ltd. ("Goat Lake") is a British Columbia corporation headquartered in Powell River, British Columbia. It is a member of the CSSB and manufactures Certi-Label cedar shakes and shingles. During the Class Period, Goat Lake and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

83.     Golden Ears Shingle Ltd. ("Golden Ears") is a British Columbia corporation headquartered in Maple Ridge, British Columbia. It is a member of the CSSB and manufactures Certi-Label cedar shakes and shingles. During the Class Period, Golden Ears and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

84.     Imperial Cedar Products Ltd. ("Imperial Cedar") is a British Columbia corporation headquartered in Maple Ridge, British Columbia. It is a member of the CSSB and manufactures Certi-Label cedar shakes and shingles. During the Class Period, Imperial Cedar and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

85.     J.C. Shingles, Inc. ("J.C. Shingles") is a Washington corporation headquartered in Amanda Park, Washington. It is a member of the CSSB and manufactures Certi-Label cedar

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 19

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

shakes and shingles. During the Class Period, J.C. Shingles and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

86.     J.E.C. Cedar, Inc. ("J.E.C.") is a Washington corporation headquartered Amanda Park, Washington. It is a member of the CSSB and manufactures Certi-Label cedar shakes and shingles. During the Class Period, J.E.C. and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

87.     L & H Shake, Inc. ("L&H") is a Washington corporation headquartered Hoquiam, Washington. It is a member of the CSSB and manufactures Certi-Label cedar shakes and shingles. During the Class Period, L&H and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

88.     Long Cedar Inc. ("Long Cedar") is a Washington corporation headquartered in Forks, Washington. It is a member of the CSSB and manufactures Certi-Label cedar shakes and shingles. During the Class Period, Long Cedar and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

89.     Pacific Cedar ("Pacific Cedar") is a Canadian business based in Port Alberni, British Columbia. It is a member of the CSSB and manufactures Certi-Label cedar shakes and shingles. During the Class Period, Pacific Cedar and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

90.     Pacific Chalet Ltd. ("Pacific Chalet") is a British Columbia corporation headquartered in Powell River, British Columbia. It is a member of the CSSB and manufactures Certi-Label cedar shakes and shingles. During the Class Period, Pacific Chalet and/or its

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

91.     Pacific Coast Cedar Products, Ltd. ("Pacific Coast") is a British Columbia corporation headquartered in Maple Ridge, British Columbia. It is a member of the CSSB and manufactures Certi-Label cedar shakes and shingles. During the Class Period, Pacific Coast and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

92.     Pacific Shingle Inc. ("Pacific Shingle") is a Washington corporation headquartered in Forks, Washington. It is a member of the CSSB and manufactures Certi-Label cedar shakes and shingles. During the Class Period, Pacific Shingle and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

93.     Pleasant Lake Cedar ("Pleasant Lake") is a Washington business based in Beaver, Washington. It is a member of the CSSB and manufactures Certi-Label cedar shakes and shingles. During the Class Period, Pleasant Lake and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

94.     Port McNeill Shake & Shingle (2007) Ltd. ("Port McNeill") is a Canadian corporation headquartered in Port McNeill, British Columbia. It is a member of the CSSB and manufactures Certi-Label cedar shakes and shingles. During the Class Period, Port McNeill and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

95.     Premium Shingle LLC ("Premium Shingle") is a Washington corporation headquartered in Beaver, Washington. It is a member of the CSSB and manufactures Certi-Label

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 21

LAW OFFICES OF
McNaul Ebel Nawrot & Helgren pllc
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

cedar shakes and shingles. During the Class Period, Premium Shingle and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

96. Rainy Day Shake & Shingle, Inc. ("Rainy Day") is a Washington corporation headquartered in Forks, Washington. It is a member of the CSSB and manufactures Certi-Label cedar shakes and shingles. During the Class Period, Rainy Day and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

97. Riverside Shingle Products Ltd. ("Riverside") is a British Columbia corporation headquartered in Errington, British Columbia. It is a member of the CSSB and manufactures Certi-Label cedar shakes and shingles. During the Class Period, Riverside and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

98. Serpentine Cedar Ltd. ("Serpentine") is a British Columbia corporation headquartered in Langley City, British Columbia. It is a member of the CSSB and manufactures Certi-Label cedar shakes and shingles. During the Class Period, Serpentine and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

99. Silver-Coqu Cedar Products ("Silver-Coqu") is a Canadian business headquartered in Hope, British Columbia. It is a member of the CSSB and manufactures Certi-Label cedar shakes and shingles. During the Class Period, Silver Coqu and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

100. Star Cedar Sales, Inc. ("Star Cedar") is an Idaho corporation headquartered in Kamiah, Idaho. It is a member of the CSSB and manufactures Certi-Label cedar shakes and shingles. During the Class Period, Star Cedar and/or its predecessors, agents, wholly owned or

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 22

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

controlled subsidiaries, or affiliates sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

101.    Titan Cedar Products Ltd. ("Titan") is a British Columbia corporation headquartered in Port Coquitlam, British Columbia. It is a member of the CSSB and manufactures Certi-Label cedar shakes and shingles. During the Class Period, Titan and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

102.    Vancouver Island Shingle Ltd. ("Vancouver Shingle") is a British Columbia corporation headquartered in Mount Waddington, British Columbia. It is a member of the CSSB and manufactures Certi-Label cedar shakes and shingles. During the Class Period, Vancouver Shingle and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

103.    Zoffel Logging & Milling Inc. ("Zoffel") is a Washington corporation headquartered in Forks, Washington. It is a member of the CSSB and manufactures Certi-Label cedar shakes and shingles. During the Class Period, Zoffel and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

104.    Various other persons, firms, and corporations not currently named as defendants have participated as co-conspirators with Defendants and have performed acts and made statements in furtherance of the conspiracy. Defendants are jointly and severally liable for the acts of their co-conspirators whether or not named as defendants in this Complaint.

105.    S&W Forest Products Ltd. ("S&W") is a British Columbia corporation headquartered in Maple Ridge, British Columbia. During the Class Period, S&W and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates manufactured and sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 23

United States. As described in greater detail herein, in December 20, 2018, the CSSB Board of Directors terminated S&W's membership in the CSSB because S&W was selling Certi-Label cedar shakes and shingles at discounted prices.  After filing a complaint (*S&W Forest Prods., Ltd. v. CSSB, et al*., No. 2:19-cv-000202 (W.D. Wash.)) (the "S&W Lawsuit")—which included allegations of anticompetitive conduct by Defendants in this action—S&W successfully moved for a preliminary injunction temporarily reinstating it to the CSSB in April 2019 pending a final determination on the merits.

106.    Various other persons, firms, and corporations manufactured Certi-Label cedar shakes and shingles as members of the CSSB during the Class Period. A list of the known Former CSSB Members follows (collectively, the "Former CSSB Members"). As explained herein, a yet unknown number of these Former CSSB Members—as with S&W—were expelled from the Bureau for discounting Certi-Label cedar shakes and shingles.

107.    A.K. Cedar Products Ltd. ("A.K. Cedar") is a British Columbia corporation headquartered in Abbotsford, British Columbia. It was a member of the CSSB in or around 2016. During the Class Period, A.K. Cedar and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates manufactured and sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

108.    B&B Cedar Sales, Inc. ("B&B") is a Washington corporation headquartered in Lacey, Washington. It was a member of the CSSB in or around 2012. During the Class Period, B&B and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates manufactured and sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

109.    B.C.F. Shake Mill Ltd. ("B.C.F.") is a British Columbia corporation headquartered in Fanny Bay, British Columbia. It was a member of the CSSB during the Class Period. During the Class Period, B.C.F. and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates manufactured and sold Certi-Label cedar shakes and shingles

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 24

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1   in interstate commerce, directly to purchasers in the United States.

2   110.    Cedar Valley Holdings Ltd. ("Cedar Valley") is a British Columbia corporation

3   headquartered in Valemont, British Columbia. It was a member of the CSSB in or around 2016.

4   During the Class Period, Cedar Valley and/or its predecessors, agents, wholly owned or

5   controlled subsidiaries, or affiliates manufactured and sold Certi-Label cedar shakes and shingles

6   in interstate commerce, directly to purchasers in the United States.

7   111.    Crawford Shake & Shingle, Ltd. ("Crawford") was a British Columbia

8   corporation headquartered in Port Alberni, British Columbia. It was a member of the CSSB in or

9   around 2013. During the Class Period, Crawford and/or its predecessors, agents, wholly owned

10  or controlled subsidiaries, or affiliates manufactured and sold Certi-Label cedar shakes and

12  shingles in interstate commerce, directly to purchasers in the United States.

13  112.    D & G Shake Co., Inc. ("D&G") was a Washington corporation headquartered in

14  Amanda Park, Washington. It was a member of the CSSB in or around 2016. During the Class

15  Period, D&G and/or its predecessors, agents, wholly owned or controlled subsidiaries, or

16  affiliates manufactured and sold Certi-Label cedar shakes and shingles in interstate commerce,

17  directly to purchasers in the United States.

18  113.    Francisco Cisneros Shingles ("Francisco Shingles") was a Washington business

19  based in the Forks, Washington area. It was a member of the CSSB in or around 2016. During

20  the Class Period, Francisco Shingles and/or its predecessors, agents, wholly owned or controlled

21  subsidiaries, or affiliates manufactured and sold Certi-Label cedar shakes and shingles in

22  interstate commerce, directly to purchasers in the United States.

23  114.    Hoko Falls Cedar is a Washington business based in Sekiu, Washington. It was a

24  member of the CSSB in or around 2012. During the Class Period, Hoko Falls Cedar and/or its

25  predecessors, agents, wholly owned or controlled subsidiaries, or affiliates manufactured and

26  sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the

27  United States.

28

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 25

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

115.    Lamming Cedar Mills BC ("Lamming Cedar") is a British Columbia business based in McBride, British Columbia. It was a member of the CSSB in or around 2012. During the Class Period, Lamming Cedar and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates manufactured and sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

116.    Medley Co. Cedar, Inc. ("Medley") is an Idaho corporation headquartered in Pierce, Idaho. It was a member of the CSSB in or around 2012. During the Class Period, Medley and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates manufactured and sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

117.    ML Cedar Products Inc. ("ML Cedar") was a Washington corporation headquartered in Forks, Washington. It was a member of the CSSB in or around 2013, 2016, and 2017. During the Class Period, ML Cedar and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates manufactured and sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

118.    Olympic Cedar Products, Inc. ("Olympic") is a Washington corporation headquartered in Forks, Washington. It was a member of the CSSB in or around 2016 and 2017. During the Class Period, Olympic and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates manufactured and sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

119.    Pacific NW Products LLC ("Pacific NW") is a Washington corporation headquartered in Forks, Washington. It was a member of the CSSB in or around 2017. During the Class Period, Pacific NW and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates manufactured and sold Certi-Label cedar shakes and shingles in interstate commerce, to purchasers in the United States.

120.    Real Wood, Inc. ("Real Wood") was a Washington corporation headquartered in

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 26

Sequim, Washington. It was a member of the CSSB in or around 2012 and 2015. During the Class Period, Real Wood and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates manufactured and sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

121.    S&K Cedar Products Ltd. ("S&K") is a British Columbia corporation headquartered in Mission, British Columbia. It was a member of the CSSB in or around 2012 to 2017. During the Class Period, S&K and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates manufactured and sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

122.    Sherico Cedar Products ("Sherico") is a Washington corporation headquartered in Forks, Washington. It was a member of the CSSB in or around 2012 and 2013. During the Class Period, Sherico and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates manufactured and sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

123.    Stave River Industries Ltd. ("Stave River") was a British Columbia corporation headquartered in Maple Ridge, British Columbia It was a member of the CSSB in or around 2012 and 2015. During the Class Period, Stave River and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates manufactured and sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

124.    Twin River Lumber is a British Columbia business based in Malakwa, British Columbia. It was a member of the CSSB in or around 2013, 2016, and 2017. During the Class Period, Twin River Lumber and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates manufactured and sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

125.    Western Gold Cedar Products ("Western Gold") is an Alaskan business based in Thorne Bay, Alaska. It was a member of the CSSB in or around 2016. During the Class Period,

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 27

Western Gold and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates manufactured and sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

126.    Wilson Shake Mill was a Washington business based in Chehalis, Washington. It was a member of the CSSB in or around 2012. During the Class Period, Wilson Shake Mill and/or its predecessors, agents, wholly owned or controlled subsidiaries, or affiliates manufactured and sold Certi-Label cedar shakes and shingles in interstate commerce, directly to purchasers in the United States.

## V.    TRADE AND COMMERCE

127.    During the Class Period, Defendants engaged in conduct both inside and outside of the United States that caused direct, substantial, and reasonably foreseeable and intended anticompetitive effects upon interstate commerce within the United States.

128.    During the Class Period, each Manufacturer Defendant, directly or through its subsidiaries or other affiliates, sold Certi-Label cedar shakes and shingles in the United States in a continuous and uninterrupted flow of interstate commerce and foreign commerce, including through and into this judicial district.

129.    The United States is the largest market for Certi-Label cedar shakes and shingles in the world, valued at hundreds of millions of dollars annually. During the Class Period, the Manufacturer Defendants and their co-conspirators collectively possessed a sizeable majority share of this market.

130.    Most Certi-Label cedar shakes and shingles are manufactured in British Columbia—mostly by the Manufacturer Defendants—and then imported into the United States. According to official Canadian export data, between 2011 and 2018, roughly $1.1 billion worth of Certi-Label cedar shakes and shingles were imported into the United States from British Columbia (nearly 10% of these imports were into Washington), or more than $139 million, on average, worth of Certi-Label cedar shakes and shingles per year. This equates to nearly 91% of

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 28

LAW OFFICES OF
McNaul Ebel Nawrot & Helgren pllc
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

all Certi-Label cedar shakes and shingles manufactured in British Columbia being imported into the United States between 2011 and 2018.

131.    The following chart shows the dollar value (in U.S. Dollars) of British Columbia Certi-Label cedar shakes and shingles exports to the United States, as well as the percentage of all Certi-Label cedar shakes and shingles exported from British Columbia to the United States:



132.    All CSSB manufacturers (the Manufacturer Defendants and co-conspirators) participate in and sell the vast majority of their Certi-Label cedar shakes and shingles in the United States, and due to the "All or Nothing" Rule, all of the Certi-Label cedar shakes and shingles sold by CSSB manufacturers in the United States were Certi-Label cedar shakes and shingles.

133.    Thus, during the Class Period, Defendants engaged in conduct both inside and outside the United States that caused direct, substantial, and reasonably foreseeable and intended anticompetitive effects upon interstate commerce within the United States.

134.    Defendants' business activities substantially affected interstate trade and commerce in the United States and caused antitrust injury in the United States.

135.    By reason of the unlawful activities hereinafter alleged, Defendants substantially

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 29

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

affected commerce throughout the United States, causing injury to Plaintiffs and members of the Classes. Defendants, directly and through their agents, engaged in activities affecting all states, to fix, raise, maintain or stabilize prices for Certi-Label cedar shakes and shingles, which unreasonably restrained trade and adversely affected the market for such products.

## VI.    FACTUAL ALLEGATIONS

### A.    CSS Products Generally

136.    Cedar shakes are rustic looking and used in roofing. Cedar shingles, which are used in both roofing and sidewall applications, are uniformly sawn for a consistent and even thickness and provide a uniform machine-produced look. According to G&R Cedar's website, "[t]he main difference between a shingle and a shake is that a shingle is sawn on both sides for a smooth, tailored appearance, while a shake is split on the face, and sawn on the back, for a rougher, rustic look."

137.    Illustrative examples of a cedar shake and a cedar shingle are shown below:



**Cedar Shake (Split and Resawn)**



RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 30

LAW OFFICES OF
McNaul Ebel Nawrot & Helgren pllc
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

**Cedar Shingle (Sawn)**

138.    Certi-Label cedar shakes and shingles are produced from logs and cut blocks of Western Red Cedar (*Thuja plicata*) or Alaskan Yellow Cedar (*Cupressus nootkatensis*). Western Red Cedar and Alaskan Yellow Cedar are commercially available only in the Pacific Northwest, and British Columbia has the world's largest supply of standing Western Red Cedar.

139.    Both Western Red Cedar and Alaskan Yellow Cedar are durable, naturally water-resistant, and highly resistant to decay, and both species are used for a variety of building applications outside of Certi-Label cedar shakes and shingles (*e.g.*, decking, fencing, and landscaping).

140.    As used in this Complaint, "Certi-Label cedar shakes and shingles" and "Certi-Label products" refers to the following cedar products bearing the Certi-Label trademark of the CSSB: Certigrade Shingles, Certi-Sawn Shakes, and Certi-Split Shakes.

141.    Certi-Label shakes and shingles are all produced from the same raw materials: cedar logs and cut blocks.

**B.      Industry Background**

**1.      CSSB and the Certi-Label Trademark**

142.    For more than a century, the CSSB has been the preeminent regulator of the cedar shake and shingle industry in the United States and Canada.

143.    The CSSB drafted and holds the copyright to the CSSB-97 grading and packing rules. CSSB-97 grading rules cover two species of cedar: Western Red Cedar and Alaskan Yellow Cedar.

144.    The CSSB also owns the Certi-Label trademark.  As will be described in more detail below, CSSB's intellectual property in Certi-Label and the CSSB-97 grading rules enabled it to enforce its price-fixing conspiracy.

145.    A manufacturer must be a member of the CSSB in order to use the Certi-Label trademark and affiliated copyrights. As the CSSB explains in its *Certi-Label Cedar Shake and Shingle Product Catalog*: "Cedar shakes and shingles manufactured by members of the [CSSB]

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 31

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1      are the only products labeled with the 'Certi' brand name."

2          146.     Certi-Label cedar shakes and shingles fall into three main categories: Certi-Split

3 shakes, Certigrade shingles, and Certisawn shakes. Each of these three main product types are

4 described in greater detail below:

5            a.    <u>Certi-Split Shakes</u>: These shakes have a split face exposed with a naturally rustic

6                 appearance and are sawn the back. The most common lengths for this shake are

7                 18" and 24", and the butt thickness ranges from 3/8" to 2" plus.

8            b.    <u>Certisawn Shakes</u>: These shakes are sawn on both sides for a semi-textured look

9                 with a stronger shadow-line than a shingle. The most common lengths for this

10                 shake are 18" and 24", and the butt thickness ranges from 5/8" to 1.5".

12            c.    <u>Certigrade Shingles</u>: These shingles are sawn on both sides for a tailored

13                 appearance and are available in 16", 18". or 24" lengths. The butt thickness is

14                 gauged using a stack of shingles.

15          147.     In order to distinguish products of different qualities, each certification has

16 stringent requirements setting forth how the product will "grade," taking into consideration

17 numerous factors such as how clear the wood is, the thickness of the product, and the grain of the

18 wood. For instance, Certigrade shingles are broken down into Number 1 Grade, Number 2

19 Grade, Number 3 Grade, and Undercoursing Grade products.

20          148.     The CSSB aggressively promotes its Certi-Label. For example, the CSSB website

21 contains a 20-page brochure explaining how to read CSSB Certi-Labels and different shake and

22 shingle grades, which includes examples of all CSSB Certi-Label products:

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 32

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

**HOW TO READ A CERTI-LABEL**®

Each bundle of product has the mill's distinctive Certi-label® tucked under the bundle strap. Asking for "the blue label" or "number one blue label" is not specific enough: CSSB members' products are the only ones with the "Certi" brand name on the label.

1. The "Certi" Brand Name - Your Quality Assurance
2. Product Grade
3. Product Type
4. Independent, 3rd Party, Quality Control Agency
5. This Number Shows Compliance with Total Quality Manufacturing System
6. Mill Name, Location and Phone Number
7. Industry Product Description
8. Product Dimensions
9. Cedar Bureau Label Number
10. Building Code Compliance Numbers
11. Product Performance Tests Passed
12. Label Identification Number
13. UPC Code
14. Coverage Chart and Recommended Exposure
15. Application Instructions on Reverse Side

– Page 2 of 20 –

149.    As reflected in the label above, identification of the mill that produced the Certi-Label CSS is less significant than, and secondary to, the product's identification with the CSSB and its Certi-Label trademark. Mills emphasize the Certi-Label trademark and the product's connection with the CSSB, as the images below reflects. In other words, one of the primary ways—if not the primary way—CSSB mills identify their product is through the "Certi" brand. There is thus minimal differentiation between CSSB members and their products, and that lack of differentiation is intentional.

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 33

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816





150.    Additionally, as the label reflects, there is a lifetime limited warranty on Certi-Label CSS—but only when applied by a CSSB member-approved installer. This incentivizes contractors to choose Certi-Label CSS and to work with the CSSB so that they may receive the benefits of the CSSB-related warranty.

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 34

151.    The Certi-Label above further identifies a third-party inspector, which for the CSSB members is Intertek. The CSSB has an exclusive agreement with Intertek, whereby Intertek has agreed that it will only inspect CSS for CSSB member mills. Thus, if a non-CSSB member mill wanted to confirm that their CSS met the CSSB-97 grading rules, it would not be able to seek Intertek's inspection services. The only one other major inspector of CSS is QAI Laboratories.

152.    Since 2011, the CSSB has regularly made statements in the marketplace that Intertek provides the only reliable inspection service in the industry. Clay Walker of the CSSB, Waldun Walker's brother, was also responsible for supervising Intertek.

153.    The CSSB has aggressively and successfully promoted its CSSB-97 grading rules and its trademarked Certi-Label cedar shakes and shingles. As a result, "non-bureau" mills cannot use the Certi-Label trademark or packing slips on their products. This is significant because the Certi-Label is perceived as guaranteeing a certain quality of product. This is further evidenced by the fact that the CSSB-97 grading rules, which govern the production and packing of shake and shingle products, have been widely incorporated into building codes throughout the United States and Canada. For example, Sections 1507.8 and 1507.9 of the International Building Code, and Sections R905.7 and R905.8 of the International Residential Code—which serve as blueprints for many local building codes—require Cedar wood shingles and shakes used in siding and roofing applications to conform with CSSB grading rules. In a flyer describing its mission and activities, CSSB advertises its "proactive involvement in grading rule and building code changes" and "coordination of legislative work" and touts "Building Code Lobbying" as a benefit of CSSB membership. CSSB has touted in promotional materials that at least forty-six states plus Washington, D.C. have adopted the International Building Code as well as the International Residential Code.

154.    These legislative efforts are flanked by a general marketing campaign to promote Certi-Label CSS in the industry. As the CSSB explains on its website, it "is committed to a

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 35

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

strong marketing program" and "[t]he 'Certi' brand is actively promoted in all CSSB marketing efforts; trade shows, product labeling, magazine ads, District Manager seminars, literature, media relations and much more." The CSSB has used this marketing program to cultivate a perception of superior quality of Certi-Label CSS, for example, stating in promotional materials that it is a "big myth" that "All cedar's the same"—"WRONG! There is a Certi-label™ difference."

155.    As a result, notwithstanding the fact that "non-bureau" mills can and do comply with the CSSB-97 grading rules, the Certi-Label label is perceived as guaranteeing a certain quality of product. The CSSB explains on its website that it "is committed to a strong marketing program" and "[t]he 'Certi' brand is actively promoted in all CSSB marketing efforts; trade shows, product labeling, magazine ads, District Manager seminars, literature, media relations and much more." Thus, while non-Certi-Label may be equal to or even superior to Certi-Label CSS in quality, as a result of the CSSB's successful promotional efforts for its CSSB-97 grading and Certi-Label trademark—as well as efforts to cast doubt on the quality of non-Certi-Label products (described below)—there is a perception among contractors, architects, and others that the only way to ensure compliance with CSSB-97 grading and building codes is to use Certi-Label CSS. The CSSB has cultivated this perception, in promotional materials.

156.    The CSSB also warns consumers about the potential use of products bearing competing labels that are not CSSB Certi-Labels, further amplifying the purported difference between products bearing the trade association's trademark and those that do not. This is part of the services the CSSB says it provides its members, but it is also a reminder to members of the influence and power the CSSB has to undermine non-members and non-Certi-Label CSS. For example, the CSSB issued the following "Consumer Service Alert":

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 36



157.    The cumulative effect of CSSB's efforts is that the CSS market is effectively segmented into Certi-Label CSS produced by CSSB member mills, and non-Certi-Label CSS. The market share of Certi-Label CSS exceeds 90% in all regional markets, and is near 100% northeastern United States, Pacific Northwest, Mountain West, and Midwest—the parts of the country where the substantial majority of CSS is used—while non-Certi-Label CSS is a much smaller market with relatively little demand.

158.    The distinction between Certi-Label and non-Certi-Label CSS does not necessarily reflect any material differences between CSS products. "Non-bureau" mills can and do comply with the CSSB-97 grading rules, and non-Certi-Label CSS may be equal to or even superior to Certi-Label CSS in quality. However, since CSSB owns the Certi-Label trademark, these "non-bureau" mills cannot use the Certi-Label brand to convey the quality of their product. Because of CSSB's promotion of its CSSB-97 grading rules and Certi-Label trademark—as well as efforts to cast doubt on the quality of non-Certi-Label products—there is a perception among

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 37

contractors, architects, and others that the only way to ensure compliance with CSSB-97 grading and building codes is to use Certi-Label CSS.

159.    As a result of this perception, which the CSSB and the Manufacturer Defendants have established and cultivated, Certi-Label CSS and non-Certi-Label CSS effectively constitute two different product segments. This is evidenced by the fact that Certi-Label CSS commands a price premium of 15% to 25% over non Certi-Label CSS, even if that product is comparable or superior to the Certi-Label product.

160.    Because the Certi-Label label is limited to CSSB members, manufacturers of CSS that are not members of the CSSB have access to only a small fraction of the CSS market, in which CSS is sold at a discount even when of the same quality as Certi-Label CSS. Without membership in the CSSB, a manufacturer of CSS is unable to effectively compete in the United States market for CSS, and as a result, during the last 20 years, the vast majority of all Canadian and US-based manufacturers of CSS have been members of the CSSB.

161.    During the Class Period, Certi-Label CSS accounted for roughly 95% of the CSS purchased in the United States.

## 2.    The CSSB's Structure, Bylaws and Meetings

162.    The CSSB traces its origin to a June 1915 meeting of the Trustees of the West Coast Lumber Manufacturers Association, at which "it was agreed to establish a branch of the association to serve those members who manufactured shingles." This organization merged with the Handsplit Shake Bureau in 1963 to become the Red Cedar Shingle & Handsplit Bureau. In 1988, the organization's name was officially changed to the Cedar Shake & Shingle Bureau.

163.    In or around 2002, a competing trade association, the "B.C. Shake and Shingle Association" ("BCSSA") was "rejuvenated" by certain CSS mills. As a precondition to its rejuvenation, CSSB insisted that the BCSSA—which repeatedly lamented competition among mills—"not overlap or duplicate efforts," which BCSSA agreed to.

164.    For example, a February 26, 2007 BCSSA newsletter stated: "As I see it, over the

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 38

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

last number of years we haven't stood up for our real cedar and industry terms, we've just competed inside our existing market share with who's better than the next guy. Imagine the possibilities if we all actually promoted and marketed real cedar shakes and shingles as the finest roofing product in the world!"

165.    The BCSSA folded in or around late 2010. The circumstances surrounding the BCSSA's closure are unknown at this time, but Plaintiffs believe that discovery will reveal an agreement between BCSSA and CSSB to combine their operations.

166.    Consequently, throughout the Class Period, the CSSB has been the sole trade association for CSS manufacturers and the preeminent regulator of the CSS industry in the United States and Canada.

167.    The CSSB grants its member manufacturers weighted votes based on each manufacturer's annual CSS production, and the Manufacturer Defendants—among the largest manufacturers of CSS in the world—have a combined voting power of more than 50%. This gives the Manufacturer Defendants significant power within the CSSB, including the ability to ensure members that discount below the agreed upon price levels are expelled from the CSSB.

168.    The Manufacturer Defendants' employees have also served in leadership capacities on the CSSB Board of Directors throughout the Class Period. For example, Anbrook's Meeker has served as the CSSB Board of Director's Chairman and Vice Chairman and Waldun's Walker has served as the Secretary/Treasurer on the CSSB Board of Directors.

169.    Waldun's Walker and Anbrook's Meeker are both members of major Canadian cedar industry families who grew up together in Mission, British Columbia. They have been close friends since childhood.

170.    The Manufacturer Defendants have sat on CSSB's board since at least 2012. During this same period, representation by other CSS manufacturers has trended downward, as shown in the below chart:

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 39

| | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 |
|---|---|---|---|---|---|---|---|---|
| **Anbrook** | X | X | X | X | X | X | X | X |
| **G&R** | X | X | X | X | X | X | X | X |
| **Waldun** | X | X | X | X | X | X | X | X |
| **A&R Cedar or S&W[2]** | | | | | | | | X |
| **Anderson** | X | X | X | X | X | X | X | |
| **Best** | X | X | X | | | X | X | X |
| **Premium Cedar** | X | X | X | X | X | X | X | X |
| **S&K** | | X | X | X | X | | | |
| **Serpentine** | X | X | X | | | | | |
| **# of Manufacturers** | 7 | 8 | 8 | 6 | 6 | 6 | 6 | 6 |

171.   The Manufacturer Defendants' employees have also served in leadership capacities on the CSSB Board of Directors throughout the Class Period. For example, Anbrook's Meeker has served as the CSSB Board of Director's Chairman and Vice Chairman and Waldun's Walker has served as the Secretary/Treasurer on the CSSB Board of Directors. In addition, Clay Walker, the brother of Waldun's Walker, is CSSB's "Cedar Quality Auditor" and CSSB's "District Manager" for the Pacific Northwest region.

172.   Throughout the Class Period, the Manufacturer Defendants have utilized their weighted voting power to defeat proposals by smaller CSSB manufacturers, including proposals to eliminate weighted voting on non-manufacturing members and to impose term limits on directors.

173.   Throughout the Class Period, the Manufacturer Defendants also have utilized

---

[2] S&W was added to the CSSB board in September 2018 and terminated from the CSSB in January 2019. After S&W was terminated from the CSSB, the CSSB board appointed A&R Cedar to fill the vacancy, but as a result of the S&W Lawsuit, S&W regained its CSSB membership and board position in April 2019, and A&R Cedar became an "ex officio" member of the CSSB board. Because S&W's position on the board is still in dispute, it is included with A&R Cedar above.

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 40

their weighted voting power to consolidate their power over the CSSB by, among other things, adopting bylaw changes that reduced the number of seats on the Board of Directors (from 12 to 10 directors in 2016, and from 10 to 9 directors in 2018), reducing membership meeting quorum requirements (from 40% of the membership to ultimately only members holding 10% or more of the total votes of CSSB members entitled to vote), and ensuring the Board Chairman was not constrained by the historic practice of voting only in the event of a tie but instead was afforded full voting rights like other members of the Board of Directors.

174. For approximately the last five years or more, the CSSB had in fact refused to disclose the voting power of each of its member mills, which prevents CSSB's membership from knowing who controls the CSSB—and specifically, the fact that three member mills (the Manufacturer Defendants) control over 50% of the voting power.

175. Additionally, there are times when a much smaller group within the CSSB Board of Directors, with representatives from only a few CSSB members (but always with representatives from the Manufacturer Defendants), have held "emergency" sessions without the full Board. During at least one of those occasions, the smaller group of Board Members (including personnel from the Manufacturer Defendants), voted to so seriously penalize another member mill that it was constructively terminated from the CSSB. Likewise, although Intertek inspector Wayne Rourke was typically invited to participate in CSSB Board meetings when a member mill was facing potential termination of its membership, when S&W was terminated, he was not invited to participate. These examples reflect that the Manufacturer Defendants could in fact wield the power of the CSSB to boycott mills who did not comply with their dictates and price-fixing conspiracy.

176. The CSSB also imposes strict confidentiality requirements for its Board of Directors, which prevents the CSSB membership from discovering the Board's anticompetitive conduct and decision-making. Board members have private logins to the Board of Director's portal on CSSB's website (the "Directors Login"), in which Board Members can access and

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 41

exchange sensitive information.

177.     Throughout the Class Period, the CSSB bylaws have prevented its member manufacturers from producing non-Certi-Label cedar shakes and shingles. As noted earlier, this is known within the CSSB as the "All or Nothing Rule."

178.     Specifically, Article III § 2 of the CSSB bylaws provides, in relevant part, that "[t]o become a Mill-Member, a person or entity must: (a) manufacture or process only Products that comply with CSSB's Product quality, inspection, grading and labeling policies, procedures, rules, regulations and standards." The CSSB requires that "[a]ll mills under [a member's] control or ownership must be disclosed" and that members "agree[] to notify CSSB immediately when mill ownership or location(s) change." Furthermore, it requires not only the names and locations of these other mills but also precisely the number of various machines installed at each location, such as shingle machines, shake resaw machines, splitting machines, and other types of machines.

179.     The "All or Nothing Rule" was strengthened by the CSSB Board in November 2018—on the motion and second of Waldun's Walker and Anbrook's Meeker—to "ensure that all enterprises owned, operated, or controlled by a Member that are involved in the manufacture, distribution, or sale of [CSS] apply for and become CSSB Members," such that they could manufacture, distribute, and sell only Certi-Label product. This rule was strengthened because one or more CSSB members had created non-CSSB "spin-off" corporations to manufacturer and/or sell non-Certi-Label cedar shakes and shingles.

180.     Under the terms of the "All or Nothing Rule," a manufacturer would be expelled from the CSSB if it manufactured and sold *any* CSS that did not carry the Certi-Label. Defendants have used the "All or Nothing Rule" to punish at least one CSS manufacturer that was competing with the Manufacturer Defendants on the basis of price in the United States market for CSS.

181.     The only way for a manufacturer to sell non-Certi-Label CSS was to leave the

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 42

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

CSSB, in which case it could not sell any Certi-Label products at all. This rule prevented CSSB members from selling non-Certi-Label product at lower prices, further cementing the near 100% share of Certi-Label CSS in many markets.

182.   Throughout the Class Period, the terms of CSSB membership also prohibited members from participating in any other organization or trade association that was "in competition with the business conducted by the Cedar Bureau." This rule prevented CSSB members from using Certi-Label while, at the same time, marketing their product under additional quality labels and grading standards administered by another organization. Such alternatives could have emerged in a more competitive environment.

183.   The "All or Nothing Rule" and non-competition clause were part and parcel of the horizontal price fixing conspiracy. Collectively, these rules ensure that the CSSB and its Certi-Label trademark are "the only game in town," while non-Certi-Label CSS remains an unattractive niche market for producers. Any CSS manufacturer that wanted to enter this niche market, or that tried to establish or participate in a competing quality grading system, would inevitably lose its access to the vastly larger and substantially more profitable market for Certi-Label CSS.

184.   The CSSB maintains strict supervision over its members, particularly member mills. One of the ways in which it does so is by making in-person visits to all CSSB members mills to ensure compliance with CSSB dictates. The CSSB in fact performs random, unannounced audits. The in-person visits are often conducted by CSSB's Cedar Quality Auditor—Clay Walker—the brother of Waldun's Walker. In 2015, for example, Clay Walker visited and inspected every CSSB member mill—some on many occasions.

185.   By sending CSSB representatives directly to the member mills for in-person inspections and visits, the CSSB and the Manufacturer Defendants were able to directly and periodically have private meetings with the co-conspirators to maintain the price-fixing conspiracy, including by exchanging and collecting competitively sensitive information. These

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 43

meetings also allowed the CSSB and the Manufacturer Defendants to "keep an eye" on CSSB member mills and enforce compliance with their price-fixing conspiracy.

186.    As the CSSB's auditor, Clay Walker also had the power to identify purportedly non-CSSB compliant CSS products, and "red tag" that product, meaning the product could not be sold until either he or Interek (under his supervision) re-graded or re-inspected the CSS. In other words, the CSSB and the Manufacturer Defendants had the power to prevent the sale of CSS products made by CSSB member mills. This authority allowed Defendants to wield additional control over CSSB member mills and to force their compliance with Defendants' wishes or risk being denied the ability to sell their products.

187.    The CSSB holds its Annual General Meeting, which includes a meeting of the Board of Directors, every fall.

188.    The Annual General Meetings during the Class Period were held on the following dates at the following locations:[3]

> a.  2013: October 23, 2013 in Las Vegas, Nevada;
>
> b.  2015: September 10–12, 2015 in Whistler, British Columbia;
>
> c.  2016: August 26–27, 2016 in Vancouver, British Columbia; and
>
> d.  2017: September 15, 2017 in Abbotsford, British Columbia.

189.    In its newsletter, *Certi-Scene*, CSSB touts benefits of attending the Annual General Meeting as including the following: (a) "information sharing and business education"; (b) "see[ing] what their association is doing to promote and protect the Certi-label™ brand"; (c) "high levels of member engagement and excellent conversation about protecting and promoting the Certi-label™ brand"; and (d) "enjoy[ing] excellent networking with colleagues."

190.    In addition to its annual meeting, the CSSB Board of Directors also holds regular conference calls and in-person meetings throughout the year. For example, on February 17, 2016 the CSSB Board of Directors held a conference call that included a confidential portion to which

---

[3] Plaintiffs are not yet aware of the dates and locations of the Annual General Meetings held in 2011, 2012, 2014, and 2018.

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 44

1  non-members were not invited, and on May 27, 2016 the CSSB Board of Directors met in Ocean
2  Shores, Washington.

3      191.    CSSB members also attend *ad hoc* events on a regular basis. For instance, on
4  December 17, 2015, the CSSB hosted a Lifetime Achievement Awards luncheon in Bellingham,
5  Washington that was attended by the Manufacturer Defendants and other CSSB manufacturers.

6      192.    These meetings provided the Defendants and co-conspirators many opportunities
7  to conspire on the pricing of Certi-Label cedar shakes and shingles and the discipline of price
8  discounters within the CSSB.

9          **3.    The Domestic Certi-Label Cedar Shakes and Shingles Market**

10     193.    The United States cedar shakes and shingles market is a national market valued in
11  the hundreds of millions of dollars annually.

13     194.    A July 2018 report by BCC Research titled "Residential Roofing Materials: The
14  North American Market" estimates 2018 total North American residential roofing material
15  market sales of "nearly $13.0 billion." Furthermore, based on declarations filed by experienced
16  industry participants, including Terry Adkins and Lynne Christensen, in a lawsuit that S&W
17  recently filed, wood products represent approximately 2.1% to 3% of the residential roofing
18  material market. Using these statements and figures, it is estimated that the annual volume of
19  wood roofing products sold in North America is between approximately $270 million and $390
20  million, with the lion's share sold into the United States.

21     195.    Cedar is the most popular wood siding and roofing choice and offers significant
22  advantages for insulation and durability over the more common asphalt shingle roof.  Cedar is
23  also considerably more expensive than alternative roofing materials like asphalt shingles and
24  vinyl siding because it is widely considered to be more visually pleasing as well as more durable
25  than other products. Roofs made of CSS are considered more to have a more "classic" look, and
26  indeed, in some areas, cedar or wood roofing may even be required, such as in historic districts.

27     196.    Approximately $5.6 billion of softwood lumber imports were reported by the U.S.

28  RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 45

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

Commerce Department in 2017, including cedar, spruce, and Douglas fir. Cedar shakes and shingles represent a substantial portion of this commerce. A roof made of CSS can be a significant part of a home's value. While roofing and siding generally constitute 10% of the cost of a home, cedar shakes and shingles constitutes a proportionally higher percentage due to the price premium they command over alternative products.

197.    Installing cedar roof shingles (for a roof size of 1,400-2,100 square feet) currently costs approximately $12,800–$19,700, depending on the type and finish options. Because shakes are a premium quality product and are also harder to install, installing cedar roofing shakes can cost up to 1.5–2 times as much as shingles. On average, installation of cedar roofing shakes costs approximately $15,200–$24,000 (for a roof size 1,400–2,100 square feet), depending on the type and finish options.

198.    CSSB Certi-Label shakes and shingles, which are installed on the roofs and exterior walls of residential dwellings and commercial buildings, account for roughly 95% of the cedar shake and shingles purchased in the United States. As a result of CSSB's promotional efforts, there are effectively two segments to the CSS market: (a) Certi-Label CSS and (b) non-Certi-Label CSS.

199.    Manufacturers that do not have the ability to market their products as Certi-Label cedar shakes and shingles only have access to a small fraction of the high-end cedar shake and shingle market.

200.    As a result, a manufacturing participant in this market must be a member of the CSSB. Although non-CSSB or "non-bureau" mills can produce shingles that comply with the CSSB-97 grading rules, the substantial price difference between CSSB Certi-Label cedar shakes and shingles and the same grades produced by non-bureau mills is 15%–25%. This prevents non-bureau mills from being able to compete effectively for the high-value cedar logs and cut blocks that must be obtained in order to produce high-end cedar shake and shingle products.

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 46

**C.    The structure and characteristics of the Certi-Label cedar shakes and shingles market make the conspiracy economically plausible.**

201.    The market for CSS, and particularly Certi-Label CSS, has several characteristics that make it conducive to collusion. The DOJ has emphasized that structural market factors, such as those discussed below, can be important in assessing whether conspiratorial conduct in violation of the antitrust laws has occurred:

> While collusion can occur in almost any industry, it is more likely to occur in some industries than in others. An indicator of collusion may be more meaningful when industry conditions are already favorable to collusion.
>
> > • Collusion is more likely to occur if there are few sellers. The fewer the number of sellers, the easier it is for them to get together and agree on prices, bids, customers, or territories. ***Collusion may also occur when the number of firms is fairly large, but there is a small group of major sellers and the rest are "fringe" sellers who control only a small fraction of the market.***
> >
> > • The **probability of collusion increases if other products cannot easily be substituted for the product in question or *if there are restrictive specifications for the product being procured.***
> >
> > • The more standardized a product is, the easier it is for competing firms to reach agreement on a common price structure. It is much harder to agree on other forms of competition, such as design, features, quality, or service. . . .
> >
> > • ***Collusion is more likely if the competitors know each other well through social connections, trade associations,*** legitimate business contacts, or shifting employment from one company to another.
> >
> > • ***Bidders who congregate in the same building or town*** to submit their bids have an easy opportunity for last-minute communications.

(Emphases added.)

**1.    The Certi-Label cedar shakes and shingles market is vertically integrated.**

202.    The cedar shake and shingle industry has become highly vertically integrated,

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 47

1    particularly as a result of acquisitions by the Manufacturer Defendants.

2         203.    For example, Defendant Waldun states on its website that it "has integrated the

3    various aspects of cedar manufacturing, producing cedar lumber, shakes, and value-added

4    rebutted and rejointed sidewall shingles."

5         204.    Vertically integrated industries such as this one are highly susceptible to collusion

6    because the dominant firms control all or nearly all aspects of the supply chain, and thus have the

7    ability to coordinate on output and inventory levels and, ultimately, prices.

8                      **2.    Demand for Certi-Label cedar shakes and shingles is inelastic.**

9         205.    Consumer demand for cedar shakes and shingles is relatively unaffected by price,

10   thus rendering it inelastic. Inelastic demand means that increases in price result in limited

12   declines in quantity sold in the market. In order for a group of companies to profit from raising

13   prices above competitive levels, demand must be inelastic at competitive prices, which allows

14   group members to raise prices without seeing a decline in sales revenue.

15        206.    While demand for cedar shakes and shingles is driven by residential and

16   consumer construction, consumer demand for these particular products is unaffected by a

17   significant and non-transitory price increase in them.

18        207.    Demand inelasticity for cedar shakes and shingles is not surprising when one

19   examines their distinctive product qualities and attributes compared to shakes and shingles not

20   bearing the CSSB's Certi-Label as well as other roofing and siding materials, as discussed

21   further below.

22                      **3.    Certi-Label cedar shakes and shingles are commodity-like
                              products.**
23

24        208.    Cedar shake and shingle products bearing the CSSB's Certi-Label trademark—the

25   products at issue in this case—are undifferentiated, commodity-like products because each

     manufacturers' product within a relevant product type, size, and grade is interchangeable with the
26
     corresponding product of another manufacturer that also bears the Certi-Label trademark for that
27
     particular product type, size, and grade.
28

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 48

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

209.    Stated another way, Certi-Label cedar shakes and shingles are commodity-like products with little or no product differentiation based on manufacturer. To be sold as a product bearing the CSSB Certi-Label, all products must be uniform and meet the specifications required by the CSSB.

210.    Consequently, price is the primary basis on which the Manufacturer Defendants and co-conspirator manufacturers compete for sales. In cases like this, anticompetitive coordination on pricing among competitors is easier because they cannot differentiate their products on other bases, like meaningful quality differences, to customers.

### 4.    There are no significant substitutes for cedar shakes and shingles.

211.    There are no significant substitutes for Certi-Label cedar shakes and shingles. While there are potential substitute products—non-Certi-Label shakes and shingles, asphalt shingle roofs, ceramic tile roofs, slate roofs, vinyl siding, or a different type of wood siding—the characteristics of those products lack the unique characteristics of Certi-Label cedar wood shakes and shingles. Moreover, non-Certi-Label CSS is often not an option either, given that CSSB-97 grading is required by many building codes and not all mills can get the inspections necessary to reflect that they have complied with this grading. As a result, there are no significant substitutes for Certi-Label CSS.

212.    Cedar shakes and shingles have a historic appearance and texture that cannot be attained with modern non-cedar products. They are considered high-end products that have a distinctive look and feel.  They are typically found on more expensive homes and upscale commercial buildings.  One exemplar follows:

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 49

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816



**Residence with Cedar Shakes and Shingles**

213.     Cedar shakes and shingles are also more durable, which offers long-term cost savings compared to other products. This is reflected in the fact that these products have significantly longer warranties than alternative products.

214.     As discussed above, the CSSB label is perceived as guaranteeing a certain quality product, and due to that reputation, many architects and builders require Certi-Label products in their building specifications. As evidence of this, Certi-Label cedar shakes and shingles have near 100% market share in the northeastern United States, Pacific Northwest, Mountain West, and Midwest—the parts of the country where the substantial majority of CSS is used.

215.     Because the demand for CSS is inelastic, sellers of CSS, including the Manufacturer Defendants and their co-conspirators, can raise the prices of CSS above competitive levels without seeing a decline in sales revenue.

216.     For all these reasons, Certi-Label cedar shakes and shingles are significantly more expensive than alternative products.  On average, these products are 15-25% more expensive than non-Certi-Label shakes and shingles, and approximately twice as expensive as other kinds of commonly used roofing and siding products, like asphalt shingles, ceramic tiles, and vinyl siding.

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 50

LAW OFFICES OF
McNaul Ebel Nawrot & Helgren PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

### 5. The Certi-Label cedar shakes and shingles market is highly concentrated.

217.     Highly concentrated industries are more susceptible to collusion, because the coordination and enforcement pricing decisions and market allocations across firms is easier in industries where a small number of firms control most of the market.

218.     The cedar shake and shingle industry has become significantly consolidated over the past two decades, with shake and shingle manufacturers now operating only in the Pacific Northwest. There are currently 45 total manufacturers who are members of CSSB: 17 manufacturers operate in Washington, three operate in Idaho, and 25 operate in British Columbia.

219.     Manufacturer Defendants are the three largest members of the CSSB. On information and belief, these Defendants, together with a handful of the largest co-conspirator manufacturers, collectively possess market power sufficient to control prices in and exclude price competition from the high-end cedar shake and shingle market.

220.     Additionally, as alleged herein, the Manufacturer Defendants came to control more and more Certi-Label CSS by coercing smaller members mills to sell product to them, which they could then re-sell. By doing so, the Manufacturer Defendants coalesced more control over the Certi-Label CSS market.

### 6. The voting structure of the CSSB concentrates power in the hands of the largest manufacturers.

221.     As discussed above, the structure of the CSSB allows Manufacturer Defendants to use the CSSB for anticompetitive purposes. These include colluding to fix prices on Certi-Label cedar shake and shingle products and to expel CSSB members, including upstart and low-cost rivals, that engage in price competition, thereby preventing them from using the indispensable CSSB label. These actions blatantly violate § 1 of the Sherman Act, which prohibits the member competitors of a trade association from engaging in collusive joint action that hinders robust competition.

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 51

222.    The CSSB grants member mills weighted votes based on each mill member's annual Certi-Label cedar shake and shingle production.

223.    During the last five years, several powerful, large mill members of the CSSB have conspired to promote and adopt an anticompetitive agenda that further concentrates voting power on the Board of Directors in their hands. Led by Waldun and Anbrook, whose executives have served on the CSSB Board of Directors during each of the last 10 years, the largest mill members of the CSSB have utilized their weighted voting power to defeat bylaw proposals by small CSSB members to eliminate weighted voting on non-manufacturing matters and to impose term limits on directors. This same group of large mills, again led by co-defendants Waldun and Anbrook, increased their collective power over the CSSB by adopting bylaw changes that reduced the number of seats on the Board of Directors, reduced membership meeting quorum requirements, and ensured that the Board Chairman (who is currently Anbrook's President) was not constrained by the historic practice of voting only in the event of a tie but rather was afforded full voting rights like other members of the Board of Directors.

**7.    Defendants had ample opportunity to conspire.**

224.    Defendants had numerous opportunities to discuss, agree and act on anticompetitive schemes that had the purpose and intent of artificially raising the prices of Certi-Label cedar shakes and shingles.

225.    *First*, Manufacturer Defendants and their co-conspirators are members of the CSSB, which provided an important opportunity to meet and collude with one another.

226.    Manufacturer Defendants each have executives who serve on the CSSB Board of Directors. Brooke Meeker, President and CEO of Anbrook, has been a member of the CSSB Board of Directors for more than 10 years and is the current Board Chairman. Curtis Walker, President and CEO of Waldun, has been a member of the CSSB Board of Directors for more than 10 years and is the current Secretary/Treasurer. G&R Cedar Sales Manager Stuart Dziedzic also currently sits on the Board of Directors. Other Certi-Label cedar shake and shingle manufacturer

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 52

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

companies on the Board of Directors include co-conspirators A&R, Best, Premium Cedar, and Watkins.

227.     As noted above, every year in August or September, the CSSB holds its Annual General Meeting, which includes a meeting of the Board of Directors, usually in British Columbia.  The CSSB, moreover, holds regular conference calls and in-person meetings in and around the Pacific Northwest during the year. Finally, as noted above, the CSSB holds various *ad hoc* events during the year attended by the Manufacturer Defendants' executives and senior management.

228.     Mill members also have opportunities to conspire at other wood products trade shows or golf outings. Waldun's Curtis Walker and Kirk Nagy have used these opportunities to pressure competitors into increasing their prices, including most recently at the BC Wood's Global Buyers Mission in 2018.

229.     *Second*, the close proximity of Defendants and many manufacturer co-conspirators provided ample opportunities to meet and discuss pricing of Certi-Label cedar shakes and shingles as well as to conspire to exclude and eliminate competitive threats from the market.

230.     Manufacturer Defendants are all located in the greater Vancouver, British Columbia metro area. Anbrook is headquartered in Pitt Meadows, British Columbia, while Waldun is headquartered in the neighboring city, Maple Ridge, British Columbia—approximately 16 miles east of Anbrook. G&R Cedar is based in Matsqui, which is only about 23 miles to the west of both cities. Additionally, Defendant CSSB is located just outside the Vancouver metro area in Mission, British Columbia—approximately 7 miles east of Waldun.

231.     Many of the co-conspirator manufacturers are also located close to each other and to Defendants. For example, Premium Cedar and Watkins are both located in Maple Ridge, British Columbia, the same city where Waldun is located. A&R and Best are both headquartered in Hoquiam, Washington.

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 53

232.    The proximity of Defendants and the co-conspirators provided ample opportunities to meet and discuss the pricing of Certi-Label CSS, as well as to conspire to jointly boycott manufacturers that discounted their Certi-Label CSS below the agreed-upon price levels.

### 8.    High entry barriers exist in the Certi-Label cedar shakes and shingles market.

233.    As a general principle, cartelized industries are vulnerable to the entry of new firms that take advantage of the elevated price levels maintained by the cartel, while at the same time stealing market share from the cartel. In markets with high barriers to entry, however, this threat to established cartels is minimized. Hence, such industries are more susceptible to collusion.

234.    There are significant barriers to entering the United States market for Certi-Label cedar shakes and shingles. This reality makes it difficult for upstart and potential competitors to enter the market in a meaningful way in order to offer competitive prices for these cedar shakes and shingles to purchasers.

235.    Primary among these barriers to entry are access and proximity to raw materials. British Columbia has the world's largest stock of standing Western Red Cedar, and forests in British Columbia are largely owned by the provincial government. The British Columbian government significantly restricts the export of logs of Western Red Cedar and Alaskan Yellow Cedar, effectively restricting virtually any exports of this raw material. It further restricts the "allowable annual cut" and thus the limited availability of access to raw materials is a barrier to entry for potential new competitors into this market.[4] Additionally, the government restricts

---

[4] Alternatively, a CSS manufacturer could obtain its raw materials by purchasing product from those who scavenge previously-harvested land or engage in unlicensed logging operations, both of which are fraught with legal risks. *See, e.g.*, Craig Sailor, Old-growth stumps and burls command high prices in furniture, landscape enterprise (The News Tribune, Feb. 25, 2015), https://www.thenewstribune.com/living/home-garden/article26259163.html (noting that the cedar stumps and logs left after logging operations were "mostly worthless to the logging industry" and "[a]t best . . .used for shakes and shingles"); Monique Keiran, High-value theft targets: trees (Times Colonist, Sept. 23, 2018), https://www.timescolonist.com/opinion/columnists/high-value-theft-targets-trees-1.23439939

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 54

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

available land for timber and requires leases. Much of the land has already been leased on a long-term basis to certain firms, all of whom have rights to renew those leases and do so regularly.

236.   Although raw materials for CSS are found in the United States, that supply is declining as well. In Idaho and Washington, cedar makes up only a very small percentage of the standing timber inventory, and it is not possible to acquire large tracts of land to produce more raw materials necessary for the production of CSS.

237.   Overall, the number of CSS manufacturers has declined significantly in the last two decades, in part because of declining supply of cedar logs and blocks suitable for making CSS. All or nearly all of the remaining CSS mills operate only in Washington, Idaho, Alaska or British Columbia.

238.   Furthermore, within the CSS market there are significant barriers to entering the Certi-Label CSS segment, which make it difficult to impossible for potential entrants to compete against members of the alleged conspiracy in a meaningful way.

239.   Most importantly, in order to sell any Certi-Label CSS a manufacturer must join the CSSB. By agreeing to refuse membership in the CSSB, established manufacturers can easily prevent new competitors from entering the market for Certi-Label CSS. Even if an upstart or potential competitor managed to gain entry to CSSB to participate in the Certi-Label CSS market, that competitor could not deviate from the price-fixing conspiracy implemented by the Defendants and gain substantial market share through price competition. Otherwise, that competitor would be expelled from the CSSB, as was S&W in December 2018.

("Illegal logging costs B.C. between $10 million and $20 million in lost revenue every year. Under the B.C. Forest Act, anyone found committing an offence can receive a fine of up to $500,000 and face up to two years in jail. Offences under the Forest and Range Practices Act can result in fines up to $1 million and up to three years in jail.").

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 55

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

### D.   The performance observed in the Certi-Label cedar shakes and shingles industry makes the conspiracy economically plausible.

#### 1.   The prices of Certi-Label cedar shakes and shingles since at least 2011 cannot be explained by ordinary market forces.

240.   Since at least January 1, 2011, the prices of Certi-Label cedar shakes and shingles have risen, and this rise cannot be fully explained by normal market forces such as increased raw material costs or increased demand.

241.   Since at least January 1, 2011, there has been a consistent increase in the prices of Certi-Label cedar shingles and shakes. For example, as shown in the chart below, prices of Number 1 Grade products have surpassed pre-recession levels, with certain products experiencing 10 percent year-over-year price increases.

### Chart 1
### Price per Square of Number 1 Grade Cedar Shingles and Shakes[5]



---

[5] Weekly price series as reported by Random Lengths Publications, Inc.

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 56

LAW OFFICES OF
MᴄNᴀᴜʟ Eʙᴇʟ Nᴀᴡʀᴏᴛ & Hᴇʟɢʀᴇɴ ᴘʟʟᴄ
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

242.    Similarly, the price of the lower quality Grade 2 has also increased markedly since 2011, as illustrated in the chart below:

**Chart 2**
**Price per Square of Number 2 Grade Cedar Shingles**[6]



243.    The increase in prices for finished Certi-Label cedar shingles and shakes contrasts with much lower price increases for softwood lumber, the main raw material and cost input for these products, as well as the export price of Canadian coniferous timber over the same period. The following chart shows the:

- Producer Price Index ("PPI") for commodity data for lumber and wood products, covering wood ties, siding, shingles, and shakes, and contract sawing of logs owned by others;

- PPI for industry data for sawmills, covering wood ties, siding, shingles, and shakes, and contract sawing of logs owned by others, not seasonally adjusted; and

---

[6] Weekly price series as reported by Random Lengths Publications, Inc.

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 57

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1

2

- Average Canadian export price index for coniferous industrial roundwood other than fir or spruce or pine (USD).

3

**Chart 3**
**Producer Price Indices for Softwood Lumber and Sawmill Shingle**
**and Shake Products vs Price of Canadian Softwood Timber**[7]



PPI (Commodity) - Softwood Lumber
PPI (Industry) - Sawmills - Wood ties, siding, shingles, and shakes, and contract sawing of logs owned by others
Average canadian export price index - Coniferous industrial roundwood other than fir or spruce or pine (USD)

244.    Comparing the above series shows that prices for cedar shingles and shakes have grown far more rapidly than the prices of other softwood lumber inputs and the price of Canadian timber. This disparity in price increases is also indicated by the following chart:

---

[7] US Bureau of Labor Statistics, "PPI industry data for Sawmills-Wood ties, siding, shingles, and shakes, and contract sawing of logs owned by others, not seasonally adjusted" and "PPI Commodity data for Lumber and wood products-Wood ties, siding, shingles, and shakes, and contract sawing of logs owned by others, not seasonally adjusted."   United Nations Economic Commission for Europe, Food and Agriculture Organization of the United Nations, TIMBER database (series: Coniferous industrial roundwood other than fir or spruce or pine).

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 58

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816





**Chart 4**
**Index of Cedar Shingles and Shakes Prices vs Input Prices[8]**

245.     Moreover, tariffs recently being considered for softwood lumber imports from Canada also do not explain the price increase in cedar shakes and shingles, since those tariffs have not actually been implemented. While a September 2018 decision from the International Trade Administration ("ITA") suggested that these producers were encompassed by a January 2018 tariff order, manufacturers formed a Shake and Shingle Alliance ("SSA") to challenge the ITA's decision. On November 8, 2018, SSA sued to challenge the ITA decision in the Court of

---

[8] US Bureau of Labor Statistics, "PPI industry data for Sawmills-Wood ties, siding, shingles, and shakes, and contract sawing of logs owned by others, not seasonally adjusted" and "PPI Commodity data for Lumber and wood products-Wood ties, siding, shingles, and shakes, and contract sawing of logs owned by others, not seasonally adjusted."   United Nations Economic Commission for Europe, Food and Agriculture Organization of the United Nations, TIMBER database (series: Coniferous industrial roundwood other than fir or spruce or pine). Weekly price series as reported by Random Lengths Publications, Inc.

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 59

LAW OFFICES OF
MᴄNᴀᴜʟ Eʙᴇʟ Nᴀᴡʀᴏᴛ & Hᴇʟɢʀᴇɴ ᴘʟʟᴄ
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

International Trade. Information from the International Trade Commission currently shows cedar shakes and shingles being free of any such tariff.

**2. Cedar shakes and shingles inventories have significantly increased in recent years compared to production levels.**

246. One indicia of anticompetitive behavior in an industry is unexplained increases in inventories of a commodity product. During the class period, this indicia was present.

247. Further evidence that the price increases for CSS are not explained by normal market conditions is provided in the chart below, which contains a monthly comparison of the value of inventory of cedar shakes and siding to the value of cedar shakes and shingles manufactured each month. The manufacture of new cedar shakes and shingles began declining in 2009 and remained relatively low through 2016. However, in the 2011-2012 period, the inventories of cedar shakes and shingles maintained by these manufacturers started to stabilize and then increase substantially. At the same time, as seen above, prices for shakes and shingles were generally increasing over this time period. In a competitive market, manufacturers would opt to sell at a lower price rather than accumulate inventory. This build-up of inventory is suggestive of anti-competitive restrictions by manufacturers of cedar shakes and shingles in order to maintain or increase prices.

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 60



248.    The above charts and resulting analysis reveal that prices for Certi-Label cedar shingles and shakes have displayed a consistent increase since 2011 when, all else being equal, one would expect a decline as explained below.

**E.    Traditional conspiracy evidence demonstrates the conspiracy's existence.**

249.    Under the auspices of the Certi-Label labeling program, which accounts for the vast majority of cedar shakes and shingles sold in the United States, Defendants and their co-conspirators enacted a scheme to fix pricing and exclude competitive threats from the market.

250.    As noted above, due to consolidation and the weighted voting structure of the CSSB, Manufacturer Defendants have obtained a concentration of power in the CSSB. Manufacturer Defendants increased their collective voting power through a series of Board actions in November 2016, November 2017, and November 2018. As a result of these actions, Manufacturer Defendants, along with their co-conspirators, now effectively control the CSSB

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 61

1  vote.

2      251.   On information and belief, no later than January 1, 2011 and continuing through

3  the present, Defendants and their co-conspirators conspired to fix prices for Certi-Label cedar

4  shakes and shingle products sold into the United States market.

5      252.   Manufacturer Defendants—the largest member manufacturers of the Board of

6  Directors—did this by agreeing among themselves and their co-conspirators (and potentially

7  others) on prices and price levels to charge for Certi-Label cedar shakes and shingles. As part of

8  this illicit scheme, Defendants also pressured other CSSB members to hold their prices at

9  consistent levels and not lower them or offer discounts to customers.

10     253.   As part of the same anticompetitive scheme, Manufacturer Defendants and CSSB,

12 along with their co-conspirators, conspired to eliminate or discipline other CSSB members who

13 compete on price and who are unwilling to follow the price leadership of Manufacturer

14 Defendants. As explained earlier, the CSSB—through its ownership of the Certi-Label

15 trademark, its aggressive promotion of the CSSB-97 standard and the "Certi" brand, and its

16 anti-competitive rules and bylaws (including the "All or Nothing Rule")—has created an

17 environment in which CSSB membership is indispensable for the commercial viability of CSS

18 mills in North America. This situation has enabled Defendants and their co-conspirators to

19 punish manufacturers that do not comply with their price-fixing conspiracy by expelling them

20 from the CSSB.

21     254.   This blatantly anticompetitive and illegal motivation resulted in the CSSB Board

22 of Directors voting to terminate the membership of S&W on December 21, 2018, a membership

23 that S&W had held for 24 years dating back to 1994.

24     255.   In a lawsuit filed against Waldun, Anbrook and CSSB in this District on February

25 13, 2019, S&W alleges it was expelled from the CSSB for undercutting the pricing set by

26 Defendants and others pursuant to the conspiracy. As S&W alleges in its proposed second

27 amended complaint, based on its own knowledge and experience, "[t]hroughout the last 10 years,

28

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 62

Waldun's Curtis Walker and Anbrook's Brooke Meeker have regularly conspired to fix prices in the U.S. market for high-end cedar shakes and shingles."

256.   S&W specifically alleges that the reason it was terminated from the CSSB was that S&W would not participate in the price-fixing conspiracy. According to S&W, it was forced out of the CSSB during a "hastily convened special meeting by telephone conference call" involving presently unknown members of the CSSB Board of Directors. S&W maintains that the purported reason for its expulsion—a mislabeling violation—is false, pretextual, and unsupported: "Despite these facts, several CSSB Directors who are executives with Waldun, Anbrook and a number of other large member mills successfully secured a three-fourths vote in favor of terminating S&W's CSSB membership, not because of a mislabeling violation but in pursuit of their conspiracy to eliminate a competitor unwilling to engage in price fixing or collusion."

257.   Intertek's inspector Wayne Rourke in fact testified in a declaration that S&W's purported mislabeling violation based on use of a "specialty cut label" was in fact common practice among multiple CSSB member mills, which has been accepted and approved by Intertek for over 15 years. Other companies who remain CSSB members who used the specialty cut label were not excluded from the CSSB as S&W was. This reflects that the CSSB's decision to boycott S&W from the bureau was pretextual, arbitrary, and illegitimate.

258.   A sales manager at a wholesale company with whom Plaintiffs' counsel has spoken in connection with this matter echoes S&W's assessment. This person claims he heard that S&W got kicked out of CSSB "over a fairly minor thing" involving a specialty cut product.

259.   Kris Watkins, Chief of Operations of Watkins, submitted a declaration in support of the S&W Forest Products lawsuit in which he describes a December 5, 2018, discussion between Mr. Watkins and Waldun's Curtis Walker. During a visit that Mr. Walker made to Mr. Watkins' office, one of the issues discussed was "shake and shingle pricing." In response to Mr. Watkins' comment that his company had decided to absorb some of the impact of a tariff

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 63

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1  rather than pass it all on to customers, "Mr. Walker told me that we should not have done this and

2  that Waldun Forest Products never dropped their pricing."

3      260.  Mr. Watkins continued in his declaration: "This conversation about pricing

4  continued with Mr. Walker arguing that CSSB mills should hold their prices at consistent levels.

5  I disagreed and told him such an approach was unrealistic because the smaller self-financed mills

6  needed to drop their prices during times like winter slowdowns when cash flow was reduced in

7  order to generate operating cash. Mr. Walker stated that he did not believe that many CSSB mills

8  would do this. I countered that S&W Forest Products did it from time to time because I recalled

9  specific situations where we offered shake or shingle products from S&W at discounted prices

10  because Michael Watkins [Kris Watkins' relative] stated that the company needed to generate the

12  cash flow. In response, Mr. Walker appeared very agitated and said: 'yeah, well we just need to

13  get rid of that guy.'"

14      261.  On information and belief, and as alleged in S&W's second amended complaint,

15  other manufacturers besides S&W have been excluded or removed from the CSSB as a result of

16  not participating in the alleged anticompetitive pricing conspiracy.

17      262.  A significant number of these Former CSSB Members were expelled from the

18  CSSB because they refused to comply with the conspiracy. For example, Plaintiff is aware of at

19  least one other CSS manufacturer that the Defendants expelled from the CSSB because it refused

20  to comply with a demand made by one of the Manufacturer Defendants regarding the price at

21  which it would sell Certi-Label CSS. Defendants use expulsion from the CSSB as a threat to

22  members who fail to comply with their price fixing conspiracy.

23      263.  Even before the Class Period, the Manufacturer Defendants were working on

24  using the power of the CSSB to control pricing of Certi-Label CSS. For example, a former CSSB

25  member explained that Curtis Walker would often prod that former member to "get your prices

26  up" and criticized it for selling "too cheap" a few years before the Class Period began. When that

27  former CSSB member did not modify its behavior, the CSSB took an arbitrary disciplinary

28

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 64

LAW OFFICES OF
McNaul Ebel Nawrot & Helgren PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1     action against it (based on the "All or Nothing Rule"), which ultimately resulted in the member

2     leaving the CSSB. This early episode reflects the power the Defendants were beginning to

3     develop and wield through the CSSB against would-be competitors.

4           264.   The Manufacturer Defendants exercised their control over other CSSB-members

5     mills using the CSSB and its Certi-Label brand in other ways as well. For example, a Former

6     CSSB Member confirmed that the S&W expulsion was standard operating procedure for any

7     company that crossed the Manufacturer Defendants. This Former CSSB Member stated that

8     Waldun's Walker, in concert with the CSSB Board of Directors and his brother, Clay Walker,

9     expelled his company from the CSSB because he refused to sell product at a loss to Waldun. The

10     day after this refusal, CSSB's Clay Walker arrived at this Former CSSB Member's facility and

12     confiscated all of his Certi-Label tags. Roughly one week later, the CSSB expelled this Former

13     CSSB Member from the CSSB because he was allegedly violating CSSB-97. This Former CSSB

14     Member promptly called Waldun's Walker and asked him why he had been expelled from the

15     CSSB; Walker responded: "Because you made me mad, that's why!"

16           265.   Smaller mills in fact frequently sell to the larger Manufacturer Defendants, who

17     purchase almost all of the product made by these smaller mills. The Manufacturer Defendants

18     threaten smaller mills to sell product to them at cheaper costs.  If the smaller mills do not

19     comply, they risk expulsion from the CSSB, which in turn could force them out of business

20     entirely because they no longer would have access to the "Certi" brand and the resources of the

21     CSSB, including the inspection guaranty by Intertek. This is another way in which Defendants

22     maintain power and influence over member mills through the threat of exclusion.

23           266.   Indeed, the CSSB and the Manufacturer Defendants' exclusionary conduct is so

24     well known in the CSS industry that another Former CSSB Member colloquially referred to them

25     as the "Mafia," and others in the industry have an understanding that the relationship between

26     CSSB's Clay Walker and Waldun's Walker allow the Defendants to easily punish companies,

27     such as S&W, that deviate from the Manufacturer Defendants' edicts by creating pretextual

28

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 65

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

justifications to expel these would-be-competitors from the CSSB. Another Former CSSB Member called the CSSB the "police force"—referring to how the CSSB polices and enforces the cartel's dictates.

267. The Former CSSB Members include at least another twenty (20) CSS manufacturers (in addition to S&W) that have left the CSSB since 2012. A large (but yet unknown) number of these Former CSSB Members are no longer in business.

268. The economic consequences for would-be competitors that are expelled from the CSSB are significant and potentially fatal to their business. CSSB members therefore joined the Bureau, remained in it, and participated in the alleged conspiracy in order to avoid this fate. A coerced price fixing agreement such as this one is actionable under the Sherman Act.

269. For instance, in the S&W Lawsuit, S&W alleged that it would be forced out of business in a matter of months if not re-admitted to the CSSB. S&W stated this was the case because it would be forced to charge 15–25% less for non-Certi-Label shakes and shingles than for Certi-Label products. In support of this allegation, S&W attached three invoices that showed price differences of between roughly 18% and roughly 38%.

270. Aside from being unable to sell Certi-Label CSS, boycotted former CSSB members also suffered other retaliation by the CSSB. For example, former CSSB members have reported that the CSSB has interfered with their opportunities to sell to certain customers. One of the ways the CSSB has done so is by having CSSB-affiliated distributors tell the former CSSB members that the distributor's customers will not purchase non-CSSB certified CSS, but when those former CSSB members contact the customers directly they learn this is not the case. Additionally, a former CSSB member recently learned that a CSSB-affiliated distributor at a trade show in Florida called Waldun to send an inspector when it learned that a customer had purchased CSS from the former CSSB member. Waldun's Walker also would contact former CSSB members' customers and insulted and disparaged those companies' products. Retaliating against former CSSB members in such ways was another tool the CSSB and Manufacturer

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 66

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

Defendants used to ensure that current members did not defect from the CSSB or the price-fixing conspiracy.

271.   The CSSB also uses its district managers to police and discourage the use of non-Certi-Label CSS by contractors and others. Among other things, the CSSB's Clay Walker travels with other district managers to purportedly educate contractors, architects, designers, and others about Certi-Label products. As result, the CSSB had been able to influence customers and others to stop the use of non-Certi-Label CSS—sometimes even mid-construction. The CSSB's powerful education campaign to tout the CSSB and Certi-Label CSS further discourages members from doing anything that could get them boycotted from the CSSB and precluded from the use of this trademark.

272.   CSSB members knew that if they undermined the CSSB or the Manufacturer Defendants, such as by offering competitive pricing or in other ways defecting from the CSSB's and the Manufacturer Defendants' positions, they risked significant harm to their business in the form of potentially being boycotted from the CSSB and retaliated against in other ways as well.

273.   In addition, the CSSB and Manufacturer Defendants also knew that they could use the potential to boycott major would-be competitors as a "carrot" for other member mills, by suggesting that member mills would gain the business lost by boycotted mills who could no longer use the Certi-Label.

274.   In addition to these detailed allegations of how Defendants used the CSSB to implement and police the anticompetitive conspiracy described herein, Plaintiffs also have evidence demonstrating explicit price-fixing discussions among and between the Manufacturer Defendants.

275.   For instance, Len Taylor, the President and Owner of Taylor Forest Products, Inc., submitted a declaration in support of the S&W Forest Products lawsuit. Mr. Taylor testified about a conversation he overheard during a visit with G&R's Sale Manager, Stuart Dziedzic ("Dziedzic") at an unknown point in the last five years. According to Taylor, when he arrived,

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 67

Dziedzic was finishing a phone call, and when he got off the phone, he told Taylor that some competitors were being tough on him and wanted him to raise G&R's CSS prices.

276.    While Mr. Taylor cannot remember the month or year of this meeting, he distinctly recalls what happened during it. Mr. Taylor was waiting in Mr. Dziedzic's office while Mr. Dziedzic was finishing a telephone call. When Mr. Dziedzic got off the phone, Mr. Dziedzic said that some competitors were being tough on him and wanted him to raise G&R's cedar shake and shingle prices.

277.    Mr. Taylor is 100% certain that Mr. Dziedzic told him that the call was from either Anbrook's Brooke Meeker or Waldun's Curtis Walker, but he cannot remember which of the two was the person who called him. However, Taylor testified that "it was very clear from Mr. Dziedzic's statements to me that he was referring to pressure from the two of them together based upon the call he got from either Ms. Meeker or Mr. Walker"—*i.e.*, both Defendant Anbrook and Defendant Waldun.

278.    Both G&R's Dziedzic and Anbrook's Meeker submitted opposing declarations, but neither made any attempt to refute Taylor's sworn declaration.

279.    Defendants' and co-conspirators' collusive conduct had the intended purpose and effect of increasing the price of Certi-Label cedar shakes and shingles sold to Plaintiffs and the other members of the Classes.

280.    On information and belief, the Manufacturer Defendants also exchanged commercially-sensitive pricing information.

281.    One former CSSB member said that it is well known that Waldun's Curtis Walker calls around to other member mills to exchange pricing information. Among others, in the last ten years, Waldun's Walker spoke with Pacific Cedar's Vice President Kathy Klassen and Goat Lake Cedar's owner Bill Maitland about raising prices to levels suggested by Walker.

282.    In addition, another former CSSB member confirmed that, during the Class Period, CSSB made a "real push" to keep "tariffs up" (*i.e.*, prices), particularly for product going

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 68

to the East Coast.

283.    As the United States government delegation stated to the Organization for Economic Cooperation & Development's Competition Committee in a 2010 report, "certain information exchanges among competitors may violate Section 1 of the Sherman Act, which prohibits a 'contract, combination . . . or conspiracy' that unreasonably restrains trade."[9] The United States government noted that "[i]n addition to serving as evidence of an unlawful agreement, information exchanges likely to affect prices may, under certain circumstances, be illegal in and of themselves."

284.    Even if the information exchange is not itself an unlawful agreement, it can be powerful evidence of an agreement to fix prices because "[t]he antitrust concern is that information exchanges may facilitate anticompetitive harm by advancing competing sellers' ability either to collude or to tacitly coordinate in a manner that lessens competition. Thus, for example, exchanges on price may lead to illegal price coordination." The United States delegation also noted that actual evidence of competitive harm, such as industry-wide price movements resulting from the exchange are a strong factor in finding illegality. Other identified factors that may be considered include: "extensive exchange of information regarding pricing, . . . marketing strategies[, which] is more likely to have anticompetitive implications" as well as "[t]he parties' intent in sharing the information (an anticompetitive intent, such as an intent to stabilize prices, is problematic)."

285.    By communicating with competitors and exchanging information about prices and encouraging competitors to raise prices, Defendants intended to and had the effect of raising prices for Certi-Label™ CSS, as described below.

---

[9] *U.S. Submissions to the Organization for Economic Cooperation and Development (OECD) Competition Committee*, UNITED STATES DEPT. OF JUSTICE, https://www.justice.gov/atr/us-oecd-submissions-competition-policy (last visited Aug. 16, 2019). The presentation was principally authored by the DOJ and is part of a list of such submissions on its website.

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 69

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

286.    To the extent that any of the challenged conduct occurred under the auspices of the CSSB, it is not immunized from the antitrust laws. Trade associations can readily be utilized as a vehicle for conspiracy. As the United States Federal Trade Commission ("FTC") has said:

> [F]orming a trade association does not shield joint activities from antitrust scrutiny: Dealings among competitors that violate the law would still violate the law even if they were done through a trade association. For instance, *it is illegal to use a trade association to control or suggest prices of members*. It is illegal to use information-sharing programs, or standardized contracts, operating hours, accounting, safety codes, or transportation methods, as a disguised means of fixing prices.
>
> One area for concern is exchanging price or other sensitive business data among competitors, whether within a trade or professional association or other industry group. Any data exchange or statistical reporting that includes current prices, or information that identifies data from individual competitors, can raise antitrust concerns if it encourages more uniform prices than otherwise would exist.[10]

287.    Furthermore, as explained in the DOJ's and FTC's joint guidelines on collaborations among competitors:

> *Marketing collaborations may involve agreements on price, output, or other competitively significant variables, or on the use of competitively significant assets, such as an extensive distribution network, that can result in anticompetitive harm.* Such agreements can create or increase market power or facilitate its exercise by limiting independent decision making; by combining in the collaboration, or in certain participants, control over competitively significant assets or decisions about competitively significant variables that otherwise would be controlled independently; or by combining financial interests in ways that undermine incentives to compete independently. For example, joint promotion might reduce or eliminate comparative advertising, thus harming competition by restricting information to consumers on price and other competitively significant variables.[11]

## VII.    CLASS ACTION ALLEGATIONS

288.    Plaintiffs brings this action on behalf of themselves, and as a class action under

---

[10]    https://www.ftc.gov/tips-advice/competition-guidance/guide-antitrust-laws/dealings-competitors/spotlight-trade. (Emphasis added).

[11] DOJ-FTC Guidelines at 14 (Emphasis added).

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 70

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

the Federal Rules of Civil Procedure, Rule 23(a), (b)(2) and (b)(3), seeking injunctive relief

pursuant to federal law, and damages pursuant to various state antitrust, unfair competition,

unjust enrichment, and consumer protection laws of the states listed below on behalf of the

members of the following classes:

**Nationwide class**: All persons and entities who indirectly purchased Certi-Label cedar shakes and shingles from Defendants or co-conspirators for resale in the United States during the Class Period.

**Alaska class**: All persons and entities who indirectly purchased Certi-Label cedar shakes and shingles from Defendants or co-conspirators for resale in Alaska during the Class Period.

**Arizona class**: All persons and entities who indirectly purchased Certi-Label cedar shakes and shingles from Defendants or co-conspirators for resale in Arizona during the Class Period.

**Arkansas class**: All persons and entities who indirectly purchased Certi-Label cedar shakes and shingles from Defendants or co-conspirators for resale in Arkansas during the Class Period.

**California class**: All persons and entities who indirectly purchased Certi-Label cedar shakes and shingles from Defendants or co-conspirators for resale in California during the Class Period.

**Colorado class**: All persons and entities who indirectly purchased Certi-Label cedar shakes and shingles from Defendants or co-conspirators for resale in Colorado during the Class Period.

**Delaware class**: All persons and entities who indirectly purchased Certi-Label cedar shakes and shingles from Defendants or co-conspirators for resale in Delaware during the Class Period.

**District of Columbia class**: All persons and entities who indirectly purchased Certi-Label cedar shakes and shingles from Defendants or co-conspirators for resale in the District of Columbia during the Class Period.

**Florida class**: All persons and entities who indirectly purchased Certi-Label cedar shakes and shingles from Defendants or co-conspirators for resale in Florida during the Class Period.

**Georgia class**: All persons and entities who indirectly purchased Certi-Label cedar shakes and shingles from Defendants or co-conspirators for resale in Georgia during the Class Period.

**Hawaii class**: All persons and entities who indirectly purchased Certi-Label cedar shakes and shingles from Defendants or co-conspirators for resale in Hawaii during the Class Period.

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 71

**Illinois class**: All persons and entities who indirectly purchased Certi-Label cedar shakes and shingles from Defendants or co-conspirators for resale in Illinois during the Class Period.

**Iowa class**: All persons and entities who indirectly purchased Certi-Label cedar shakes and shingles from Defendants or co-conspirators for resale in Iowa during the Class Period.

**Kansas class**: All persons and entities who indirectly purchased Certi-Label cedar shakes and shingles from Defendants or co-conspirators for resale in Kansas during the Class Period.

**Maine class**: All persons and entities who indirectly purchased Certi-Label cedar shakes and shingles from Defendants or co-conspirators for resale in Maine during the Class Period.

**Massachusetts class**: All persons and entities who indirectly purchased Certi-Label cedar shakes and shingles from Defendants or co-conspirators for resale in Massachusetts during the Class Period.

**Michigan class**: All persons and entities who indirectly purchased Certi-Label cedar shakes and shingles from Defendants or co-conspirators for resale in Michigan during the Class Period.

**Minnesota class**: All persons and entities who indirectly purchased Certi-Label cedar shakes and shingles from Defendants or co-conspirators for resale in Minnesota during the Class Period.

**Mississippi class**: All persons and entities who indirectly purchased Certi-Label cedar shakes and shingles from Defendants or co-conspirators for resale in Mississippi during the Class Period.

**Missouri class**: All persons and entities who indirectly purchased Certi-Label cedar shakes and shingles from Defendants or co-conspirators for resale in Missouri during the Class Period.

**Montana class**: All persons and entities who indirectly purchased Certi-Label cedar shakes and shingles from Defendants or co-conspirators for resale in Montana during the Class Period.

**Nebraska class**: All persons and entities who indirectly purchased Certi-Label cedar shakes and shingles from Defendants or co-conspirators for resale in Nebraska during the Class Period.

**Nevada class**: All persons and entities who indirectly purchased Certi-Label cedar shakes and shingles from Defendants or co-conspirators for resale in Nevada during the Class Period.

**New Hampshire class**: All persons and entities who indirectly purchased Certi-Label cedar shakes and shingles from Defendants or co-conspirators for resale in New Hampshire during the Class Period.

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 72

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

**New Mexico class**: All persons and entities who indirectly purchased Certi-Label cedar shakes and shingles from Defendants or co-conspirators for resale in New Mexico during the Class Period.

**New York class**: All persons and who indirectly purchased Certi-Label cedar shakes and shingles from Defendants or co-conspirators for resale in New York during the Class Period.

**North Carolina class**: All persons and entities who indirectly purchased Certi-Label cedar shakes and shingles from Defendants or co-conspirators for resale in North Carolina during the Class Period.

**North Dakota class**: All persons and entities who indirectly purchased Certi-Label cedar shakes and shingles from Defendants or co-conspirators for resale in North Dakota during the Class Period.

**Oregon class**: All persons and entities who indirectly purchased Certi-Label cedar shakes and shingles from Defendants or co-conspirators for resale in Oregon during the Class Period.

**Rhode Island class**: All persons and entities who indirectly purchased Certi-Label cedar shakes and shingles from Defendants or co-conspirators for resale in Rhode Island during the Class Period.

**South Carolina class**: All persons and entities who indirectly purchased Certi-Label cedar shakes and shingles from Defendants or co-conspirators for resale in South Carolina during the Class Period.

**South Dakota class**: All persons and entities who indirectly purchased Certi-Label cedar shakes and shingles from Defendants or co-conspirators for resale in South Dakota during the Class Period.

**Tennessee class**: All persons and entities who indirectly purchased Certi-Label cedar shakes and shingles from Defendants or co-conspirators for resale in Tennessee during the Class Period.

**Utah class**: All persons and entities who indirectly purchased Certi-Label cedar shakes and shingles from Defendants or co-conspirators for resale in Utah during the Class Period.

**Vermont class**: All persons and entities who indirectly purchased Certi-Label cedar shakes and shingles from Defendants or co-conspirators for resale in Vermont during the Class Period.

**Virginia class**: All persons and entities who indirectly purchased Certi-Label cedar shakes and shingles from Defendants or co-conspirators for resale in Virginia during the Class Period.

**West Virginia class**: All persons and entities who indirectly purchased Certi-Label cedar shakes and shingles from Defendants or co-conspirators for resale in West Virginia during the Class Period.

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 73

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

**Wisconsin class**: All persons and entities who indirectly purchased Certi-Label cedar shakes and shingles from Defendants or co-conspirators for resale in Wisconsin during the Class Period

289.    Specifically excluded from the Classes are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded from the Classes are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and any co-conspirator identified in this action. Further excluded from the Classes are purchases of value-added products not manufactured, supplied or processed by Defendants, or otherwise not under the control of Defendants.

290.    **Class Period:** The Class Period (also referenced as the Conspiracy Period herein) is defined as January 1, 2011 to the present. Additional discovery may reveal that the conduct alleged in this Complaint commenced at an earlier time, and Plaintiffs reserve all rights to amend this complaint as appropriate.

291.    **Class Identity:** The above-defined Classes are readily identifiable and are ones for which records should exist.

292.    **Numerosity:** Plaintiffs do not know the exact number of the members of the Classes because such information presently is in the exclusive control of Defendants, retailers, resellers and other entities in the supply chain of Certi-Label cedar shakes and shingles. Plaintiffs believe that due to the nature of the trade and commerce involved, there are hundreds or thousands of members of the Classes geographically dispersed throughout the United States, such that joinder of all members of the Classes is impracticable.

293.    **Typicality**: Plaintiffs' claims are typical of the claims of the members of the Classes because Plaintiffs purchased Certi-Label cedar shakes and shingles indirectly from one or more of the Defendants for resale to end users, and therefore Plaintiffs' claims arise from the same common course of conduct giving rise to the claims of the Classes and the relief sought is

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 74

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1  common to the Classes.

2  294.  **Common questions exist and predominate over any individual questions:**

3  There are questions of law and fact common to the Classes, including, but not limited to:

4  295.  Whether Defendants and their co-conspirators engaged in an agreement,

5  combination, or conspiracy to fix, raise, elevate, maintain, or stabilize prices of Certi-Label cedar

6  shakes and shingles sold in interstate commerce in the United States;

7      a.  The identity of the participants of the alleged conspiracy;

8      b.  The duration of the conspiracy alleged herein and the acts performed by

9          Defendants and their co-conspirators in furtherance of the conspiracy;

10      c.  Whether the alleged conspiracy violated federal antitrust law;

12      d.  Whether the alleged conspiracy violated the antitrust and consumer protection

13          laws of the various states;

14      e.  Whether the conduct of Defendants and their co-conspirators, as alleged in this

15          Complaint, caused injury to the business or property of the Plaintiffs and the other

16          members of the Classes;

17      f.  The effect of Defendants' alleged conspiracy on the prices of Certi-Label cedar

18          shakes and shingles sold in the United States during the Class Period;

19      g.  Whether Plaintiffs and other members of the Classes are entitled to, among other

20          things, injunctive relief and if so, the nature and extent of such injunctive relief;

21          and

22      h.  The appropriate class-wide measure of damages.

23  296.  These and other questions of law and fact, which are common to the members of

24  the Classes, predominate over any questions affecting only individual members of the Classes.

25  297.  **Adequacy:** Plaintiffs will fairly and adequately protect the interests of the Classes

26  in that Plaintiffs' interests are aligned with, and not antagonistic to, those of the other members

27  of the Classes who indirectly purchased cedar shakes and shingles from Defendants or co-

28

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 75

conspirators for resale, and Plaintiffs have retained counsel competent and experienced in the prosecution of class actions and antitrust litigation to represent themselves and the Classes.

298.    **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual joinder of all damaged members of the Classes is impractical. Prosecution as a class action will eliminate the possibility of duplicative litigation. The relatively small damages suffered by individual members of the Classes compared to the expense and burden of individual prosecution of the claims asserted in this litigation means that, absent a class action, it would not be feasible for members of the Classes to seek redress for the violations of law herein alleged. Further, individual litigation presents the potential for inconsistent or contradictory judgments and would greatly magnify the delay and expense to all parties and to the court system. Accordingly, a class action presents far fewer case management difficulties and will provide the benefits of unitary adjudication, an economy of scale, and comprehensive supervision by a single court.

299.    The prosecution of separate actions by individual members of the Classes would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

300.    Plaintiffs bring this action on behalf of all persons similarly situated pursuant to Rule 23, on behalf of all persons and entities that, as residents of various states, indirectly purchased one or more Certi-Label cedar shakes or shingles that a Defendant or co-conspirator manufactured for resale during the Class Period.

301.    Defendants have acted on grounds generally applicable to the Classes, thereby making final injunctive relief appropriate with respect to the Classes as a whole.

## VIII.   ANTITRUST INJURY

302.    In an efficient market, manufacturers of Certi-Label cedar shakes and shingles would compete on price to keep or increase their market share. For example, a company might choose to absorb some of the impact of tariffs rather than passing the price increase to the

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 76

customers. Similarly, smaller self-financed mills may need to drop their prices during winter slowdowns to generate operating cash.

303.    Defendants' anticompetitive conduct had the following effects, among others:

a.   Price competition has been restrained or eliminated with respect to Certi-Label cedar shakes and shingles;

b.   The prices of Certi-Label cedar shakes and shingles have been fixed, raised, stabilized, or maintained at artificially inflated levels; and

c.   Purchasers of Certi-Label cedar shakes and shingles have been deprived of free and open competition among cedar shake and shingle manufacturers.

304.    The purpose of the conspiratorial conduct of Defendants and their co-conspirators was to raise, fix, or maintain the price of cedar shakes and shingles and, as a direct and foreseeable result, Plaintiffs and the other members of the Classes paid supra-competitive prices for Certi-Label cedar shakes and shingles during the Class Period.

305.    By reason of the alleged violations of the antitrust and other laws, Plaintiffs and the other members of the Classes have sustained injury to their businesses or property, having paid higher prices for Certi-Label cedar shakes and shingles than they would have paid in the absence of Defendants' illegal contract, combination, or conspiracy, and as a result have suffered damages.

306.    This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

## IX.   FRAUDULENT CONCEALMENT AND TOLLING

307.    Plaintiffs had neither actual nor constructive knowledge of the facts constituting its claim for relief.

308.    Plaintiffs and the other members of the Classes did not discover, nor could have discovered through the existence of reasonable diligence, the existence of the conspiracy alleged herein until on or about February 13, 2019, the date on which S&W Forest Products filed its

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 77

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

antitrust complaint and exposed particularized allegations of collusion among Defendants.

309.    Defendants and their co-conspirators engaged in a secret conspiracy that did not reveal facts that would put Plaintiffs and the other members of the Classes on inquiry notice that there was a conspiracy to fix the prices of cedar shakes and shingles.

310.    Accordingly, Plaintiff scould not have had either actual or constructive knowledge of the conspiracy until the S&W complaint was filed.

311.    Furthermore, Defendants and their co-conspirators took active steps to conceal the conspiracy and prevent Plaintiffs and the other members of the Classes from discovering its existence until the S&W complaint was filed. For example, to discuss and implement the conspiracy, Defendants and their co-conspirators met in private at their places of business and during CSSB meetings that were not open to the public. They also discussed the conspiracy during private telephone calls. Finally, Defendants and their co-conspirators did not reveal in their price increase announcements or otherwise that a reason for the price increases and price levels during the Class Period was the anticompetitive conspiracy described herein.

312.    Because the alleged conspiracy was kept secret, Plaintiffs and the other members of the Classes were unaware of this unlawful conduct alleged herein and did not know that the prices they paid for Certi-Label cedar shakes and shingles were artificially high during the Class Period.

## X.    CLAIMS FOR RELIEF

### A.    Claims Under Federal Law

#### 1.    Violation of Section 1 of the Sherman Act

313.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

314.    Beginning at a time currently unknown to Plaintiffs, but at least as early as January 1, 2011, and continuing through the present, the exact dates being unknown to Plaintiffs, Defendants and their co-conspirators entered into a continuing agreement, understanding, and

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 78

conspiracy in restraint of trade artificially to fix, raise, stabilize, and peg prices for Certi-Label cedar shakes and shingles in the United States, in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

315.   In forming and carrying out the alleged agreement, understanding, and conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices, and course of conduct set forth above, and the following, among others:

     a.   Fixing, raising, stabilizing, and maintaining the price of Certi-Label cedar shakes and shingles; and

     b.   Excluding upstart and lower-cost cedar shake and shingle manufacturers from the Certi-Label cedar shakes and shingles market.

316.   The combination and conspiracy alleged herein has had the following effects, among others:

     a.   Price competition in the sale of Certi-Label cedar shakes and shingles has been restrained, suppressed, or eliminated in the United States;

     b.   Prices for Certi-Label cedar shakes and shingles manufactured by Defendants and their co-conspirators have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout the United States; and

     c.   Those who purchased Certi-Label cedar shakes and shingles manufactured by Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

317.   Plaintiffs and members of the Classes have been injured and will continue to be injured in their businesses and property by paying more for Certi-Label cedar shakes and shingles manufactured by Defendants and their co-conspirators for resale than they would have paid and will pay in the absence of the combination and conspiracy.

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 79

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

B.     **State Law Antitrust Claims**[12]

    1.     **Violation of Arizona's Uniform State Antitrust Act (Arizona Revised Statutes §§ 44-1401, *et seq.*) on behalf of the Arizona Class**

318.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

319.     Defendants have entered into an unlawful agreement in restraint of trade in violation of Arizona Revised Statutes §§ 44-1401, *et seq.*

320.     Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the Certi-Label cedar shakes and shingles market, a substantial part of which occurred within Arizona.

321.     Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the relevant market, a substantial part of which occurred within Arizona, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Certi-Label cedar shakes and shingles market.

322.     During the Class Period, Defendants' illegal conduct was flagrant and substantially affected Arizona's trade and commerce.

323.     As a direct and proximate cause of Defendants' unlawful conduct, members of the Arizona Class have been injured in their business or property and are threatened with further injury.

324.     The combination and conspiracy alleged herein has had the following effects, among others:

    a.     Price competition in the sale of Certi-Label cedar shakes and shingles has been restrained, suppressed, and/or eliminated in the United States;

    b.     Prices for Certi-Label cedar shakes and shingles manufactured by Defendants and all of their co-conspirators have been fixed, raised, maintained and stabilized at

---

[12] Whenever Defendants' unlawful conduct is discussed in any allegation below, this should be read to include the conduct of named and unnamed co-conspirators.

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 80

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1    artificially high, non-competitive levels throughout the United States; and

2    c.    Those who purchased Certi-Label cedar shakes and shingles manufactured by the

3          Defendants and their co-conspirators have been deprived of the benefits of free

4          and open competition.

5    325.   By reason of the foregoing, Defendants entered into agreements in restraint of

6    trade in violation of Arizona Revised Statutes §§ 44-1401, *et seq.* Accordingly, members of the

7    Arizona Class are entitled to and seek all damages and other forms of relief available under

8    Arizona Revised Statutes §§ 44-1401, *et seq.*

9    326.   Notice and a copy of this Complaint is being served upon the Arizona Attorney

10   General on behalf of the Arizona Class. Ariz. Rev. Stat. § 44-1415.

### 2.    Violation of California's Cartwright Act (Cal. Bus. & Prof. Code § 1600, *et seq.*) on behalf of the California Class

14   327.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

15   allegation set forth in the preceding paragraphs of this Complaint.

16   328.   Defendants have entered into an unlawful agreement in restraint of trade in

17   violation of the California Business and Professions Code §§ 16700, *et seq.*, ("The Cartwright

18   Act").

19   329.   California policy is that "vigorous representation and protection of consumer

20   interests are essential to the fair and efficient functioning of a free enterprise market economy,"

21   including by fostering competition in the marketplace. Cal. Bus. & Prof. Code § 301.

22   330.   Under the Cartwright Act, indirect purchasers have standing to bring and maintain

23   an action for damages and other relief based on the facts alleged in this Complaint. Cal. Bus. &

24   Prof. Code § 16750(a).

25   331.   Under California law, a trust is any combination intended for various purposes,

26   including but not limited to creating or carrying out restrictions in trade or commerce, limiting or

27   reducing the production or increasing the price of merchandise, or preventing competition in the

28

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 81

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

market for a commodity. Cal. Bus. & Prof. Code § 16720. Every trust in California is unlawful except as provided by the Code. Cal. Bus. & Prof. Code § 16726.

332.     During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720 of the California Business and Professions Code. Defendants, and each of them, have acted in violation of Section 16720 of the California Business and Professions Code to fix, raise, stabilize, and/or maintain prices of Certi-Label cedar shakes and shingles at supra-competitive levels. The aforesaid violations of Section 16720 of the California Business and Professions Code consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain, and/or stabilize the prices of Certi-Label cedar shakes and shingles.

333.     The combination and conspiracy alleged herein has had the following effects, among others:

     a.     Price competition in the sale of Certi-Label cedar shakes and shingles has been restrained, suppressed, and/or eliminated in the United States;

     b.     Prices for Certi-Label cedar shakes and shingles manufactured by Defendants and all of their Co-Conspirators have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout the United States; and

     c.     Those who purchased Certi-Label cedar shakes and shingles manufactured by the Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

334.     The California Class purchased Certi-Label cedar shakes and shingles within the State of California during the Class Period.

335.     But for Defendants' conduct set forth herein, the price of Certi-Label cedar shakes and shingles would have been lower, in an amount to be determined at trial.

336.     Defendants' anticompetitive conduct was knowing, willful and constitutes a

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 82

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

flagrant violation of the California Business and Professions Code §§ 16700, *et seq.*

337.    For the purpose of forming and effectuating the unlawful trust, Defendants and their co-conspirators have done those things which they combined and conspired to do, including but not in any way limited to the acts, practices and course of conduct set forth above and the following: fixing, raising, stabilizing, and/or pegging the price of Certi-Label cedar shakes and shingles.

        **3.**     **Violation of the Colorado Revised Statutes §§ 6-4-101, *et seq.*
on behalf of the Colorado Class.**

338.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

339.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Colorado Revised Statutes §§ 6-4-101, *et seq.*

340.    The combination and conspiracy alleged herein has had the following effects, among others:

    a.   Price competition in the sale of Certi-Label cedar shakes and shingles has been restrained, suppressed, and/or eliminated in the United States;

    b.   Prices for Certi-Label cedar shakes and shingles manufactured by Defendants and all of their Co-Conspirators have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout the United States; and

    c.   Those who purchased Certi-Label cedar shakes and shingles manufactured by the Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

341.    During the Class Period, Defendants' illegal conduct substantially affected Colorado commerce.

342.    As a direct and proximate result of Defendants' unlawful conduct, members of the Colorado Class have been injured in their business and property and are threatened with further

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 83

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1  injury.

2  343.    By reason of the foregoing, Defendants entered into agreements in restraint of

3  trade in violation of Colorado Revised Statutes §§ 6-4-101, *et seq.* Accordingly, Colorado

4  Plaintiff(s) and members of the Colorado Class seek all damages and other forms of relief

5  available under Colorado Revised Statutes §§ 6-4-101, *et seq.*

6  344.    Notice and a copy of this Complaint is being served upon the Colorado Attorney

7  General on behalf of the Colorado Class. Colo. Rev. Stat. § 6-4-115.

8          **4.      Violation of the District of Columbia Antitrust Act (D.C. Code
                     § 28-4501, *et seq.*) on behalf of the District of Columbia Class**
9

10  345.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

12  allegation set forth in the preceding paragraphs of this Complaint.

13  346.    The policy of District of Columbia Code, Title 28, Chapter 45 (Restraints of

14  Trade) is to "promote the unhampered freedom of commerce and industry throughout the District

15  of Columbia by prohibiting restraints of trade and monopolistic practices."

16  347.    The combination and conspiracy alleged herein has had the following effects,

17  among others:

18          a.   Price competition in the sale of Certi-Label cedar shakes and shingles has been

19               restrained, suppressed, and/or eliminated in the United States;

20          b.   Prices for Certi-Label cedar shakes and shingles manufactured by Defendants and

21               all of their Co-Conspirators have been fixed, raised, maintained and stabilized at

22               artificially high, non-competitive levels throughout the United States; and

23          c.   Those who purchased Certi-Label cedar shakes and shingles manufactured by the

24               Defendants and their co-conspirators have been deprived of the benefits of free

25               and open competition.

26  348.    Members of the District of Columbia Class purchased Certi-Label cedar shakes

27  and shingles within the District of Columbia during the Class Period. But for Defendants'

28

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 84

1   conduct set forth herein, the price of Certi-Label cedar shakes and shingles would have been

2   lower, in an amount to be determined at trial.

3       349.    Under District of Columbia law, indirect purchasers have standing to maintain an

4   action under the antitrust provisions of the D.C. Code based on the facts alleged in this

5   Complaint, because "any indirect purchaser in the chain of manufacture, production or

6   distribution of goods...shall be deemed to be injured within the meaning of this chapter." D.C.

7   Code § 28-4509(a).

8       350.    Defendants contracted, combined or conspired to act in restraint of trade within

9   the District of Columbia, and monopolized or attempted to monopolize the market for Certi-

10  Label cedar shakes and shingles within the District of Columbia, in violation of D.C. Code § 28-

12  4501, *et seq.*

13      351.    Members of the District of Columbia Class were injured with respect to purchases

14  of Certi-Label cedar shakes and shingles in the District of Columbia and are entitled to all forms

15  of relief, including actual damages, treble damages, and interest, reasonable attorney's fees and

16  costs.

17          **5.      Violation of the Illinois Antitrust Act (740 §§ ILCS 10/1, *et seq.*) on behalf of the Illinois Class**

18

19      352.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

20  allegation set forth in the preceding paragraphs of this Complaint.

21      353.    The Illinois Antitrust Act, 740 ILCS 10/1, *et seq.*, aims "to promote the

22  unhampered growth of commerce and industry throughout the State by prohibiting restraints of

23  trade which are secured through monopolistic or oligarchic practices and which act or tend to act

24  to decrease competition between and among persons engaged in commerce and trade. . . ." 740

25  ILCS 10/1.

26      354.    Members of the Illinois Class have standing to pursue claims against the

27  Defendants and their co-conspirators, as the Illinois Antitrust Act provides in relevant part that,

28

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 85

"[n]o provision of this Act shall deny any person who is an indirect purchaser the right to sue for damages." 740 ILCS 10/7.

355.    Members of the Illinois Class purchased Certi-Label cedar shakes and shingles within the State of Illinois during the Class Period. But for Defendants' conduct set forth herein, the price of Certi-Label cedar shakes and shingles would have been lower, in an amount to be determined at trial.

356.    Under the Illinois Antitrust Act, indirect purchasers have standing to maintain an action for damages based on the facts alleged in this Complaint. 740 ILCS 10/7(2).

357.    Defendants made contracts or engaged in a combination or conspiracy with each other, though they would have been competitors but for their prior agreement, for the purpose of fixing, controlling or maintaining prices for Certi-Label cedar shakes and shingles sold, and/or for allocating customers or markets for Certi-Label cedar shakes and shingles within the intrastate commerce of Illinois.

358.    Defendants further unreasonably restrained trade or commerce and established, maintained or attempted to acquire monopoly power over the market for Certi-Label cedar shakes and shingles in Illinois for the purpose of excluding competition, in violation of 740 ILCS 10/1, *et seq.*

359.    During the Class Period, Defendants' illegal conduct substantially affected Illinois commerce, including by causing the price of Certi-Label cedar shakes and shingles in Illinois to be artificially elevated to the detriment of the members of the Illinois Class.

360.    Members of the Illinois Class were injured with respect to purchases of Certi-Label cedar shakes and shingles in Illinois and are entitled to all forms of relief, including actual damages, treble damages, reasonable attorney's fees, and costs.

### 6.    Violation of Iowa Competition Law (Iowa Code §§ 553.1, *et seq.*) on behalf of the Iowa Class

361.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 86

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1    allegation set forth in the preceding paragraphs of this Complaint.

2        362.    The Iowa Competition Law aims to "prohibit[] restraint of economic activity and

3    monopolistic practices." Iowa Code § 553.2.

4        363.    Members of the Iowa Class purchased Certi-Label cedar shakes and shingles

5    within the State of Iowa during the Class Period. But for Defendants' conduct set forth herein,

6    the price of Certi-Label cedar shakes and shingles would have been lower, in an amount to be

7    determined at trial.

8        364.    Defendants contracted, combined or conspired to restrain or monopolize trade in

9    the market for Certi-Label cedar shakes and shingles, and attempted to establish or did in fact

10   establish a monopoly for the purpose of excluding competition or controlling, fixing or

12   maintaining prices for Certi-Label cedar shakes and shingles, in violation of Iowa Code § 553.1,

13   *et seq.*

14       365.    During the Class Period, Defendants' illegal conduct substantially affected Iowa

15   commerce, including by causing the price in Iowa of cedar shakes and shingles to be artificially

16   elevated.

17       366.    Members of the Iowa Class were injured with respect to purchases of Certi-Label

18   cedar shakes and shingles in Iowa, and are entitled to all forms of relief, including actual

19   damages, exemplary damages for willful conduct, reasonable attorney's fees and costs, and

20   injunctive relief.

21       **7.    Violation of the Kansas Restraint of Trade Act (Kan. Stat. Ann.
                §§ 50-112, *et seq.*) on behalf of the Kansas Class**

22

23       367.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

24   allegation set forth in the preceding paragraphs of this Complaint.

25       368.    The Kansas Restraint of Trade Act aims to prohibit practices which, inter alia,

26   "tend to prevent full and free competition in the importation, transportation or sale of articles

27   imported into this state." Kan. Stat. Ann. § 50-112.

28
RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 87

369.     Members of the Kansas Class purchased Certi-Label cedar shakes and shingles within the State of Kansas during the Class Period. But for Defendants' conduct set forth herein, the price of Certi-Label cedar shakes and shingles would have been lower, in an amount to be determined at trial.

370.     Under the Kansas Restraint of Trade Act, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. Kan. Stat. Ann § 50-161(b).

371.     Defendants combined capital, skill or acts for the purposes of creating restrictions in trade or commerce of Certi-Label cedar shakes and shingles, increasing the price of Certi-Label cedar shakes and shingles, preventing competition in the sale of Certi-Label cedar shakes and shingles, or binding themselves not to sell Certi-Label cedar shakes and shingles, in a manner that established the price of Certi-Label cedar shakes and shingles and precluded free and unrestricted competition among themselves in the sale of Certi-Label cedar shakes and shingles, in violation of Kan. Stat. Ann. § 50-101, *et seq.*

372.     Members of the Kansas Class were injured with respect to purchases of Certi-Label cedar shakes and shingles in Kansas and are entitled to all forms of relief, including actual damages, reasonable attorney's fees and costs, and injunctive relief.

### 8.     Violation of Maine's Antitrust Statute (Me. Rev. Stat. Ann. Tit. 10, § 1101, *et seq.*) on behalf of the Maine Class

373.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

374.     Part 3 of Title 10 the Maine Revised Statutes generally governs regulation of trade in Maine. Chapter 201 thereof governs monopolies and profiteering, generally prohibiting contracts in restraint of trade and conspiracies to monopolize trade. Me. Rev. Stat. Ann. Tit. 10, §§ 1101-02.

375.     Members of the Maine Class purchased Certi-Label cedar shakes and shingles within the State of Maine during the Class Period. But for Defendants' conduct set forth herein,

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 88

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

the price of Certi-Label cedar shakes and shingles would have been lower, in an amount to be determined at trial.

376.   Under Maine law, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. Me. Rev. Stat. Ann. Tit. 10, § 1104(1).

377.   Defendants contracted, combined or conspired in restraint of trade or commerce of Certi-Label cedar shakes and shingles within the intrastate commerce of Maine, and monopolized or attempted to monopolize the trade or commerce of Certi-Label cedar shakes and shingles within the intrastate commerce of Maine, in violation of Me. Rev. Stat. Ann. Tit. 10, § 1101, *et seq.*

378.   Members of the Maine Class were injured with respect to purchases of Certi-Label cedar shakes and shingles in Maine and are entitled to all forms of relief, including actual damages, treble damages, reasonable attorneys' and experts' fees and costs.

**9.     Violation of the Michigan Antitrust Reform Act (Mich. Comp. Laws §§ 445.771, *et seq.*) on behalf of the Michigan Class**

379.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

380.   The Michigan Antitrust Reform Act aims "to prohibit contracts, combinations, and conspiracies in restraint of trade or commerce...to prohibit monopolies and attempts to monopolize trade or commerce...[and] to provide remedies, fines, and penalties for violations of this act." Mich. Act 274 of 1984.

381.   Members of the Michigan Class purchased Certi-Label cedar shakes and shingles within the State of Michigan during the Class Period. But for Defendants' conduct set forth herein, the price of Certi-Label cedar shakes and shingles would have been lower, in an amount to be determined at trial.

382.   Under the Michigan Antitrust Reform Act, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. Mich. Comp. Laws. §

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 89

452.778(2).

383.     Defendants contracted, combined or conspired to restrain or monopolize trade or commerce in the market for Certi-Label cedar shakes and shingles, in violation of Mich. Comp. Laws § 445.772, *et seq.*

384.     Members of the Michigan Class were injured with respect to purchases of Certi-Label cedar shakes and shingles in Michigan and are entitled to all forms of relief, including actual damages, treble damages for flagrant violations, interest, costs, reasonable attorney's fees, and injunctive or other appropriate equitable relief.

**10.     Violation of Minnesota Antitrust Law (Minn. Stat. §§ 325D.49, *et seq.*) on behalf of the Minnesota Class**

385.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

386.     The Minnesota Antitrust Law of 1971 aims to prohibit any contract, combination or conspiracy when any part thereof was created, formed, or entered into in Minnesota; any contract, combination or conspiracy, wherever created, formed or entered into; any establishment, maintenance or use of monopoly power; and any attempt to establish, maintain or use monopoly power, whenever any of these affect Minnesota trade or commerce.

387.     Members of the Minnesota Class purchased Certi-Label cedar shakes and shingles within the State of Minnesota during the Class Period. But for Defendants' conduct set forth herein, the price of Certi-Label cedar shakes and shingles would have been lower, in an amount to be determined at trial.

388.     Under the Minnesota Antitrust Act of 1971, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. Minn. Stat. § 325D.56.

389.     Defendants contracted, combined or conspired in unreasonable restraint of trade or commerce in the market for Certi-Label cedar shakes and shingles within the intrastate commerce of and outside of Minnesota; established, maintained, used or attempted to establish,

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 90

maintain or use monopoly power over the trade or commerce in the market for Certi-Label cedar shakes and shingles within the intrastate commerce of and outside of Minnesota; and fixed prices and allocated markets for Certi-Label cedar shakes and shingles within the intrastate commerce of and outside of Minnesota, in violation of Minn. Stat. § 325D.49, *et seq.*

390.    Members of the Minnesota Class were injured with respect to purchases of Certi-Label cedar shakes and shingles in Minnesota and are entitled to all forms of relief, including actual damages, treble damages, costs and disbursements, reasonable attorney's fees, and injunctive relief necessary to prevent and restrain violations hereof.

**11.    Violation of the Mississippi Antitrust Statute (Miss. Code Ann. § 74-21-1, *et seq.*) on behalf of the Mississippi Class**

391.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

392.    Title 75 of the Mississippi Code regulates trade, commerce and investments. Chapter 21 thereof generally prohibits trusts and combines in restraint or hindrance of trade, with the aim that "trusts and combines may be suppressed, and the benefits arising from competition in business [are] preserved" to Mississippians. Miss. Code Ann. § 75-21-39.

393.    Trusts are combinations, contracts, understandings or agreements, express or implied, when inimical to the public welfare and with the effect of, inter alia, restraining trade, increasing the price or output of a commodity, or hindering competition in the production or sale of a commodity. Miss. Code Ann. § 75-21-1.

394.    Members of the Mississippi Class purchased Certi-Label cedar shakes and shingles within the State of Mississippi during the Class Period. But for Defendants' conduct set forth herein, the price of Certi-Label cedar shakes and shingles would have been lower, in an amount to be determined at trial.

395.    Under Mississippi law, indirect purchasers have standing to maintain an action under the antitrust provisions of the Mississippi Code based on the facts alleged in this

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 91

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

Defendants combined, contracted, understood and agreed in the market for cedar shakes and shingles, in a manner inimical to public welfare, with the effect of restraining trade, increasing the price of cedar shakes and shingles and hindering competition in the sale of cedar shakes and shingles, in violation of Miss. Code Ann. § 75-21-1(a), *et seq.*

396.    Defendants monopolized or attempted to monopolize the production, control or sale of Certi-Label cedar shakes and shingles, in violation of Miss. Code Ann. § 75-21-3, *et seq.*

397.    Defendants' Certi-Label cedar shakes and shingles are sold indirectly via distributors throughout the State of Mississippi. During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce.

398.    Members of the Mississippi Class were injured with respect to purchases of Certi-Label cedar shakes and shingles in Mississippi and are entitled to all forms of relief, including actual damages and a penalty of $500 per instance of injury.

### 12.    Violation of the Missouri Merchandising Practices Act (Mo. Stat. § 407.010, *et seq.*) on behalf of the Missouri Class

399.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

400.    Chapter 407 of the Missouri Merchandising Practices Act (the "MMPA") generally governs unlawful business practices, including antitrust violations such as restraints of trade and monopolization.

401.    Members of the Missouri Class purchased cedar shakes and shingles within the State of Missouri during the Class Period. But for Defendants' conduct set forth herein, the price of Certi-Label cedar shakes and shingles would have been lower, in an amount to be determined at trial.

402.    Under Missouri law, indirect purchasers have standing to maintain an action under the MMPA based on the facts alleged in this Complaint. *Gibbons v. J. Nuckolls, Inc.*, 216 S.W.3d 667, 669 (Mo. 2007).

RESELLER INDIRECT PURCHASER PLAINTIFFS' CONSOLIDATED SECOND AMENDED CLASS ACTION COMPLAINT (NO. 2:19-CV-451-MJP) - 92

LAW OFFICES OF
McNaul Ebel Nawrot & Helgren pllc
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

403.   Defendants contracted, combined or conspired in restraint of trade or commerce of Certi-Label cedar shakes and shingles within the intrastate commerce of Missouri, and monopolized or attempted to monopolize the market for Certi-Label cedar shakes and shingles within the intrastate commerce of Missouri by possessing monopoly power in the market and willfully maintaining that power through agreements to fix prices, allocate markets and otherwise control trade, in violation of Mo. Ann. Stat. § 407.010, *et seq.*

404.   Members of the Missouri Class were injured with respect to purchases of Certi-Label cedar shakes and shingles in Missouri and are entitled to all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained, as well as reasonable attorney's fees, costs, and injunctive relief.

### 13.   Violation of the Nebraska Junkin Act (Neb. Rev. Stat. § 59-801, *et seq.*) on behalf of the Nebraska Class

405.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

406.   Chapter 59 of the Nebraska Revised Statute generally governs business and trade practices. Sections 801 through 831 thereof, known as the Junkin Act, prohibit antitrust violations such as restraints of trade and monopolization.

407.   Members of the Nebraska Class purchased Certi-Label cedar shakes and shingles within the State of Nebraska during the Class Period. But for Defendants' conduct set forth herein, the price of Certi-Label cedar shakes and shingles would have been lower, in an amount to be determined at trial.

408.   Under Nebraska law, indirect purchasers have standing to maintain an action under the Junkin Act based on the facts alleged in this Complaint. Neb. Rev. Stat. § 59-821.

409.   Defendants contracted, combined or conspired in restraint of trade or commerce of Certi-Label cedar shakes and shingles within the intrastate commerce of Nebraska, and

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 93

1  monopolized or attempted to monopolize the market for Certi-Label cedar shakes and shingles

2  within the intrastate commerce of Nebraska by possessing monopoly power in the market and

3  willfully maintaining that power through agreements to fix prices, allocate markets and

4  otherwise control trade, in violation of Neb. Rev. Stat. § 59-801, *et seq.*

5  410.    Members of the Nebraska Class were injured with respect to purchases of Certi-

6  Label cedar shakes and shingles in Nebraska and are entitled to all forms of relief, including

7  actual damages or liquidated damages in an amount which bears a reasonable relation to the

8  actual damages which have been sustained, as well as reasonable attorney's fees, costs, and

9  injunctive relief.

### 14.    Violations of the Nevada Unfair Trade Practices Act (Nev. Rev. Stat § 598A.030(1)) on behalf of the Nevada Class

13  411.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

14  allegation set forth in the preceding paragraphs of this Complaint.

15  412.    The Nevada Unfair Trade Practice Act ("NUTPA") states that "free, open and

16  competitive production and sale of commodities...is necessary to the economic well-being of the

17  citizens of the State of Nevada." Nev. Rev. Stat. Ann. § 598A.030(1).

18  413.    The policy of NUTPA is to prohibit acts in restraint of trade or commerce, to

19  preserve and protect the free, open and competitive market, and to penalize all persons engaged

20  in anticompetitive practices. Nev. Rev. Stat. Ann. § 598A.030(2). Such acts include price fixing,

21  division of markets, allocation of customers, and monopolization of trade. Nev. Rev. Stat. Ann. §

22  598A.060.

23  414.    Members of the Nevada Class purchased Certi-Label cedar shakes and shingles

24  within the State of Nevada during the Class Period. But for Defendants' conduct set forth herein,

25  the price of Certi-Label cedar shakes and shingles would have been lower, in an amount to be

26  determined at trial.

27  415.    Under Nevada law, indirect purchasers have standing to maintain an action under

28

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 94

LAW OFFICES OF
MᴄNᴀᴜʟ Eʙᴇʟ Nᴀᴡʀᴏᴛ & Hᴇʟɢʀᴇɴ ᴘʟʟᴄ
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1   NUTPA based on the facts alleged in this Complaint. Nev. Rev. Stat. Ann. §598A.210(2).

2   416.   Defendants fixed prices by agreeing to establish prices for Certi-Label cedar

3   shakes and shingles in Nevada, divided Nevada markets, allocated Nevada customers, and

4   monopolized or attempted monopolize trade or commerce of Certi-Label cedar shakes and

5   shingles within the intrastate commerce of Nevada, constituting a contract, combination or

6   conspiracy in restraint of trade in violation of Nev. Rev. Stat. Ann. § 598A, *et seq.*

7   417.   Members of the Nevada Class were injured with respect to purchases of cedar

8   shakes and shingles in Nevada in that many of sales of Defendants' Certi-Label cedar shakes and

9   shingles took place in Nevada, purchased by Nevada consumers at supra-competitive prices

10   caused by Defendants' conduct.

12   418.   Accordingly, members of the Nevada Class are entitled to all forms of relief,

13   including actual damages, treble damages, reasonable attorney's fees, costs, and injunctive relief.

14   419.   In accordance with the requirements of § 598A.210(3), notice of this action was

15   mailed to the Nevada Attorney General by Plaintiffs.

16   **15.   Violation of New Hampshire's Antitrust Statute (N.H. Rev.
17   Stat. Ann. §§ 356, *et seq.*) on behalf of the New Hampshire
     Class**

18   420.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

19   allegation set forth in the preceding paragraphs of this Complaint.

20   421.   Title XXXI of the New Hampshire Statutes generally governs trade and

21   commerce. Chapter 356 thereof governs combinations and monopolies and prohibits restraints of

22   trade. N.H. Rev. Stat. Ann. §§ 356:2, 3.

23   422.   Members of the New Hampshire Class purchased Certi-Label cedar shakes and

24   shingles within the State of New Hampshire during the Class Period. But for Defendants'

25   conduct set forth herein, the price of Certi-Label cedar shakes and shingles would have been

26   lower, in an amount to be determined at trial.

27   423.   Under New Hampshire law, indirect purchasers have standing to maintain an

28
RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 95

1  action based on the facts alleged in this Complaint. N.H. Rev. Stat. Ann. § 356:11(II).

2  424.  Defendants fixed, controlled or maintained prices for Certi-Label cedar shakes

3  and shingles, allocated customers or markets for Certi-Label cedar shakes and shingles, and

4  established, maintained or used monopoly power, or attempted to, constituting a contract,

5  combination or conspiracy in restraint of trade in violation of N.H. Rev. Stat. Ann. § 356:1, *et*

6  *seq.*

7  425.  Members of the New Hampshire Class were injured with respect to purchases of

8  Certi-Label cedar shakes and shingles in New Hampshire and are entitled to all forms of relief,

9  including actual damages sustained, treble damages for willful or flagrant violations, reasonable

10  attorney's fees, costs, and injunctive relief.

**16.  Violation of the New Mexico Antitrust Act (N.M. Stat. Ann. §§
    57-1-1, *et seq.*) on behalf of the New Mexico Class.**

14  426.  Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

15  allegation set forth in the preceding paragraphs of this Complaint.

16  427.  The New Mexico Antitrust Act aims to prohibit restraints of trade and

17  monopolistic practices. N.M. Stat. Ann. 57-1-15.

18  428.  Members of the New Mexico Class purchased Certi-Label cedar shakes and

19  shingles within the State of New Mexico during the Class Period. But for Defendants' conduct

20  set forth herein, the price of Certi-Label cedar shakes and shingles would have been lower, in an

21  amount to be determined at trial.

22  429.  Under New Mexico law, indirect purchasers have standing to maintain an action

23  based on the facts alleged in this Complaint. N.M. Stat. Ann. § 57-1-3.

24  430.  Defendants contracted, agreed, combined or conspired, and monopolized or

25  attempted to monopolize trade for Certi-Label cedar shakes and shingles within the intrastate

26  commerce of New Mexico, in violation of N.M. Stat. Ann. § 57-1-1, *et seq.*

27  431.  Members of the New Mexico Class were injured with respect to purchases of

28
RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 96

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

Certi-Label cedar shakes and shingles in New Mexico and are entitled to all forms of relief, including actual damages, treble damages, reasonable attorney's fees, costs, and injunctive relief.

### 17. Violation of New York General Business Laws §§ 340, *et seq.*, on behalf of the New York Class

432.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

433.   Article 22 of the New York General Business Law general prohibits monopolies and contracts or agreements in restraint of trade, with the policy of encouraging competition or the free exercise of any activity in the conduct of any business, trade or commerce in New York. N.Y. Gen. Bus. Law § 340(1).

434.   Members of the New York Class purchased Certi-Label cedar shakes and shingles within the State of New York during the Class Period. But for Defendants' conduct set forth herein, the price of Certi-Label cedar shakes and shingles would have been lower, in an amount to be determined at trial.

435.   Under New York law, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. N.Y. Gen. Bus. Law § 340(6).

436.   Defendants established or maintained a monopoly within the intrastate commerce of New York for the trade or commerce of Certi-Label cedar shakes and shingles and restrained competition in the free exercise of the conduct of the business of Certi-Label cedar shakes and shingles within the intrastate commerce of New York, in violation of N.Y. Gen. Bus. Law § 340, *et seq.*

437.   Members of the New York Class were injured with respect to purchases of cedar shakes and shingles in New York and are entitled to all forms of relief, including actual damages, treble damages, costs not exceeding $10,000, and reasonable attorney's fees.

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 97

LAW OFFICES OF
MᴄNᴀᴜʟ Eʙᴇʟ Nᴀᴡʀᴏᴛ & Hᴇʟɢʀᴇɴ ᴘʟʟᴄ
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

18.  **Violation of the North Carolina General Statutes §§ 75-1, *et seq.*, on behalf of the North Carolina Class**

438.  Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

439.  Defendants entered into a contract or combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce in the Certi-Label cedar shakes and shingles market, a substantial part of which occurred within North Carolina.

440.  Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Certi-Label cedar shakes and shingles market, for the purpose of affecting competition or controlling, fixing, or maintaining prices, a substantial part of which occurred within North Carolina.

441.  Defendants' unlawful conduct substantially affected North Carolina's trade and commerce.

442.  As a direct and proximate cause of Defendants' unlawful conduct, members of the North Carolina Class have been injured in their business or property and are threatened with further injury.

443.  By reason of the foregoing, members of the North Carolina Class are entitled to seek all forms of relief available, including treble damages, under N.C. Gen. Stat. § 75-1, *et seq.*

19.  **Violation of the North Dakota Uniform State Antitrust Act (N.D. Cent. Code §§ 51-08.1, *et seq.*) on behalf of the North Dakota Class**

444.  Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

445.  The North Dakota Uniform State Antitrust Act generally prohibits restraints on or monopolization of trade. N.D. Cent. Code § 51-08.1, *et seq.*

446.  Members of the North Dakota Class purchased Certi-Label cedar shakes and shingles within the State of North Dakota during the Class Period. But for Defendants' conduct set forth herein, the price of Certi-Label cedar shakes and shingles would have been lower, in an

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 98

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

amount to be determined at trial.

447.   Under the North Dakota Uniform State Antitrust Act, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. N.D. Cent. Code § 51-08.1-08.

448.   Defendants contracted, combined or conspired in restraint of, or to monopolize trade or commerce in the market for Certi-Label cedar shakes and shingles, and established, maintained, or used a monopoly, or attempted to do so, for the purposes of excluding competition or controlling, fixing or maintaining prices for Certi-Label cedar shakes and shingles, in violation of N.D. Cent. Code §§ 51-08.1-02, 03.

449.   Members of the North Dakota Class were injured with respect to purchases in North Dakota and are entitled to all forms of relief, including actual damages, treble damages for flagrant violations, costs, reasonable attorney's fees, and injunctive or other equitable relief.

### 20.   Violation of the Oregon Antitrust Law (Or. Rev. Stat §§ 646.705, *et seq.*) on behalf of the Oregon Class

450.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

451.    Chapter 646 of the Oregon Revised Statutes generally governs business and trade practices within Oregon. Sections 705 through 899 thereof govern antitrust violations, with the policy to "encourage free and open competition in the interest of the general welfare and economy of the state." Or. Rev. Stat. § 646.715.

452.   Members of the Oregon Class purchased Certi-Label cedar shakes and shingles within the State of Oregon during the Class Period. But for Defendants' conduct set forth herein, the price of Certi-Label cedar shakes and shingles would have been lower, in an amount to be determined at trial.

453.   Under Oregon law, indirect purchasers have standing under the antitrust provisions of the Oregon Revised Statutes to maintain an action based on the facts alleged in this

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 99

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1    Complaint. Or. Rev. Stat. § 646.780(1)(a).

2    454.    Defendants contracted, combined, or conspired in restraint of trade or commerce

3    of Certi-Label cedar shakes and shingles, and monopolized or attempted to monopolize the trade

4    or commerce of Certi-Label cedar shakes and shingles, in violation of Or. Rev. Stat. § 646.705, *et*

5    *seq.*

6    455.    Members of the Oregon Class were injured with respect to purchases of Certi-

7    Label cedar shakes and shingles within the intrastate commerce of Oregon, or alternatively to

8    interstate commerce involving actual or threatened injury to persons located in Oregon, and are

9    entitled to all forms of relief, including actual damages, treble damages, reasonable attorney's

10   fees, expert witness fees and investigative costs, and injunctive relief.

12   **21.    Violation of the Rhode Island Antitrust Act (R.I. Gen. Laws §§ 6-36-1, *et seq.*) on behalf of the Rhode Island Class**

13

14   456.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

15   allegation set forth in the preceding paragraphs of this Complaint.

16   457.    The Rhode Island Antitrust Act aims to promote the unhampered growth of

17   commerce and industry throughout Rhode Island by prohibiting unreasonable restraints of trade

18   and monopolistic practices that hamper, prevent or decrease competition. R.I. Gen. Laws § 6-36-

19   2(a)(2).

20   458.    Members of the Rhode Island Class purchased Certi-Label cedar shakes and

21   shingles within the State of Rhode Island during the Class Period. But for Defendants' conduct

22   set forth herein, the price of Certi-Label cedar shakes and shingles would have been lower, in an

23   amount to be determined at trial.

24   459.    Under the Rhode Island Antitrust Act, indirect purchasers have standing to

25   maintain an action based on the facts alleged in this Complaint. R.I. Gen. Laws § 6-36-11(a). In

26   Rhode Island, the claims of the Class alleged herein run no later than January 1, 2011 (further

27   investigation and discovery may reveal an earlier date) through the date that the effects of

28

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 100

1    Defendants' anticompetitive conduct cease.

2        460.    Defendants contracted, combined and conspired in restraint of trade of Certi-

3    Label cedar shakes and shingles within the intrastate commerce of Rhode Island, and established,

4    maintained or used, or attempted to establish, maintain or use, a monopoly in the trade of Certi-

5    Label cedar shakes and shingles for the purpose of excluding competition or controlling, fixing

6    or maintaining prices within the intrastate commerce of Rhode Island, in violation of R.I. Gen.

7    Laws § 6-36-1, *et seq.*

8        461.    Members of the Rhode Island Class were injured with respect to purchases of

9    Certi-Label cedar shakes and shingles in Rhode Island and are entitled to all forms of relief,

10   including actual damages, treble damages, reasonable costs, reasonable attorney's fees, and

11   injunctive relief.

12

13            **22.    Violation of the South Dakota Antitrust Statute (S.D. Codified
14            Laws §§ 37-1, *et seq.*) on behalf of the South Dakota Class**

15       462.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

16   allegation set forth in the preceding paragraphs of this Complaint.

17       463.    Chapter 37-1 of the South Dakota Codified Laws prohibits restraint of trade,

18   monopolies and discriminatory trade practices. S.D. Codified Laws §§ 37-1- 3.1, 3.2.

19       464.    Members of the South Dakota Class purchased Certi-Label cedar shakes and

20   shingles within the State of South Dakota during the Class Period. But for Defendants' conduct

21   set forth herein, the price of Certi-Label cedar shakes and shingles would have been lower, in an

22   amount to be determined at trial.

23       465.    Under South Dakota law, indirect purchasers have standing under the antitrust

24   provisions of the South Dakota Codified Laws to maintain an action based on the facts alleged in

25   this Complaint. S.D. Codified Laws § 37-1-33.

26       466.    Defendants contracted, combined or conspired in restraint of trade or commerce

27   of Certi-Label cedar shakes and shingles within the intrastate commerce of South Dakota, and

28

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

monopolized or attempted to monopolize trade or commerce of Certi-Label cedar shakes and shingles within the intrastate commerce of South Dakota, in violation of S.D. Codified Laws § 37-1, *et seq.*

467.    Members of the South Dakota Class were injured with respect to purchases of Certi-Label cedar shakes and shingles in South Dakota and are entitled to all forms of relief, including actual damages, treble damages, taxable costs, reasonable attorney's fees, and injunctive or other equitable relief.

### 23.    Violation of the Tennessee Trade Practices Act (Tenn. Code §§ 47-25-101, *et seq.*) on behalf of the Tennessee Class

468.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

469.    The Tennessee Trade Practices Act generally governs commerce and trade in Tennessee, and it prohibits, inter alia, all arrangements, contracts, agreements, or combinations between persons or corporations made with a view to lessen, or which tend to lessen, full and free competition in goods in Tennessee. All such arrangements, contracts, agreements, or combinations between persons or corporations designed, or which tend, to increase the prices of any such goods, are against public policy, unlawful, and void. Tenn. Code, § 47-25-101.

470.    Under Tennessee law, indirect purchasers (such as Plaintiff and the Tennessee Class) have standing under the Tennessee Trade Practice Acts to maintain an action based on the facts alleged in this Complaint.

471.    Defendants competed unfairly and colluded by meeting to fix prices, divide markets, and otherwise restrain trade as set forth herein, in violation of Tenn. Code, § 47-25-101, *et seq.*

472.    Defendant's conduct violated the Tennessee Trade Practice Act because it was an arrangement, contract, agreement, or combination to lessen full and free competition in goods in Tennessee, and because it tended to increase the prices of goods in Tennessee. Specifically,

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 102

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

Defendants' combination or conspiracy had the following effects: (1) price competition for Certi-Label cedar shakes and shingles was restrained, suppressed, and eliminated throughout Tennessee; (2) prices for Certi-Label cedar shakes and shingles were raised, fixed, maintained and stabilized at artificially high levels throughout Tennessee; (3) the Tennessee Class was deprived of free and open competition; and (4) the Tennessee Class paid supra-competitive, artificially inflated prices for Certi-Label cedar shakes and shingles.

473.    During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce as Certi-Label cedar shakes and shingles were sold in Tennessee.

474.    The Tennessee Class purchased Certi-Label cedar shakes and shingles within the State of Tennessee during the Class Period. But for Defendants' conduct set forth herein, the price of Certi-Label cedar shakes and shingles would have been lower, in an amount to be determined at trial. As a direct and proximate result of Defendants' unlawful conduct, the Tennessee Class has been injured in their business and property and are threatened with further injury

475.    Members of the Tennessee Class were injured with respect to purchases of Certi-Label cedar shakes and shingles in Tennessee and are entitled to all forms of relief available under the law, including return of the unlawful overcharges that they paid on their purchases, damages, equitable relief, and reasonable attorney's fees.

### 24.    Violation of the Utah Antitrust Act (Utah Code Ann. § 76-10-3101, *et seq.*) on behalf of the Utah Class

476.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

477.    The Utah Antitrust Act aims to "encourage free and open competition in the interest of the general welfare and economy of this state by prohibiting monopolistic and unfair trade practices, combinations and conspiracies in restraint of trade or commerce . . . ." Utah Code Ann. § 76-10-3102.

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 103

478.     Members of the Utah Class purchased Certi-Label cedar shakes and shingles within the State of Utah during the Class Period. But for Defendants' conduct set forth herein, the price of Certi-Label cedar shakes and shingles would have been lower, in an amount to be determined at trial.

479.     Under the Utah Antitrust Act, indirect purchasers who are either Utah residents or Utah citizens have standing to maintain an action based on the facts alleged in this Complaint. Utah Code Ann. § 76-10-3109(1)(a).

480.     Defendants contracted, combined or conspired in restraint of trade or commerce of Certi-Label cedar shakes and shingles, and monopolized or attempted to monopolize trade or commerce of Certi-Label cedar shakes and shingles, in violation of Utah Code Ann. § 76-10-3101, *et seq.*

481.     Members of the Utah Class who are either Utah residents or Utah citizens were injured with respect to purchases of Certi-Label cedar shakes and shingles in Utah and are entitled to all forms of relief, including actual damages, treble damages, costs of suit, reasonable attorney's fees, and injunctive relief.

### 25.     Violation of the West Virginia Antitrust Act (W. Va. Code § 47-18-1, *et seq.*) on behalf of the West Virginia Class

482.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

483.     The violations of federal antitrust law set forth above also constitute violations of section 47-18-1 of the West Virginia Code.

484.     During the Class Period, Defendants and their co-conspirators engaged in a continuing contract, combination or conspiracy in unreasonable restraint of trade and commerce and other anticompetitive conduct alleged above in violation of W. Va. Code § 47-18-1, *et seq.*

485.     Defendants' anticompetitive acts described above were knowing, willful and constitute violations or flagrant violations of the West Virginia Antitrust Act.

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 104

486.    As a direct and proximate result of Defendants' unlawful conduct, members of the West Virginia Class have been injured in their business and property in that they paid more for Certi-Label cedar shakes and shingles than they otherwise would have paid in the absence of Defendants' unlawful conduct.

487.    As a result of Defendants' violation of Section 47-18-3 of the West Virginia Antitrust Act, Members of the West Virginia Class seek treble damages and their cost of suit, including reasonable attorney's fees, pursuant to section 47-18-9 of the West Virginia Code.

### 26.    Violation of the Wisconsin Antitrust Act (Wis. Stat. §§ 133.01, *et seq.*) on behalf of the Wisconsin Class

488.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

489.    Chapter 133 of the Wisconsin Statutes governs trust and monopolies, with the intent "to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition by prohibiting unfair and discriminatory business practices which destroy or hamper competition." Wis. Stat. § 133.01.

490.    Members of the Wisconsin Class purchased Certi-Label cedar shakes and shingles within the State of Wisconsin during the Class Period. But for Defendants' conduct set forth herein, the price of Certi-Label cedar shakes and shingles would have been lower, in an amount to be determined at trial.

491.    Under Wisconsin law, indirect purchasers have standing under the antitrust provisions of the Wisconsin Statutes to maintain an action based on the facts alleged in this Complaint. Wis. Stat. 133.18(a).

492.    Defendants contracted, combined or conspired in restraint of trade or commerce of Certi-Label cedar shakes and shingles, and monopolized or attempted to monopolize the trade or commerce of Certi-Label cedar shakes and shingles, with the intention of injuring or destroying competition therein, in violation of Wis. Stat. § 133.01, *et seq.*

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 105

493.    Members of the Wisconsin Class were injured with respect to purchases of Certi-Label cedar shakes and shingles in Wisconsin in that the actions alleged herein substantially affected the people of Wisconsin, with many in Wisconsin paying substantially higher prices for Certi-Label cedar shakes and shingles in Wisconsin.

494.    Accordingly, members of the Wisconsin Class are entitled to all forms of relief, including actual damages, treble damages, costs and reasonable attorney's fees, and injunctive relief.

495.    Defendants' and their co-conspirators' anticompetitive activities have directly, foreseeably, and proximately caused injury to Plaintiffs and members of the Classes in the United States. Their injuries consist of: (1) being denied the opportunity to purchase lower-priced Certi-Label cedar shakes and shingles from Defendants and co-conspirators, and (2) paying higher prices for Defendants' and co-conspirators' Certi-Label cedar shakes and shingles than they would have in the absence of the alleged misconduct. These injuries are of the type of the laws of the above States were designed to prevent, and flow from that which makes the alleged conduct unlawful.

496.    Defendants are jointly and severally liable for all damages suffered by Plaintiff and members of the Classes.

## C.    Violations of State Consumer Protection Law

### 1.    Violation of Alaska Statute § 45.50.471, *et seq.*, on behalf of the Alaska Class

497.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

498.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of Alaska Statute § 45.50.471, *et seq.*

499.    Defendants knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 106

1  inflated levels, the prices at which Certi-Label cedar shakes and shingles were sold, distributed,

2  or obtained in Alaska and took efforts to conceal their agreements from members of the Class.

3  500.   The aforementioned conduct on the part of Defendants constituted

4  "unconscionable" and "deceptive" acts or practices in violation of Alaska law.

5  501.   Defendants' unlawful conduct had the following effects: (1) Certi-Label cedar

6  shakes and shingles price competition was restrained, suppressed, and eliminated throughout

7  Alaska; (2) Certi-Label cedar shakes and shingles prices were raised, fixed, maintained, and

8  stabilized at artificially high levels throughout Alaska; (3) members of the Alaska Class were

9  deprived of free and open competition; and (4) members of the Alaska Class paid supra-

10  competitive, artificially inflated prices for Certi-Label cedar shakes and shingles.

12  502.   During the Class Period, Defendants' illegal conduct substantially affected Alaska

13  commerce and consumers.

14  503.   As a direct and proximate result of Defendants' unlawful conduct, members of the

15  Alaska Class have been injured and are threatened with further injury.

16  504.   Defendants have engaged in unfair competition or unfair or deceptive acts or

17  practices in violation of Alaska Stat. § 45.50.471, *et seq.*, and, accordingly, members of the

18  Alaska Class seek all relief available under that statute.

19      **2.      Violation of California's Unfair Competition Law (Cal. Bus. &**
          **Prof. Code §§ 17200, *et seq.*) ("UCL") on behalf of the**
20        **California Class**

21  505.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

22  allegation set forth in the preceding paragraphs of this Complaint.

23  506.   The violations of federal antitrust law set forth above also constitute violations of

24  section 17200, *et seq.* of California Business and Professions Code.

25  507.   Defendants have engaged in unfair competition or unfair, unconscionable,

26  deceptive or fraudulent acts or practices in violation of the UCL by engaging in the acts and

27  practices specified above.

28
RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 107

508.     This claim is instituted pursuant to sections 17203 and 17204 of California Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged herein, that violated the UCL.

509.     The Defendants' conduct as alleged herein violated the UCL. The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of the UCL, including, but not limited to, the violations of section 16720, *et seq.*, of California Business and Professions Code, set forth above.

510.     Defendants' acts, omissions, misrepresentations, practices, and non-disclosures, as described above, whether or not in violation of section 16720, *et seq.*, of California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent.

511.     Members of the California Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business acts or practices.

512.     The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future.

513.     The unlawful and unfair business practices of Defendants, and each of them, as described above, have caused and continue to cause the members of the California Class to pay supra-competitive and artificially-inflated prices for Certi-Label cedar shakes and shingles sold in the State of California. Members of the California Class suffered injury in fact and lost money or property as a result of such unfair competition.

514.     As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition. Members of the California Class are accordingly entitled to equitable relief including restitution

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 108

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business practices, pursuant to California Business and Professions Code sections 17203 and 17204.

> **3.    Violation of the Colorado Consumer Protection Act (Colo. Rev. Stat. §§ 6-1-101, *et seq.*) on behalf of the Colorado Class**

515.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

516.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of Colorado Consumer Protection Act, Colorado Rev. Stat. § 6-1-101, *et seq.*

517.    Defendants engaged in an unfair and deceptive trade practices during the course of their business dealings, which significantly impacted Colorado Class members as an actual or potential consumers of the Defendants' goods and which caused them to suffer injury.

518.    Defendants took efforts to conceal their agreements from Class members. Defendants' unlawful conduct had the following effects: (1) Certi-Label cedar shakes and shingles price competition was restrained, suppressed, and eliminated throughout Colorado; (2) Certi-Label cedar shakes and shingles prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Colorado; (3) members of the Colorado Class were deprived of free and open competition; and (4) members of the Colorado Class paid supra-competitive, artificially inflated prices for Certi-Label cedar shakes and shingles.

519.    During the Class Period, Defendants' illegal conduct substantially affected Colorado commerce and consumers.

520.    As a direct and proximate result of Defendants' unlawful conduct, members of the Colorado Class have been injured and are threatened with further injury.

521.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Colorado Rev. Stat. § 6-1-101, *et seq.*, and, accordingly, members of the

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 109

Colorado Class seek all relief available under that statute and as equity demands.

### 4. Violation of Delaware's Consumer Fraud Act (6 Del. Code §§ 2511, *et seq.*) on behalf of the Delaware Class

522.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

523.   Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Delaware Consumer Fraud Act, 6 Del. Code §2511, *et seq.*

524.   Defendants agreed to, and did in fact, act in restraint of trade or commerce in Delaware, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which cedar shakes and shingles were sold, distributed, or obtained in Delaware.

525.   Defendants fraudulently concealed material facts from Plaintiff and members of the Delaware Class concerning Defendants' unlawful activities and deceptively induced Delaware Class members to purchase cedar shakes and shingles at artificially inflated prices.

526.   Defendants misrepresented to all purchasers during the Class Period that Defendants' cedar shakes and shingles prices were competitive and fair. Defendants' unlawful conduct had the following effects: (1) cedar shakes and shingles price competition was restrained, suppressed, and eliminated throughout Delaware; (2) cedar shakes and shingles prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Delaware; (3) Plaintiff and members of the Delaware Class were deprived of free and open competition; and (4) Plaintiff and members of the Delaware Class paid supra-competitive, artificially inflated prices for cedar shakes and shingles.

527.   During the Class Period, Defendants' illegal conduct had a substantial effect on Delaware commerce and consumers.

528.   As a direct and proximate result of Defendants' violations of law, members of the Delaware Class suffered an ascertainable loss of money or property as a result of Defendants' use

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 110

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1   or employment of unconscionable and deceptive commercial practices as set forth above. That

2   loss was caused by Defendants' willful and deceptive conduct, as described herein.

3       529.    Defendants' deception, including their affirmative misrepresentations and

4   omissions concerning the price of Certi-Label cedar shakes and shingles, likely misled all

5   purchasers acting reasonably under the circumstances to believe that they were purchasing Certi-

6   Label cedar shakes and shingles at prices set by a free and fair market.

7       530.    Defendants' misleading conduct and unconscionable activities constitute

8   violations of 6 Del. Code § 2511, *et seq.*, and, accordingly, members of the Delaware Class seek

9   all relief available under that statute.

10  **5.    Violation of the District of Columbia Consumer Protection**
    **Procedures Act (D.C. Code § 28-3901, *et seq.*) on behalf of the**
12  **District of Columbia Class**

13      531.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

14  allegation set forth in the preceding paragraphs of this Complaint.

15      532.    Members of the District of Columbia Class purchased Certi-Label cedar shakes

16  and shingles for personal, family, or household purposes.

17      533.    By reason of the conduct alleged herein, Defendants have violated D.C. Code §

18  28-3901, *et seq.*

19      534.    Defendants are "merchants" within the meaning of D.C. Code § 28- 3901(a)(3).

20      535.    Defendants entered into a contract, combination, or conspiracy between two or

21  more persons in restraint of, or to monopolize, trade or commerce in the Certi-Label cedar

22  shakes and shingles market, a substantial part of which occurred within the District of Columbia.

23      536.    Defendant established, maintained, or used a monopoly, or attempted to establish

24  a monopoly, of trade or commerce in the relevant market, a substantial part of which occurred

25  within the District of Columbia, for the purpose of excluding competition or controlling, fixing,

26  or maintaining prices in the Certi-Label cedar shakes and shingles market.

27      537.    Defendants' conduct was an unfair method of competition, and an unfair or

28

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 111

LAW OFFICES OF
MᴄNᴀᴜʟ Eʙᴇʟ Nᴀᴡʀᴏᴛ & Hᴇʟɢʀᴇɴ ᴘʟʟᴄ
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

deceptive act or practice within the conduct of commerce within the District of Columbia.

538.   Defendants' unlawful conduct substantially affected the District of Columbia's trade and commerce.

539.   As a direct and proximate cause of Defendants' unlawful conduct, members of the District of Columbia Class have been injured in their business or property and are threatened with further injury.

540.   By reason of the foregoing, members of the District of Columbia Class are entitled to seek all forms of relief, including treble damages or $1500 per violation (whichever is greater) plus punitive damages, reasonable attorney's fees and costs under D.C. Code § 28-3901, *et seq.*

      **6.**    **Violation of the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. § 501.201(2),** *et seq.***) on behalf of the Florida Class**

541.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

542.   The Florida Deceptive & Unfair Trade Practices Act, Florida Stat. §§ 501.201, *et seq.* (the "FDUTPA"), generally prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce," including practices in restraint of trade. Florida Stat. § 501.204(1).

543.   The primary policy of the FDUTPA is "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Florida Stat. § 501.202(2).

544.   A claim for damages under the FDUTPA has three elements: (1) a prohibited practice; (2) causation; and (3) actual damages.

545.   Under Florida law, indirect purchasers have standing to maintain an action under the FDUTPA based on the facts alleged in this Complaint. Fla. Stat. § 501.211(a) ("anyone

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 112

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1   aggrieved by a violation of this [statute] may bring an action . . .").

2       546.    Members of the Florida Class purchased Certi-Label cedar shakes and shingles

3   within the State of Florida during the Class Period. But for Defendants' conduct set forth herein,

4   the price of Certi-Label cedar shakes and shingles would have been lower, in an amount to be

5   determined at trial.

6       547.    Defendants entered into a contract, combination or conspiracy between two or

7   more persons in restraint of, or to monopolize, trade or commerce in the Certi-Label cedar

8   shakes and shingles market, a substantial part of which occurred within Florida.

9       548.    Defendants established, maintained or used a monopoly, or attempted to establish

10   a monopoly, of trade or commerce in the market for Certi-Label cedar shakes and shingles, for

12   the purpose of excluding competition or controlling, fixing or maintaining prices in Florida at a

13   level higher than the competitive market level, beginning at least as early as January 1, 2011 and

14   continuing through the date of this filing.

15       549.    Accordingly, Defendants' conduct was an unfair method of competition, and an

16   unfair or deceptive act or practice within the conduct of commerce within the State of Florida.

17       550.    Defendants' unlawful conduct substantially affected Florida's trade and

18   commerce.

19       551.    As a direct and proximate cause of Defendants' unlawful conduct, members of the

20   Florida Class have been injured in their business or property by virtue of overcharges for Certi-

21   Label cedar shakes and shingles and are threatened with further injury.

22       552.    By reason of the foregoing, members of the Florida Class are entitled to seek all

23   forms of relief, including injunctive relief pursuant to Florida Stat. §501.208 and declaratory

24   judgment, actual damages, reasonable attorney's fees and costs pursuant to Florida Stat. §

25   501.211.

26

27

28

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 113

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1
2
3
4
5
6
7
8
9
10
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**7.  Violation of the Hawaii Revised Statutes Annotated §§ 480-1, *et seq.*, on behalf of the Hawaii Class**

553.  Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

554.  Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Hawaii Revised Statutes Annotated §§ 480-1, *et seq.*

555.  Defendants' unlawful conduct had the following effects: (1) Certi-Label cedar shakes and shingles price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) Certi-Label cedar shakes and shingles prices were, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) members of the Hawaii Class were deprived of free and open competition; and (4) members of the Hawaii Class paid supra-competitive, artificially inflated prices for cedar shakes and shingles.

556.  During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce and consumers.

557.  As a direct and proximate result of Defendants' unlawful conduct, members of the Damages Class have been injured and are threatened with further injury.

**8.  Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Ill. Comp. Stat. Ann. 815 Ill. Comp. Stat. Ann. 505/10a, *et seq.*) on behalf of the Illinois Class**

558.  Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

559.  By reason of the conduct alleged herein, Defendants have violated 740 Ill. Comp. Stat. Ann. 10/3(1), *et seq.*

560.  Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the Certi-Label cedar shakes and shingles market, a substantial part of which occurred within Illinois.

561.  Defendants established, maintained, or used a monopoly, or attempted to establish

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 114

LAW OFFICES OF
McNaul Ebel Nawrot & Helgren pllc
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

a monopoly, of trade or commerce in the relevant market, a substantial part of which occurred within Illinois, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Certi-Label cedar shakes and shingles market.

562.   Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of Illinois.

563.   Defendants' conduct misled consumers, withheld material facts, and resulted in material misrepresentations to members of the Illinois Class.

564.   Defendants' unlawful conduct substantially affected Illinois's trade and commerce.

565.   As a direct and proximate cause of Defendants' unlawful conduct, members of the Illinois Class were actually deceived and have been injured in their business or property and are threatened with further injury.

566.   By reason of the foregoing, members of the Illinois Class are entitled to seek all forms of relief, including actual damages or any other relief the Court deems proper under 815 Ill. Comp. Stat. Ann. 505/10a, *et seq.*

### 9.   Violation of the Massachusetts Consumer Protection Act (Mass. Gen. Laws Ch. 93A § 1, *et seq.*) on behalf of the Massachusetts Class

567.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

568.   By reason of the conduct alleged herein, Defendants have violated the Massachusetts Consumer Protection Act, Mass. Gen. Laws Ch. 93A § 2, *et seq.*

569.   Members of the Massachusetts Class purchased Certi-Label cedar shakes and shingles within the State of Massachusetts during the Class Period. But for Defendants' conduct set forth herein, the price of Certi-Label cedar shakes and shingles would have been lower, in an amount to be determined at trial.

570.   Defendants entered into a contract, combination, or conspiracy between two or

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 115

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

more persons in restraint of, or to monopolize, trade or commerce in the Certi-Label cedar shakes and shingles market, a substantial part of which occurred within Massachusetts.

571.    Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the market for Certi-Label cedar shakes and shingles, a substantial part of which occurred within Massachusetts, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Certi-Label cedar shakes and shingles market.

572.    Defendants' conduct was an unfair method of competition, and an unfair or deceptive act or practice within the conduct of commerce within the State of Massachusetts.

573.    Defendants' unlawful conduct substantially affected Massachusetts' trade and commerce.

574.    As a direct and proximate cause of Defendants' unlawful conduct, members of the Massachusetts Class have been injured in their business or property and are threatened with further injury.

575.    By reason of the foregoing, members of the Massachusetts Class are entitled to seek all forms of relief, including up to treble damages and reasonable attorney's fees and costs under Mass. Gen. Laws Ch. 93A § 9.

576.    Upon information and belief, service of a demand letter on any Defendant was unnecessary due to the defendant not maintaining a place of business within the Commonwealth of Massachusetts or not keeping assets within the Commonwealth.  Mass. Gen. Laws Ch. 93A § 2.

### 10.    Violation of the Michigan Consumer Protection Act (Mich. Comp. Laws Ann. §§ 445.901, *et seq.*) on behalf of the Michigan Class

577.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

578.    By reason of the conduct alleged herein, Defendants have violated Mich. Comp.

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 116

Laws Ann. § 445.901, *et seq.*

579.    Defendants have entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the Certi-Label cedar shakes and shingles market, a substantial part of which occurred within Michigan.

580.    Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Certi-Label cedar shakes and shingles market, for the purpose of excluding or limiting competition or controlling or maintaining prices, a substantial part of which occurred within Michigan.

581.    Defendants' conduct was conducted with the intent to deceive Michigan consumers regarding the nature of Defendants' actions within the stream of Michigan commerce.

582.    Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of Michigan.

583.    Defendants' conduct misled consumers, fraudulently concealed and misrepresented material facts, and took advantage of the inability of Michigan Class members to protect themselves, and deceptively induced Michigan Class members to purchase cedar shakes and shingles at supra-competitive, artificially inflated prices.

584.    Defendants' unlawful conduct substantially affected Michigan's trade and commerce.

585.    As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and members of the Michigan Class have been injured in their business or property and are threatened with further injury.

586.    By reason of the foregoing, members of the Michigan Class are entitled to seek all forms of relief available under Mich. Comp. Laws Ann. § 445.911.

**11.    Violation of the Minnesota Consumer Fraud Act (Minn. Stat. § 235F.68, *et seq.*) on behalf of the Minnesota Class**

587.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 117

1     allegation set forth in the preceding paragraphs of this Complaint.

2         588.    By reason of the conduct alleged herein, Defendants have violated Minn. Stat. §

3     325F.68, *et seq.*

4         589.    Defendants engaged in a deceptive trade practice with the intent to injure

5     competitors and consumers through supra-competitive profits.

6         590.    Defendants established, maintained, or used a monopoly, or attempted to establish

7     a monopoly, of trade or commerce in the Certi-Label cedar shakes and shingles market, a

8     substantial part of which occurred within Minnesota, for the purpose of controlling, fixing, or

9     maintaining prices in the Certi-Label cedar shakes and shingles market.

10        591.    Defendants' conduct was unfair, unconscionable, or deceptive within the conduct

12    of commerce within the State of Minnesota.

13        592.    Defendants' conduct, specifically in the form of fraudulent concealment of their

14    horizontal agreement and misrepresentation of competitors' products and business, created a

15    fraudulent or deceptive act or practice committed by a supplier in connection with a consumer

16    transaction.

17        593.    Defendants' unlawful conduct substantially affected Minnesota's trade and

18    commerce.

19        594.    Defendants' conduct was willful.

20        595.    As a direct and proximate cause of Defendants' unlawful conduct, members of the

21    Minnesota Class have been injured in their business or property and are threatened with further

22    injury.

23        596.    By reason of the foregoing, members of the Minnesota Class are entitled to seek

24    all forms of relief, including damages, reasonable attorney's fees and costs under Minn. Stat. §

25    325F.68, *et seq.* and applicable case law.

26

27

28

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 118

LAW OFFICES OF
MᶜNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

**12.    Violation of the Montana Unfair Trade Practices and
Consumer Protection Act of 1970 (Mont. Code §§ 30-14-103, *et
seq.*) on behalf of the Montana Class**

597.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

598.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Montana Unfair Trade Practices and Consumer Protection Act of 1970, Mont. Code, §§ 30-14-103, *et seq.*, and §§ 30-14-201, *et. seq.*

599.    Defendants' unlawful conduct had the following effects: (1) Certi-Label cedar shakes and shingles price competition was restrained, suppressed, and eliminated throughout Montana; (2) Certi-Label cedar shakes and shingles prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Montana; (3) members of the Montana Class were deprived of free and open competition; and (4) members of the Montana Class paid supra-competitive, artificially inflated prices for Certi-Label cedar shakes and shingles.

600.    During the Class Period, defendants' illegal conduct substantially affected Montana commerce and consumers.

601.    As a direct and proximate result of defendants' unlawful conduct, members of the Montana Class have been injured and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code, §§ 30-14-103, *et seq.*, and §§ 30-14-201, *et seq.*, and, accordingly,

602.    Members of the Montana Class seek all relief available under that statute.

**13.    Violation of the Nebraska Consumer Protection Act (Neb. Rev.
Stat. § 59-1602) on behalf of the Nebraska Class**

603.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

604.    By reason of the conduct alleged herein, Defendants have violated Neb. Rev. Stat. § 59-1602, *et seq.*

605.    Defendants have entered into a contract, combination, or conspiracy between two

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 119

or more persons in restraint of, or to monopolize, trade or commerce in the Certi-Label cedar shakes and shingles market, a substantial part of which occurred within Nebraska.

606. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Certi-Label cedar shakes and shingles market, for the purpose of excluding or limiting competition or controlling or maintaining prices, a substantial part of which occurred within Nebraska.

607. Defendants' conduct was conducted with the intent to deceive Nebraska consumers regarding the nature of Defendants' actions within the stream of Nebraska commerce.

608. Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of Nebraska.

609. Defendants' conduct misled consumers, withheld material facts, and had a direct or indirect impact upon the ability of the members of the Nebraska Class to protect themselves.

610. Defendants' unlawful conduct substantially affected Nebraska's trade and commerce.

611. As a direct and proximate cause of Defendants' unlawful conduct, members of the Nebraska Class have been injured in their business or property and are threatened with further injury.

612. By reason of the foregoing, members of the Nebraska Class are entitled to seek all forms of relief available under Neb. Rev. Stat. § 59- 1614.

**14.    Violation of the Nevada Deceptive Trade Practices Act (Nev. Rev. Stat § 598.0903, *et seq.*) on behalf of the Nevada Class**

613. Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

614. By reason of the conduct alleged herein, Defendants have violated Nev. Rev. Stat. § 598.0903, *et seq.*

615. Defendants engaged in a deceptive trade practice with the intent to injure

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 120

1    competitors and to substantially lessen competition.

2           616.    Defendants established, maintained, or used a monopoly, or attempted to establish

3    a monopoly, of trade or commerce in the Certi-Label cedar shakes and shingles market, a

4    substantial part of which occurred within Nevada, for the purpose of excluding competition or

5    controlling, fixing, or maintaining prices in the Certi-Label cedar shakes and shingles market.

6           617.    Defendants' conduct was unfair, unconscionable, or deceptive within the conduct

7    of commerce within the State of Nevada.

8           618.    Defendants' conduct amounted to a fraudulent act or practice committed by a

9    supplier in connection with a consumer transaction.

10          619.    Defendants' unlawful conduct substantially affected Nevada's trade and

12   commerce.

13          620.    Defendants' conduct was willful.

14          621.    As a direct and proximate cause of Defendants' unlawful conduct, the members of

15   the Nevada Class have been injured in their business or property and are threatened with further

16   injury.

17          622.    By reason of the foregoing, the Nevada Class is entitled to seek all forms of relief,

18   including damages, reasonable attorney's fees and costs, and a civil penalty of up to $5,000 per

19   violation under Nev. Rev. Stat. § 598.0993.

20          **15.    Violation of the New Hampshire Consumer Protection Act
                     (N.H. Rev. Stat. Ann. tit. XXXI, § 358-A, *et seq.*) on behalf of
21                   the New Hampshire Class**

22          623.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

23   allegation set forth in the preceding paragraphs of this Complaint.

24          624.    By reason of the conduct alleged herein, Defendants have violated N.H. Rev. Stat.

25   Ann. tit. XXXI, § 358-A, *et seq.*

26          625.    Defendants have entered into a contract, combination, or conspiracy between two

27   or more persons in restraint of, or to monopolize, trade or commerce in the Certi-Label cedar

28

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 121

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

shakes and shingles market, a substantial part of which occurred within New Hampshire.

626.     Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Certi-Label cedar shakes and shingles market, for the purpose of excluding or limiting competition or controlling or maintaining prices, a substantial part of which occurred within New Hampshire.

627.     Defendants' conduct was conducted with the intent to deceive New Hampshire consumers regarding the nature of Defendants' actions within the stream of New Hampshire commerce.

628.     Defendants' conduct was unfair or deceptive within the conduct of commerce within the State of New Hampshire.

629.     Defendants' conduct was willful and knowing.

630.     Defendants' conduct misled consumers, withheld material facts, and had a direct or indirect impact upon New Hampshire Class members' ability to protect themselves.

### 16.     Violation of the New Mexico Unfair Practices Act (N.M. Stat. Ann. §§ 57-12-3, *et seq.*) on behalf of the New Mexico Class

631.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

632.     By reason of the conduct alleged herein, Defendants have violated N.M. Stat. Ann. §§ 57-12-3, *et seq.*

633.     Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the Certi-Label cedar shakes and shingles market, a substantial part of which occurred within New Mexico.

634.     Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the relevant market, a substantial part of which occurred within New Mexico, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Certi-Label cedar shakes and shingles market.

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 122

635.    Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of New Mexico.

636.    Defendants' conduct misled consumers, withheld and misrepresented material facts, and deceptively induced New Mexico Class members to purchase cedar shakes and shingles at supra-competitive, artificially inflated prices.

637.    Defendants' unlawful conduct substantially affected New Mexico's trade and commerce.

638.    Defendants' conduct constituted "unconscionable trade practices" in that such conduct, inter alia, resulted in a gross disparity between the value received by the New Mexico class members and the price paid by them for Certi-Label cedar shakes and shingles as set forth in N.M. Stat. Ann. § 57-12-2E.

639.    Defendants' conduct was willful.

640.    As a direct and proximate cause of Defendants' unlawful conduct, t members of the New Mexico Class have been injured in their business or property and are threatened with further injury.

641.    By reason of the foregoing, members of the New Mexico Class are entitled to seek all forms of relief, including actual damages or up to $300 per violation, whichever is greater, plus reasonable attorney's fees under N.M. Stat. Ann. §§ 57-12-10.

**17.    Violation of the North Carolina Unfair Trade and Business Practices Act (N.C. Gen. Stat. § 75-1.1, *et seq.*) on behalf of the North Carolina Class**

642.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

643.    By reason of the conduct alleged herein, Defendants have violated N.C. Gen. Stat. § 75-1.1, *et seq.*

644.    Defendants entered into a contract, combination, or conspiracy in restraint of, or to monopolize, trade or commerce in the Certi-Label cedar shakes and shingles market, a

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 123

substantial part of which occurred within North Carolina.

645. Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of North Carolina.

646. Defendants' trade practices are and have been immoral, unethical, unscrupulous, and substantially injurious to consumers.

647. Defendants' conduct misled consumers, withheld material facts, and resulted in material misrepresentations to members of the North Carolina Class.

648. Defendants' unlawful conduct substantially affected North Carolina's trade and commerce.

649. Defendants' conduct constitutes consumer-oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of North Carolina consumers in an honest marketplace in which economic activity is conducted in a competitive manner.

650. As a direct and proximate cause of Defendants' unlawful conduct, members of the North Carolina Class have been injured in their business or property and are threatened with further injury.

651. By reason of the foregoing, the members of the North Carolina Class are entitled to seek all forms of relief, including treble damages under N.C. Gen. Stat. § 75-16.

### 18. Violation of the North Dakota Unfair Trade Practices Law (N.D. Cent. Code § 51-10-01, *et seq.*) on behalf of the North Dakota Class

652. Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

653. By reason of the conduct alleged herein, Defendants have violated N.D. Cent. Code § 51-10-01, *et seq.*

654. Defendants engaged in a deceptive trade practice with the intent to injure competitors and consumers through supra-competitive profits.

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 124

655.    Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Certi-Label cedar shakes and shingles market, a substantial part of which occurred within North Dakota, for the purpose of controlling, fixing, or maintaining prices in the Certi-Label cedar shakes and shingles market.

656.    Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of North Dakota.

657.    Defendants' conduct amounted to a fraudulent or deceptive act or practice committed by a supplier in connection with a consumer transaction.

658.    Defendants' unlawful conduct substantially affected North Dakota's trade and commerce.

659.    Defendants' conduct was willful.

660.    As a direct and proximate cause of Defendants' unlawful conduct, members of the North Dakota Class have been injured in their business or property and are threatened with further injury.

661.    By reason of the foregoing, the members of the North Dakota Class are entitled to seek all forms of relief, including damages and injunctive relief under N.D. Cent. Code § 51-10-06.

**19.    Violation of the Oregon Unlawful Trade Practices Act (Or. Rev. Stat. § 646.608, *et seq.*) on behalf of the Oregon Class**

662.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

663.    By reason of the conduct alleged herein, Defendants have violated Or. Rev. Stat. § 646.608, *et seq.*

664.    Defendants have entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the Certi-Label cedar shakes and shingles market, a substantial part of which occurred within Oregon.

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 125

LAW OFFICES OF
MᶜNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

665.    Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Certi-Label cedar shakes and shingles market, for the purpose of excluding or limiting competition or controlling or maintaining prices, a substantial part of which occurred within Oregon.

666.    Defendants' conduct was conducted with the intent to deceive Oregon consumers regarding the nature of Defendants' actions within the stream of Oregon commerce.

667.    Defendants' conduct was unfair or deceptive within the conduct of commerce within the State of Oregon.

668.    Defendants' conduct misled consumers, withheld and misrepresented material facts, had a direct or indirect impact upon Plaintiff' and members-of-the-Classes' ability to protect themselves, and deceptively induced Oregon Class members to purchase cedar shakes and shingles at supra-competitive, artificially inflated prices.

669.    Defendants' unlawful conduct substantially affected Oregon's trade and commerce.

670.    As a direct and proximate cause of Defendants' unlawful conduct, members of the Oregon Class have been injured in their business or property and are threatened with further injury.

671.    By reason of the foregoing, the members of the Oregon Class are entitled to seek all forms of relief available under Or. Rev. Stat. § 646.638.

672.    Pursuant to section 646.638 of the Oregon Unlawful Trade Practices Act, with the filing of this action, a copy of this Complaint is being served upon the Attorney General of Oregon.

**20.    Violation of the Rhode Island Deceptive Trade Practices Act (R.I. Gen. Laws § 6-13.1-1, *et seq.*) on behalf of the Rhode Island Class**

673.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 126

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

674.     By reason of the conduct alleged herein, Defendants have violated R.I. Gen Laws § 6-13.1-1, *et seq.*

675.     Defendants engaged in an unfair or deceptive act or practice with the intent to injure competitors and consumers through supra-competitive profits.

676.     Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Certi-Label cedar shakes and shingles market, a substantial part of which occurred within Rhode Island, for the purpose of controlling, fixing, or maintaining prices in the Certi-Label cedar shakes and shingles market.

677.     Defendants' conduct was unfair or deceptive within the conduct of commerce within the State of Rhode Island.

678.     Defendants' conduct amounted to an unfair or deceptive act or practice committed by a supplier in connection with a consumer transaction.

679.     Defendants' unlawful conduct substantially affected Rhode Island's trade and commerce.

680.     Defendants' conduct was willful.

681.     Defendants deliberately failed to disclose material facts to members of the Rhode Island Class concerning Defendants' unlawful activities, including the horizontal conspiracy and artificially-inflated prices for Certi-Label cedar shakes and shingles.

682.     Defendants' deception, including its affirmative misrepresentations and/or omissions concerning the price of Certi-Label cedar shakes and shingles, constitutes information necessary to Plaintiff and members of the Rhode Island Class relating to the cost of Certi-Label cedar shakes and shingles purchased.

683.     Members of the Rhode Island class purchased goods, namely Certi-Label cedar shakes and shingles, primarily for personal, family, or household purposes.

684.     As a direct and proximate cause of Defendants' unlawful conduct, the members of the Rhode Island Class have been injured in their business or property and are threatened with

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 127

1  further injury.

2  685.   By reason of the foregoing, the members of the Rhode Island Class are entitled to

3  seek all forms of relief, including actual damages or $200 per violation, whichever is greater, and

4  injunctive relief and punitive damages under R.I. Gen Laws § 6-13.1-5.2.

5
6
**21.    Violation of South Carolina's Unfair Trade Practices Act (S.C. Code Ann. §§ 39-5-10) on behalf of the South Carolina Class**

7  686.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

8  allegation set forth in the preceding paragraphs of this Complaint.

9  687.   By reason of the conduct alleged herein, Defendants have violated S.C. Code

10  Ann. §§ 39-5-10.

12  688.   Defendants have entered into a contract, combination, or conspiracy between two

13  or more persons in restraint of, or to monopolize, trade or commerce in the Certi-Label cedar

14  shakes and shingles market, a substantial part of which occurred within South Carolina.

15  689.   Defendants established, maintained, or used a monopoly, or attempted to establish

16  a monopoly, of trade or commerce in the Certi-Label cedar shakes and shingles market, for the

17  purpose of excluding or limiting competition or controlling or maintaining prices, a substantial

18  part of which occurred within South Carolina.

19  690.   Defendants' conduct was conducted with the intent to deceive South Carolina

20  consumers regarding the nature of Defendants' actions within the stream of South Carolina

21  commerce.

22  691.   Defendants' conduct was unfair or deceptive within the conduct of commerce

23  within the State of South Carolina.

24  692.   Defendants' conduct misled consumers, withheld material facts, and had a direct

25  or indirect impact upon members-of-the-Classes' ability to protect themselves.

26  693.   Defendants' unlawful conduct substantially affected South Carolina trade and

27  commerce.

28
RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 128

694.    Defendants' unlawful conduct substantially harmed the public interest of the State of South Carolina, as numerous citizens purchase Certi-Label cedar shakes and shingles for their businesses.

22.    **Violation of South Dakota Deceptive Trade Practices and Consumer Protection Law (S.D. Codified Laws § 37-24-6) on behalf of the South Dakota Class**

695.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

696.    By reason of the conduct alleged herein, Defendants have violated S.D. Codified Laws § 37-24-6.

697.    Defendants engaged in a deceptive trade practice with the intent to injure competitors and consumers through supra-competitive profits.

698.    Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Certi-Label cedar shakes and shingles market, a substantial part of which occurred within South Dakota, for the purpose of controlling, fixing, or maintaining prices in the Certi-Label cedar shakes and shingles market.

699.    Defendants' knowingly engaged in unfair, unconscionable, or deceptive trade practices within the conduct of commerce within the State of South Dakota.

700.    Defendants' conduct amounted to a fraudulent or deceptive act or practice committed by a supplier in connection with a consumer transaction.

701.    Defendants' unlawful conduct, specifically their fraudulent concealment and misrepresentation of material facts, deceptively induced South Dakota consumers to purchase cedar shakes and shingles at supra-competitive, artificially inflated prices and substantially affected South Dakota's trade and commerce.

702.    Defendants' conduct was willful.

703.    As a direct and proximate cause of Defendants' unlawful conduct, the members of the South Dakota Class have been injured in their business or property and are threatened with

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 129

1  further injury.

2       704.    By reason of the foregoing, the members of the South Dakota Class are entitled to

3  seek all forms of relief, including actual damages and injunctive relief under S.D. Codified Laws

4  § 37-24-31.

5              **23.    Violation of the Utah Consumer Sales Practices Act (Utah Code
                       Ann. §§ 13-11-1, *et seq.*) on behalf of the Utah Class**

6

7       705.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

8  allegation set forth in the preceding paragraphs of this Complaint.

9       706.    By reason of the conduct alleged herein, Defendants have violated Utah Code

10  Ann. §§ 13-11-1, *et seq.*

12      707.    Defendants entered into a contract, combination, or conspiracy between two or

13  more persons in restraint of, or to monopolize, trade or commerce in the Certi-Label cedar

14  shakes and shingles market, a substantial part of which occurred within Utah.

15      708.    Defendants are suppliers within the meaning of Utah Code Ann. §§ 13-11-3.

16      709.    Defendants established, maintained, or used a monopoly, or attempted to establish

17  a monopoly, of trade or commerce in the relevant market, a substantial part of which occurred

18  within Utah, for the purpose of excluding competition or controlling, fixing, or maintaining

19  prices in the Certi-Label cedar shakes and shingles market.

20      710.    Defendants' conduct was unfair, unconscionable, or deceptive within the conduct

21  of commerce within the State of Utah.

22      711.    Defendants' conduct and/or practices were unconscionable and were undertaken

23  in connection with consumer transactions.

24      712.    Defendants knew or had reason to know that their conduct was unconscionable.

25      713.    Defendants' conduct misled consumers, withheld material facts, and resulted in

26  material misrepresentations to members of the Utah Class.

27      714.    Defendants' unlawful conduct substantially affected Utah's trade and commerce.

28
RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 130

715.     As a direct and proximate cause of Defendants' unlawful conduct, the members of the Utah Class have been injured in their business or property and are threatened with further injury.

716.     By reason of the foregoing, the members of the Utah Class are entitled to seek all forms of relief, including declaratory judgment, injunctive relief, and ancillary relief, pursuant to Utah Code Ann. §§ 13-11-19(5) and 13-11-20.

**24.     Violation of the Utah Unfair Practices Act (Utah Code Ann. §§ 13-5-1, *et seq.*) on behalf of the Utah Class**

717.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

718.     By reason of the conduct alleged herein, Defendants have violated Utah Code Ann. §§ 13-5-1, *et seq.*

719.     Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the Certi-Label cedar shakes and shingles market, a substantial part of which occurred within Utah.

720.     Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the relevant market, a substantial part of which occurred within Utah, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the Certi-Label cedar shakes and shingles market.

721.     Defendants' conduct caused or was intended to cause unfair methods of competition within the State of Utah.

722.     Defendants' unlawful conduct substantially affected Utah's trade and commerce.

723.     As a direct and proximate cause of Defendants' unlawful conduct, the members of the Utah Class have been injured in their business or property and are threatened with further injury.

724.     By reason of the foregoing, the members of the Utah Class are entitled to seek all

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 131

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

forms of relief, including actual damages or $2000 per Utah Class member, whichever is greater, plus reasonable attorney's fees under Utah Code Ann. §§ 13-5-14, *et seq.*

### 25. Violation of Vermont Stat. Ann. 9 § 2453, *et seq.* on behalf of the Vermont Class

725.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

726.   Defendants have entered into an unlawful agreement in restraint of trade in violation of Vermont Stat. Ann. 9 § 2453, *et seq.*

727.   Defendants' combination or conspiracy had the following effects: (1) Certi-Label cedar shakes and shingles price competition was restrained, suppressed, and eliminated throughout Vermont; (2) Certi-Label cedar shakes and shingles prices were raised, fixed, maintained and stabilized at artificially high levels throughout Vermont; (3) members of the Vermont Class were deprived of free and open competition; and (4) members of the Vermont Class paid supracompetitive, artificially inflated prices for Certi-Label cedar shakes and shingles.

728.   During the Class Period, Defendants' illegal conduct had a substantial effect on Vermont commerce.

729.   As a direct and proximate result of Defendants' unlawful conduct, members of the Vermont Class have been injured in their business and property and are threatened with further injury.

730.   By reason of the foregoing, Defendants have entered into an agreement in restraint of trade in violation of Vermont Stat. Ann. 9 § 2453, *et seq.* Accordingly, members of the Vermont Class seek all relief available under Vermont Stat. Ann. 9 § 2453, *et seq.*

### 26. Violation of the Virginia Consumer Protection Act of 1997 Va. Code § 59.1-196, *et seq.* on behalf of the Virginia Class

731.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

732.   Defendants have entered into an unlawful agreement in restraint of trade in

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 132

LAW OFFICES OF
McNaul Ebel Nawrot & Helgren pllc
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1   violation of Virginia Consumer Protection Act of 1977, Va. Code § 59.1-196, *et seq.*

2   733.   Defendants have engaged in unfair competition or unfair, unconscionable, or

3   deceptive acts or practices in violation of the Virginia Consumer Protection Act of 1977, Va.

4   Code § 59.1-196, *et seq.*

5   734.   Members of the Virginia Class purchased and/or reimbursed for Certi-Label cedar

6   shakes and shingles to be used for personal, family, or household purposes.

7   735.   Defendants agreed to, and did in fact, act in restraint of trade or commerce in a

8   market that includes Virginia, by affecting, fixing, controlling, and/or maintaining, at artificial

9   and non-competitive levels, the prices at which Certi-Label cedar shakes and shingles were sold,

10  distributed, or obtained in Virginia.

12  736.   Defendants deliberately failed to disclose material facts to members of the

13  Virginia Class concerning Defendants' unlawful activities and artificially inflated prices for

14  Certi-Label cedar shakes and shingles. Defendants misrepresented to all purchasers during the

15  Class Period that Defendants' Certi-Label cedar shakes and shingles prices were competitive and

16  fair, and deceptively induced Virginia Class members to purchase cedar shakes and shingles at

17  supra-competitive, artificially inflated prices.

18  737.   Defendants' unlawful conduct had the following effects: (1) Certi-Label cedar

19  shakes and shingles price competition was restrained, suppressed, and eliminated throughout

20  Virginia; (2) Certi-Label cedar shakes and shingles prices were raised, fixed, maintained, and

21  stabilized at artificially high levels throughout Virginia; (3) members of the Virginia Class were

22  deprived of free and open competition; and (4) members of the Virginia Class paid supra-

23  competitive, artificially inflated prices for Certi-Label cedar shakes and shingles.

24  738.   Defendants' illegal conduct substantially affected Virginia commerce and

25  consumers.

26  739.   As a direct and proximate result of Defendants' violations of law, Plaintiff and

27  members of the Virginia Class suffered an ascertainable loss of money or property as a result of

28

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 133

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above.

740.    That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of cedar shakes and shingles, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing cedar shakes and shingles at prices set by a free and fair market.

741.    Defendants' affirmative misrepresentations and omissions constitute information important to members of the Virginia Class as they related to the cost of Certi-Label cedar shakes and shingles they purchased.

742.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code § 59.1-196, *et seq.*, and, accordingly, members of the Virginia Class seek all relief available under that statute.

### D.    Unjust Enrichment

743.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

744.    As a result of their unlawful conduct described above, Defendants have and will continued to be unjustly enriched by the receipt of unlawfully inflated prices and unlawful profits of Certi-Label cedar shakes and shingles.

745.    Under common law principles of unjust enrichment, Defendants should not be permitted to retain the benefits conferred on them by overpayments by Plaintiffs and members of the Classes in the following states: Arizona, California, Delaware, District of Columbia, Florida, Georgia, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, North Carolina, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, West Virginia, and Wisconsin.

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 134

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

**XI. REQUEST FOR RELIEF**

746.     WHEREFORE, Plaintiffs, on behalf of themselves and the Classes of all others so similarly situated, respectfully requests judgment against Defendants as follows:

a. The Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, appoint Plaintiffs as Class Representatives and their counsel of record as Class Counsel, and direct that notice of this action, as provided by Rule 23(c) of the Federal Rules of Civil Procedure, be given to the Classes, once certified;

b. The unlawful conduct, conspiracy or combination alleged herein be adjudged and decreed in violation of Section 1 of the Sherman Act and listed state antitrust laws, unfair competition laws, state consumer protection laws, and common law;

c. Plaintiffs and the Classes recover damages, to the maximum extent allowed under the listed state antitrust laws, unfair competition laws, state consumer protection laws, and common law;

d. Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining or renewing the conduct, conspiracy, or combination alleged herein, or from entering into any other conspiracy or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

e. Plaintiffs and the members of the Classes be awarded pre- and post-judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

f. Plaintiffs and the members of the Classes recover their costs of suit, including

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 135

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1          reasonable attorney's fees, as provided by law; and

2       g.   Plaintiffs and the members of the Classes have such other and further relief as the

3          case may require and the Court may deem just and proper.

4 **XII.    JURY TRIAL DEMANDED**

5        Plaintiffs demands a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil

6 Procedure, of all issues so triable.

7        Dated: August 27, 2019

8                                   Greg J. Hollon

9                                   MCNAUL EBEL NAWROT
                                  & HELGREN PLLC

10                                   One Union Square
                                  600 University Street, Suite 2700

12                                   Seattle, Washington 98101
                                  Tel: (206) 467-1816

13                                   ghollon@mcnaul.com

14                                   ***Liaison Counsel for the Proposed Reseller Indirect Purchaser Plaintiff Classes***

15                                   Christopher J. Cormier (admitted PHV)

16                                   BURNS CHAREST LLP
                                  5290 Denver Tech Center Pkwy., Suite 150

17                                   Greenwood Village, Colorado 80111
                                  Tel: (720) 630-2092

18                                   ccormier@burnscharest.com

19                                   Lydia Wright
                                  BURNS CHAREST LLP

20                                   65 Canal Street, Suite 1170
                                  New Orleans, Louisiana 70130

21                                   Tel: (504) 799-2845
                                  lwright@burnscharest.com

22                                   Warren T. Burns (admitted PHV)

23                                   Will Thompson (admitted PHV)
                                  Spencer Cox (admitted PHV)

24                                   BURNS CHAREST LLP
                                  900 Jackson Street, Suite 500

25                                   Dallas, Texas 75201
                                  Tel: (469) 904-4550

26                                   wburns@burnscharest.com
                                  wthompson@burnscharest.com

27                                   scox@burnscharest.com

28

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 136

1

2

3

4

5

6

7

8

9

10

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

/s/ *Keil M. Mueller*

Keith S. Dubanevich (admitted PHV)
Keil M. Mueller (admitted PHV)
STOLL STOLL BERNE LOKTING &
SHLACHTER P.C.
209 SW Oak Street, Suite 500
Portland, Oregon 97204
Tel: (503) 227-1600
kdubanevich@stollberne.com
kmueller@stollberne.com

***Interim Co-Lead Counsel for the Proposed
Reseller Indirect Purchaser Plaintiff Classes***

George Farah (admitted PHV)
HANDLEY FARAH ANDERSON
81 Prospect Street
Brooklyn, NY 11201
Tel: (212) 477-8090
gfarah@hfajustice.com

***Additional Counsel for Proposed Reseller
Indirect Purchaser Plaintiff Classes***

RESELLER INDIRECT PURCHASER PLAINTIFFS'
CONSOLIDATED SECOND AMENDED CLASS ACTION
COMPLAINT (NO. 2:19-CV-451-MJP) - 137